**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| KYLE COUNTS, individually and on behalf of all others similarly situated, | ) ) | Case No.: |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| ARKK FOOD COMPANY, a Michigan corporation and WAHLBURGERS I, LLC, a Massachusetts limited liability company, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**CLASS ACTION COMPLAINT**

Plaintiff Kyle Counts ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, brings this class action complaint against Defendants Arkk Food Company and Wahlburgers I, LLC ("Defendants") and alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge:

**NATURE OF THE ACTION**

1.     This is a class action lawsuit regarding Defendants' manufacturing, distribution, advertising, marketing, labeling, distribution, and sale of Wahlburgers pickles ("Products" or "Pickles")[1] that are sold in grocery stores nationwide and marketed as, among other things, "fresh," "all natural," and containing "no preservatives" ("Representations"). Unfortunately for all reasonable consumers, including Plaintiff, these claims are false and misleading.

---

[1] The Products refer to the following Wahlburgers Pickles varieties: Fresh Dill Spears; Fresh Dill Chips; Fresh Dill Chips Hot. Plaintiff reserves the right to amend the complete list of Pickles subject to this lawsuit based on facts obtained in discovery.

2.      Far from being "fresh," "all natural," and preservative free, the Pickles contain considerable amounts of an artificial chemical preservative, sodium benzoate, designed to lengthen the Pickles' shelf life.

3.      Despite including this artificial chemical preservative, sodium benzoate, in their Pickles, Defendants go to considerable lengths to mislead consumers into believing the Pickles are free from such preservative:

     a.  Defendants label the Pickles with the words "All Natural" and "No Preservatives";

     b.  Defendants place the term "Fresh" as the first word for all of the Pickles' varieties directly on the front labels of the Pickles;

     c.  Defendants omit the artificial chemical preservative as an ingredient – a material fact to Plaintiff and all reasonable consumers – on the Pickles' labeling and any marketing regarding the Pickles.

4.      Defendants make the Representations and omissions to increase profits and market share in the consumer food product market, specifically the pickle market. Indeed, consumers place value on "natural" products.

5.      Consumers have become increasingly concerned about the effects of synthetic, artificial, and chemical ingredients in food, dietary supplements, cleaning products, bath and beauty products, and everyday household products. Companies such as Defendants have capitalized on consumers' desire for purportedly "natural products." Indeed, consumers are willing to pay and have paid a premium for products branded "natural" over products that contain synthetic ingredients. In 2015, sales of natural products grew 9.5% to $180 billion.[2] Reasonable consumers,

---

[2] *Natural Products Industry Sales up 9.5% to $180bn Says NBJ,* FOOD NAVIGATOR, http://www.foodnavigator-usa.com/Markets/EXPO-WEST-trendspotting-organics-natural-claims/(page)/6; *see also* Shoshanna Delventhal, *Study Shows Surge in Demand for "Natural" Products*, INVESTOPEDIA (February 22, 2017), http://www.investopedia.com/articles/investing/022217/study-

including Plaintiff and Class Members, value natural products for important reasons, including the belief that they are safer and healthier than alternative products that are not represented as natural.

6. Before placing the Pickles into the stream of commerce and into the hands of consumers to eat, Defendants knew or should have known that the Products contained an artificial chemical preservative, sodium benzoate, but Defendants misrepresented, omitted, and concealed this material fact to all reasonable consumers, including Plaintiff and Class members, by not including the words sodium benzoate anywhere on the Products' labeling.

7. Plaintiff and Class members reasonably relied on Defendants' Representations and material omissions when purchasing the Pickles.

8. Plaintiff and Class members purchased the Pickles and paid a price premium for the Pickles based on Defendants' Representations and omissions.

9. Pickles that contain artificial chemical preservatives typically sell for approximately one or two dollars less than truly fresh pickles that do not. For example, a 32-ounce Wahlburgers Fresh Dill Spears container costs $5.99[3] or $0.18 per ounce. But a 24-ounce container of Vlasic Kosher Dill Spears—which does not make any "natural" or preservative free claims—costs $3.49,[4] or $0.14 per ounce.[5]

---

shows-surge-demand-natural-products.asp (Study by Kline Research indicated that in 2016, the personal care market reached 9% growth in the U.S. and 8% in the U.K. The trend-driven natural and organic personal care industry is on track to be worth $25.1 million by 2025); *Natural living: The next frontier for growth? [NEXT Forecast 2017]*, NEW HOPE NTWORK (December 20, 2016), http://www.newhope.com/beauty-and-lifestyle/natural-living-next-frontier-growth-next-forecast-2017.

[3] https://www.hy-vee.com/aisles-online/p/3318751/Wahlburgers-Fresh-Dill-Spears (last visited January 16, 2023)

[4] https://www.hy-vee.com/aisles-online/p/51684/Vlasic-Kosher-Dill-Spears (last visited January 16, 2023).

[5] Plaintiff provides this example of the price premium of Defendants' Pickles containing the Representations. A more detailed price premium damages analysis will be conducted by an expert later in the case after discovery.

10.     Because Defendants' false and misleading Representations dupe reasonable consumers into believing the Pickles feature premium attributes (are "fresh," "all natural," and free from artificial chemical preservatives), Defendants' Representations thus dupe reasonable consumers into paying premium prices for the Pickles, even though they do not actually feature the premium attributes for which the consumers, including Plaintiff and class members, pay.

11.     Defendants are therefore liable to Plaintiff and Class members for selling the Pickles without disclosing that the Pickles contain an artificial chemical preservative.

12.     This lawsuit seeks to recover monetary damages on behalf of Plaintiff and class members and equitable relief to halt Defendants' illegal labeling of the Pickles.

## PARTIES

13.     Plaintiff Kyle Counts is a resident and citizen of Park Forest, Illinois. Plaintiff Counts has purchased numerous varieties of the Products, including Wahluburgers Fresh Dill Spears and Wahlburgers Fresh Dill Chips, multiple times during any statutory limitations period. Plaintiff purchased the Products in person in grocery stores, including Jewel Osco in Illinois. Most recently, Plaintiff purchased the Products in or around September or October 2022 at the Products' retail price.

14.     Plaintiff and reasonable consumers believe that products that are labeled as natural do not contain synthetic ingredients. Plaintiff and reasonable consumers believe a synthetic ingredient is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources.

15.     When purchasing the Pickles, Plaintiff Counts read and reviewed the accompanying labels and disclosures and understood them as representations and warranties by Defendants that the Pickles were adequately manufactured, labeled, free from defects, and that the

Representations were true. Plaintiff Counts read and relied on Defendants' Representations and warranties when deciding to purchase the Pickles, and these Representations and warranties were part of the basis of the bargain. Had Defendants not made the false, misleading, and deceptive Representations and omissions alleged herein regarding the Pickles, Plaintiff Counts would not have been willing to purchase the Pickles. Plaintiff Counts paid a price premium for the Pickles based on Defendants' Representations, material omissions, and warranties. Accordingly, Plaintiff Counts was injured and lost money due to Defendants' mislabeling and deceptive conduct.

16.     Defendant ARKK Food Company ("ARKK") is a corporation incorporated under the laws of Michigan, with its principal place of business in Bloomfield Hills, Michigan. ARKK is in the business of creating and producing food products and is the distributor for Wahlburgers Pickles and the exclusive licensee of Wahlburgers' retail products. Upon information and belief, ARKK controls the entire line of Wahlburgers retail products. Upon information and belief, ARKK has control over the Wahlburgers Pickles' recipes and labeling. ARKK selected and approved the recipe for Wahlburgers Pickles, and ARKK created the labels for Wahlburgers pickles.

17.     Defendant Wahlburgers I, LLC is a limited liability company organized under the laws of Massachusetts with its headquarters in Hingham, Massachusetts. Wahlburgers I, LLC is the owner of the Wahlburgers trademark that appears on the Wahlburgers Pickles' labels and, upon information and belief, has licensed these trademarks to ARKK. Upon information and belief, as the licensor of the Wahlburgers trademarks and by its contractual relationship with ARKK, Wahlburgers I, LLC has control over the Wahlburgers Pickles' recipes and labeling.

18.     Defendants sell the Pickles throughout the United States, including Illinois. The Pickles, including those purchased by Plaintiff and Class members, are available at various retail stores throughout the United States, including Illinois. Defendants authorized the false, misleading,

and deceptive marketing, advertising, distribution, and sale of the Pickles to consumers nationwide, including Illinois.

## JURISDICTION AND VENUE

19.     This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, (2) the action is a class action, (3) there are members of the Class who are diverse from Defendants, and (4) there are more than 100 Class members. This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy as the claims within the Court's original jurisdiction.

20.     This Court has personal jurisdiction over Defendants because the claims asserted in this complaint arise from Defendants' contacts with this District. Defendants have been afforded due process because they have, at all times relevant to this matter, individually or through their agents, subsidiaries, officers, and/or representatives, operated, conducted, engaged in, and carried on a business venture in Illinois, and/or marketed, advertised, distributed and/or sold the Products, committed a statutory violation within Illinois related to the allegations made herein, and caused injuries to Plaintiff and putative Class Members, which arose out of the acts and omissions that occurred in the state of Illinois, during the relevant time period. At that time, Defendants were engaged in business activities in Illinois.

21.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted in this complaint occurred in Illinois. Venue is also proper pursuant to 28 U.S.C. § 1391(c) because Defendants conduct substantial business in this District, have sufficient minimum contacts with this District, and otherwise purposely avails themselves of the markets in this District through the promotion,

sale, and marketing of the Products in this District. Venue is also proper because Plaintiff Counts resides in this District.

## COMMON FACTUAL ALLEGATIONS

### I.    Wahlburgers Fast Rise in the Food Industry

22.    Wahlburgers' first brick-and-mortar restaurant opened in 2011.[6]

23.    Wahlburgers sells burgers, sandwiches, and other tasty foods that people enjoy eating.[7]

24.    After only three (3) years of opening its first restaurant, Wahlburgers began franchising the restaurants.

25.    By 2023, Wahlburgers now has nearly 100 restaurants in states throughout the United States.[8]

26.    Seeking to build on its success in the restaurant market, Wahlburgers launched its Wahlburgers at Home product line in approximately 2021. According to Wahlburgers, "We embrace loyalty, gratitude, excellence and community. We share these values in our restaurants every day and now in your home."[9] Wahlburgers at Home's product line includes everyday consumer products in grocery stores, including meats, bacon, hotdogs, sauces, and pickles.[10]

27.    Wahlburgers continues its aggressive push to expand its business and make more money with plans to build 50 restaurants across Mexico.[11]

28.    Wahlburgers is quickly becoming an industry leader in the food industry, and they are undoubtedly a well-known nationwide brand continuing to gain market share.

---

[6] https://wahlburgers.com/our-story. (Last accessed Jan. 16, 2023).
[7] https://wahlburgers.com/menu. (Last accessed Jan. 16, 2023).
[8] https://wahlburgers.com/all-locations. (Last accessed Jan. 16, 2023).
[9] https://www.wahlburgersathome.com/our-story/. (Last accessed Jan. 16, 2023).
[10] https://www.wahlburgersathome.com/products/. (Last accessed Jan. 16, 2023).
[11] Wahlburgers has already expanded internationally to Canada, Australia, and New Zealand.

29.     Wahlburgers seeks to build trust among its customers by touting, "As we expand our restaurant locations worldwide, it was only natural that we offer our high quality products for your home."[12] Accordingly, reasonable consumers, including Plaintiff and Class members, trust and expect that Wahlburgers sells high quality products that are accurately and truthfully labeled.

## II.     Wahlburgers Pickles' Labeling Contains False and Misleading Representations

30.     Wahlburgers markets, sells, and distributes Pickles, including Fresh Dill Spears; Fresh Dill Chips; Fresh Dill Chips Hot. Each product is depicted below[13]:



---

[12] https://www.wahlburgersathome.com/our-story/. (Last accessed Jan. 16, 2023).
[13]     These     images     are     found     on     Wahlburgers'     website: https://www.wahlburgersathome.com/products/pickles/. (Last accessed Jan. 16, 2023).





31.     Wahlburgers Pickles are manufactured, distributed, and sold throughout the United States, including the State of Illinois. The Pickles are sold in-store at mass market retailers and grocery stores.

32.     Right on the front labeling of all the Pickles, Wahlburgers represents the Pickles accordingly:

- The labels all prominently feature the word "FRESH" in all capitals as the first word in their names, which are printed multiple times on their labels;

- The labels all prominently represent that the Pickles have "no preservatives"; and

- The labels all prominently represent that the Pickles are "all natural."



33.     Defendants' claims that Wahlburgers pickles are "fresh," "all natural," and contain "no preservatives" are false and misleading. Testing performed by Biogen Laboratory Developments reveals that Wahlburgers Pickles contain substantial amounts of benzoic acid, which is often added into foods via sodium benzoate, an artificial chemical preservative designed to lengthen the Pickles' shelf life. In fact, certificates of analysis from Biogen's testing (attached hereto as Exhibit A) indicate[14] Wahlburgers Hot Dill Chips pickles (a.k.a "Wahlburgers Fresh Dill Chips Hot") contain sodium benzoate in a concentration of 641 parts per million; Wahlburgers Dill Spears pickles (a.k.a. "Wahlburgers Fresh Dill Spears") contain sodium benzoate in a

---

[14] Biogen's tests revealed the amounts of benzoic acid indicated on Exhibit A, and benzoic acid is almost always added to food via sodium benzoate, an artificial chemical preservative, sodium benzoate.

concentration of between 424 and 436 parts per million; and Wahlburgers Dill Chips pickles (a.k.a. "Wahlburgers Fresh Dill Chips") contain sodium benzoate in a concentration of 600 parts per million. As such, the Pickles' labeling Representations that the Pickles contain "no preservatives" and that the Pickles are "all natural" are false and misleading because the Pickles contain an artificial chemical preservative.

### III. Defendants Also Make Omissions of Material Facts Regarding the Pickles

34. Defendants' omission of the artificial chemical preservative, sodium benzoate, from the Pickles' labeling is also deceptive.

35. Sodium benzoate is manufactured in one of three ways:

   a. naphthalene is oxidized with vanadium pentoxide to give phthalic anhydride, which is decarboxylated to yield benzoic acid;

   b. toluene is mixed with nitric acid and oxidized to produce benzoic acid; or

   c. benzotrichloride is hydrolyzed and then treated with a mineral acid to produce benzoic acid.[15]

In each instance, the benzoic acid is then refined to produce sodium benzoate, including dissolving the benzoic acid in a sodium hydroxide-solution. *Id.*

36. Regardless of the method used, sodium benzoate is thus produced through a chemical process and/or chemical synthesis. Regardless of the base material used, it has undergone a chemical change, so the sodium benzoate is chemically and/or structurally different from how it naturally occurred.

37. In 2013, the United States Department of Agriculture ("USDA") issued a Draft Guidance Decision Tree for Classification of Materials as Synthetic or Nonsynthetic (Natural). In

---

[15] Sodium Benzoate, ENCYCLOPEDIA.COM (updated May 18, 2018), available at https://www.encyclopedia.com/science-and-technology/chemistry/organic-chemistry/sodium-benzoate

accordance with this decision tree, a substance is natural—as opposed to synthetic—if: (a) it is manufactured, produced, or extracted from a natural source (i.e., naturally occurring mineral or biological matter); (b) it has not undergone a chemical change (i.e., a process whereby a substance is transformed into one or more other distinct substances) so that it is chemically or structurally different than how it naturally occurs in the source material; or (c) the chemical change was created by a naturally occurring biological process such as composting, fermentation, or enzymatic digestion or by heating or burning biological matter.

38.     Congress has defined "synthetic" to mean "a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plants, animals, or mineral sources . . . ." 7 U.S.C. § 6502 (21).

39.     Consumers lack the meaningful ability to test or independently ascertain or verify whether a product is natural, especially at the point of sale. Consumers would not know the true nature of the ingredients merely by reading the ingredients label.

40.     Discovering that the ingredients are not natural and are actually synthetic requires a scientific investigation and knowledge of chemistry beyond that of the average consumer.

41.     Defendants' labeling Representations that the Pickles are "fresh" are also false and misleading. "Fresh" products do not contain artificial chemical preservatives; thus, because the Pickles contain an artificial chemical preservative, they are not "fresh." See 21 C.F.R. § 101.95(a) (stating the term "fresh" can be used when food "has not been frozen or subjected to any form of thermal processing or any other form of preservation").

42.     In Illinois, any "advertisement of a food, drug, device or cosmetic shall be deemed false if it is false or misleading in any particular." 410 ILCS § 620/20.

43. As alleged herein, Defendants have violated the FDCA; 410 ILCS § 620/20; Illinois' Consumer Fraud and Deceptive Trade Practices Act ("ICFA"); and various state consumer protection statutes. Defendants engaged in fraudulent, unfair, deceptive, misleading, and/or unlawful conduct stemming from its misrepresentations and omissions regarding an artificial chemical preservative contained in the Pickles.

44. If Defendants had disclosed, at the point of purchase, to Plaintiff and putative class members that the Pickles contained sodium benzoate, Plaintiff and putative class members would not have purchased the Pickles, or they would have paid less for the Pickles.

45. As a consumer food product seller, Defendants had a duty to ensure that the Pickles did not contain sodium benzoate, including through regular testing, especially before injecting the Pickles into the stream of commerce for consumers to eat. But based on the testing results set forth above, Defendants made no reasonable effort to test their Pickles for sodium benzoate, despite their false and misleading labeling Representations discussed above. The same Defendants claim that: "We embrace loyalty, gratitude, excellence and community. We share these values in our restaurants every day and now in your home." *and* "[We] offer our high quality products for your home." Moreover, Defendants represented and warranted, expressly and impliedly, that the Pickles were of merchantable quality, complied with federal and state law, and did not contain an artificial chemical preservative, sodium benzoate. All of these claims are false.

## IV. Defendants' Knowledge, Representations, Omissions, and Concealment of Material Facts Deceived Plaintiff and Reasonable Consumers – This Conduct is Deceptive *and* Unfair under the ICFA

46. Testing performed by Biogen Laboratory Developments reveals that the Pickles contain substantial amounts of benzoic acid, which is often added to foods via sodium benzoate, an artificial chemical preservative designed to lengthen the Pickles' shelf life. In fact, certificates

14

of analysis from Biogen's testing (attached hereto as **Exhibit A**) indicate[16] Wahlburgers Hot Dill Chips Pickles (a.k.a "Wahlburgers Fresh Dill Chips Hot") contain sodium benzoate in a concentration of 641 parts per million; Wahlburgers Dill Spears Pickles (a.k.a. "Wahlburgers Fresh Dill Spears") contain sodium benzoate in a concentration of between 424 and 436 parts per million; and Wahlburgers Dill Chips Pickles (a.k.a. "Wahlburgers Fresh Dill Chips") contain sodium benzoate in a concentration of 600 parts per million.

47.     Upon information and belief, Defendants' addition of an artificial chemical preservative to the Pickles and the effects thereof afford Defendants' Pickles a longer shelf life than truly fresh pickles and allow Defendants to hold inventory longer than they otherwise would be able to hold truly fresh pickles. On information and belief, this artificially enhanced shelf life and ability to hold inventory longer afford Defendants a competitive advantage that is not available to companies that produce genuinely fresh pickles.

48.     And to drive up sales in the competitive food industry market and expand its market share, Defendants knowingly omit the material fact that the Pickles contain an article chemical preservative.

49.     Thus, reasonable consumers shopping for fresh, and/or all natural, and/or preservative-free pickles purchase Defendants' Pickles based on the above Representations and omissions made by Defendant at the point of sale. But for Defendants' false and misleading labeling Representations, these customers would not have purchased Defendants' Pickles or would not have paid as much as they did.

50.     Additionally, a large cross-section of customers, particularly those that are a part of the "real food" or "clean labeling" movements, will not consider purchasing products that contain

---

[16] Biogen's tests revealed the amounts of benzoic acid indicated on **Exhibit A**, and benzoic acid is almost always added to food via sodium benzoate, an artificial chemical preservative, sodium benzoate.

artificial preservatives. These customers chose to purchase Wahlburgers Pickles based on the false belief that they did not contain artificial preservatives. But for Wahlburgers' false and misleading labeling statements, these customers would not have purchased Wahlburgers Pickles or would have paid less for the Pickles.

51.     Wahlburgers, a large, sophisticated company in the business of manufacturing, distributing, and selling consumer food products, knew or should have known the Pickles contained an article chemical preservative.

52.     Defendants sold, and continue to sell, the Pickles containing an article chemical preservative during the relevant class period despite Defendants' knowledge of the presence of sodium benzoate in the Pickles.

53.     Sodium benzoate is not listed on the Pickles' labels as an ingredient, nor is there any disclosure about the inclusion (or potential inclusion) of sodium benzoate in the Pickles.

54.     Defendants have engaged in deceptive, untrue, and misleading advertising by making labeling Representations discussed above. Defendants' conduct is also deceptive because Defendants omit the material fact that the Pickles contain sodium benzoate. Defendants' conduct is also **unfair** for all of the reasons discussed above.

55.     Plaintiff would not have purchased the Pickles or paid as much for them had they been truthfully and accurately labeled.

56.     Had Defendants adequately tested the Pickles for sodium benzoate benzene, they would have discovered that the Pickles contained sodium benzoate, making the Products containing the false Representations illegal to distribute, market, and sell.

57.     Defendants' concealment was material and intentional because people are concerned with what is in the foods they eat. Consumers such as Plaintiff and class members make

purchasing decisions based on the Representations made on the Products' labeling, including the ingredients listed.

58.     Defendants know that if they had not omitted that the Pickles contained sodium benzoate, then Plaintiff and class members would not have purchased the Pickles or would not have paid as much as they did.

**V.   Injuries to Plaintiff and Class Members – and the Public at Large**

59.     When Plaintiff purchased Defendants' Pickles, Plaintiff did not know and had no reason to know that Defendants' Pickles contained an artificial chemical preservative. Not only would Plaintiff not have purchased Defendants' Pickles had he known the Pickles contained an artificial chemical ingredient, but he would also not have been capable of purchasing them if Defendants had done, as the law requires, and tested the Products for such ingredients and accurately labeled the Pickles.

60.     Consumers lack the ability to test or independently ascertain or verify whether a product contains an artificial chemical preservative, such as sodium benzoate, especially at the point of sale. Therefore, they must trust and rely on Defendants to truthfully and honestly report what the Products contain on their packaging and labeling.

61.     Further, given Defendants' position as a nationwide leader in the food industry, Plaintiff and all reasonable consumers trusted and relied on Defendants' Representations and omissions regarding the Pickles.

62.     Yet, when consumers look at the Pickles' packaging, there is no mention of sodium benzoate or any preservative. It is not listed in the ingredients section, nor is there any disclosure about its inclusion in the Pickles.

63.     No reasonable consumer, including Plaintiff, would have paid as much for Defendants' Pickles containing the Representations had they known those Pickles contained any

17

amount of sodium benzoate, let alone at the limits found in Defendants' Pickles – making such omitted facts material to them.

64.     Defendants' false, misleading, and deceptive Representations and omissions made on the labeling of the Pickles are likely to continue to deceive and mislead reasonable consumers and the public, as they have already deceived and misled Plaintiff and the Class Members.

65.     Plaintiff and Class members are entitled to statutory and punitive damages, equitable relief, attorneys' fees and costs, and any further relief this Court deems just and proper.

## CLASS ALLEGATIONS

66.     Plaintiff, individually and on behalf of all others, brings this class action pursuant to Fed. R. Civ. P. 23.

67.     Plaintiff seeks to represent a class defined as:

> All persons who purchased Wahlburgers Pickles in the United States for personal or household use within any applicable limitations period ("Nationwide Class").

68.     Plaintiff also seeks to represent a subclass defined as:

> All persons who purchased Wahlburgers Pickles in Illinois for personal or household use within any applicable limitations period ("Illinois Subclass").

69.     Plaintiff also seeks to represent a subclass defined as:

> All persons who purchased Wahlburgers Pickles in the States of California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, or Washington for personal or household use within any applicable limitations period ("Consumer Fraud Multi-State Subclass").[17]

---

[17] While discovery may alter the following, the states in the Consumer Fraud Multi-State Class are limited to those states with similar consumer fraud laws under the facts of this case: California (Cal. Bus. & Prof. Code § 17200, *et seq.*); Florida (Fla. Stat. § 501.201, *et seq.*); Illinois (815 Ill. Comp. Stat. 505/1, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*); Michigan (Mich. Comp. Laws § 445.901, *et seq.*); Minnesota (Minn. Stat. § 325F.67, *et seq.*); Missouri (Mo. Rev. Stat. § 407.010, *et seq.*); New Jersey (N.J. Stat. § 56:8-1, *et seq.*); New York (N.Y. Gen. Bus. Law §§ 349 and 350); and Washington (Wash. Rev. Code § 19.86.010, *et seq.*).

70.     Excluded from the Class and Subclasses are: (1) any Judge or Magistrate presiding over this action and any members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entities in which Defendants or their parents and any entities in which Defendants have a controlling interest and their current or former employees, officers, and directors; (3) individuals who allege personal bodily injury resulting from the use of the Pickles; and (4) resellers of the Pickles.

71.     Plaintiff reserves the right to modify, change or expand the definitions of the Class based upon discovery and further investigation.

72.     *Numerosity*: The Class is so numerous that the joinder of all members is impracticable. The Class likely contains thousands of members based on publicly available data. The Class is ascertainable by records in Defendants' possession.

73.     *Commonality*: Questions of law or fact common to the Class include, without limitation:

a.   Whether the Products contain an artificial chemical ingredient;

b.   Whether a reasonable consumer would consider the presence of an artificial chemical ingredient in the Pickles (and omission of that ingredient) to be material;

c.   Whether Defendants knew or should have known that the Pickles contain an artificial chemical ingredient;

d.   Whether Defendants' Representations are deceptive;

e.   Whether Defendants' Representations are false and misleading;

f.   Whether Defendants failed to disclose that the Pickles contain an artificial chemical ingredient;

g.   Whether Defendants concealed that the Pickles contain an artificial chemical preservative or ingredient;

h.   Whether Defendants engaged in **<u>unfair or</u>** deceptive trade practices;

i.   Whether Defendants violated the state consumer protection statutes alleged herein;

j.   Whether Defendants were unjustly enriched; and

k.   Whether Plaintiff and Class members are entitled to monetary damages and injunctive relief.

74.   *Typicality*: Plaintiff's claims are typical of the claims of Class members. Plaintiff and Class members were injured and suffered damages in the same manner, have the same claims against Defendants relating to the same course of conduct, and are entitled to relief under the same legal theories.

75.   *Adequacy*: Plaintiff will fairly and adequately protect the interests of the Class and has no interests antagonistic to those of the Class. Plaintiff has retained counsel experienced in prosecuting complex class actions, including actions with issues, claims, and defenses similar to the present case. Counsel intends to prosecute this action vigorously.

76.   *Predominance and superiority*: Questions of law or fact common to Class members predominate over any questions affecting individual members. A class action is superior to other available methods for the fair and efficient adjudication of this case because individual joinder of all Class members is impracticable, and the amount at issue for each Class member would not justify the cost of litigating individual claims. Should individual Class members be required to bring separate actions, this Court would be confronted with multiple lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and

expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale, and comprehensive supervision by a single court. Plaintiff is unaware of any difficulties likely to be encountered in managing this action that would preclude its maintenance as a class action.

77.    Accordingly, this class action may be maintained under Fed. R. Civ. P. 23(b)(2) and (b)(3).

## CAUSES OF ACTION

### COUNT I
**VIOLATIONS OF STATE CONSUMER FRAUD ACTS**
**(On behalf of Plaintiff and the Consumer Fraud Multi-State Subclass)**

78.    Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

79.    Plaintiff brings this Count on behalf of himself and the Consumer Fraud Multi-State Subclass against Defendants.

80.    The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Subclass prohibit unfair or deceptive business practices in trade or commerce.

81.    Plaintiff and the other Members of the Consumer Fraud Multi-State Subclass have standing to pursue a cause of action for violations of the Consumer Fraud Acts of the states in the Consumer Fraud Multi-State Subclass because Plaintiff and Members of the Consumer Fraud Multi-State Subclass have suffered an injury in fact and lost money as a result of Defendants' actions set forth herein.

82.    Defendants engaged in unfair and/or deceptive conduct by making material Representations and omissions regarding the presence of an artificial chemical preservative, sodium benzoate, in the Pickles, as discussed herein.

83.     Defendants intended that Plaintiff and each of the other Members of the Consumer Fraud Multi-State Subclass would rely upon its unfair and deceptive conduct, and a reasonable person would be misled by this deceptive conduct described above.

84.     Given Defendants' position in the consumer food industry and its growing popularity as an established and trustworthy national (even international) brand, Plaintiff and reasonable consumers trusted and relied on Defendants' Representations and omissions regarding the presence of an artificial chemical preservative, sodium benzoate, in the Pickles.

85.     As a result of Defendants' use or employment of unfair or deceptive acts or business practices, Plaintiff and the other Members of the Consumer Fraud Multi-State Subclass have sustained damages in an amount to be proven at trial.

86.     In addition, Defendants' conduct showed malice, motive, and reckless disregard for the truth, so an award of punitive damages is appropriate.

## COUNT II
### VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE PRACTICES ACT, 815 ILCS 505/1, et seq. ("ICFA")
(On behalf of Plaintiff and the Illinois Subclass)

87.     Plaintiff re-alleges and incorporates all preceding factual allegations as set forth fully herein.

88.     Plaintiff brings this cause of action on behalf of himself and the Illinois Subclass Members against Defendants.

89.     Plaintiff and other Class Members are persons within the context of the Illinois Consumer Fraud and Deceptive Trade Practices Act ("ICFA"), 815 ILCS 505/1(c).

90.     Each Defendant is a person within the context of the ICFA, 815 ILCS 505/1(c).

91.     At all times relevant hereto, Defendants were engaged in trade or commerce as defined under the ICFA, 815 ILCS 505/1(f).

92.     Plaintiff and the proposed Class are "consumers" who purchased the Products for personal, family, or household use within the meaning of the ICFA, 815 ILCS 505/1(e).

93.     The ICFA does not apply to "[a]ctions or transactions specifically authorized by laws administered by any regulatory body or officer of this State or the United States." 815 ILCS 505/10b(1).

94.     The ICFA prohibits engaging in "unfair or deceptive acts or practices … in the conduct of any trade or commerce…." ICFA, 815 ILCS 505/2.

95.     The ICFA prohibits any deceptive, unlawful, unfair, or fraudulent business acts or practices, including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or employment of any practice described in Section 2 of the Uniform Deceptive Trade Practices Act ("UDTPA"). 815 ILCS § 505/2.

96.     Plaintiff and the other Illinois Subclass Members reasonably relied upon Defendants' Representations and omissions alleged herein regarding the presence of an artificial chemical preservative, sodium benzoate, in the Pickles. Plaintiff read and relied on Defendants' labeling Representations and omissions to conclude that the Pickles did not contain an artificial chemical preservative, sodium benzoate, in the Pickles.

97.     Defendants' conduct, as described herein, took place within the State of Illinois and constitutes unfair or deceptive acts or practices in the course of trade and commerce, in violation of 815 ICFA 505/1, et seq.

98.     Defendants violated the ICFA by representing that the Products have characteristics or benefits that they do not have. 815 ILCS § 505/2; 815 ILCS § 510/2(7).

99. Defendants advertised the Products with the intent not to sell them as advertised, in violation of 815 ILCS § 505/2 and 815 ILCS § 510/2(9).

100. Defendants engaged in fraudulent and/or deceptive conduct, which creates a likelihood of confusion or misunderstanding in violation of 815 ILCS § 505/2; 815 ILCS § 510/2(3).

101. Before placing the Pickles into the stream of commerce and into the hands of consumers, including Plaintiff and reasonable consumers, Defendants knew or should have known that the Pickles contained an artificial chemical preservative, sodium benzoate, but Defendants omitted, and concealed this material fact to consumers, including Plaintiff and Class members, by not including the words sodium benzoate on the Pickles' labeling or otherwise disclosing its presence. Defendants chose to label the Pickles in this way to impact consumer choices and gain market share. They are aware that all consumers who purchased the Pickles were exposed to and would be affected by its omissions and would reasonably believe that the Pickles did not contain an artificial chemical preservative, sodium benzoate and that Defendants' Representations were otherwise accurate. However, Defendants' Representations are false and misleading because the Pickles contain an artificial chemical preservative, sodium benzoate.

102. Defendants intended that Plaintiff and each of the other Illinois Subclass Members would reasonably rely upon the Representations, misleading characterizations, and material omissions concerning the true nature of the Pickles.

103. Defendants' Representations, concealment, omissions, and other deceptive conduct were likely to deceive and cause misunderstanding and/or cause Plaintiff and the other Illinois Subclass Members to be deceived about the true nature of the Pickles.

104.    Plaintiff and Class Members have been damaged as a proximate result of Defendants' violations of the ICFA. They have suffered damages as a direct and proximate result of purchasing the Pickles.

105.    As a direct and proximate result of Defendants' violations of the ICFA, as set forth above, Plaintiff and the Illinois Subclass Members have suffered ascertainable losses of money caused by Defendants' Representations and material omissions regarding the presence of an artificial chemical preservative, sodium benzoate, in the Pickles.

106.    Had they been aware of the true nature of the Pickles, Plaintiff and Class Members would have paid less for the Pickles or would not have purchased them.

107.    Based on Defendants' unfair and/or deceptive acts or practices, Plaintiff and the Illinois Subclass Members are entitled to relief, including restitution, actual damages, treble damages, punitive damages, costs, and attorney's fees, under 815 ILCS 505/10a. Plaintiff and Class Members are also entitled to injunctive relief, seeking an order enjoining Defendants' unfair and/or deceptive acts or practices.

## COUNT III
## UNJUST ENRICHMENT
### (On behalf of Plaintiff and the Nationwide Class and/or the Illinois Subclass and/or the Consumer Fraud Multi-State Subclass)

108.    Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

109.    Plaintiff brings this Count on behalf of himself and the Nationwide Class and/or the Illinois Subclass and/or the Consumer Fraud Multi-State Subclass against Defendants.

110.    This claim is brought under the laws of the State of Illinois.

111.    Defendants' conduct violated, *inter alia*, state, and federal law by manufacturing, advertising, labeling, marketing, distributing, and selling the Pickles while misrepresenting and omitting material facts, including by making the labeling Representations alleged herein.

112.    Defendants' unlawful conduct allowed Defendants to knowingly realize substantial revenues from selling the Pickles at the expense of, and to the detriment or impoverishment of, Plaintiff and Class members and to Defendants' benefit and enrichment. Defendants have violated fundamental principles of justice, equity, and good conscience.

113.    Plaintiff and Class members conferred significant financial benefits and paid substantial compensation to Defendants for the Pickles, which were not as Defendants represented them to be.

114.    Defendants knowingly received and enjoyed the benefits conferred by Plaintiff and Class members.

115.    It is inequitable for Defendants to retain the benefits conferred by Plaintiff and Class members' overpayments.

116.    Plaintiff and Class members seek to establish a constructive trust from which Plaintiff and Class members may seek restitution.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for relief and judgment against Defendants as follows:

a.   Certifying the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as representative of the Class and Subclasses, and designating Plaintiff's counsel as Class Counsel;

b. Awarding Plaintiff and Class members compensatory, statutory, or other monetary damages, in an amount to be determined at trial;

c. Awarding Plaintiff and Class members appropriate relief, including but not limited to actual damages;

d. For restitution and disgorgement of profits;

e. Awarding Plaintiff and Class members reasonable attorneys' fees and costs as allowable by law;

f. Awarding pre-judgment and post-judgment interest;

g. For punitive damages;

h. For injunctive relief; and

i. Granting any other relief as this Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury of all claims so triable.

Dated: January 16, 2023

Respectfully Submitted,

**LAUKAITIS LAW FIRM LLC**

*/s/ Kevin Laukaitis*
Kevin Laukaitis
737 Bainbridge Street #155
Philadelphia, PA 19147
Phone: (215) 789-4462
Email: klaukaitis@laukaitislaw.com

**REESE LLP**
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, New York 10025
Phone: (212) 643-0500
Email: mreese@reesellp.com

*Attorneys for Plaintiff and the Proposed Classes*