**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Kyle Counts, individually and on behalf of all others similarly situated, | |
| *Plaintiff*, | No. 23 CV 0236 |
| v. | Judge Lindsay C. Jenkins |
| Arkk Food Company, and Wahlburgers I, LLC | |
| *Defendants*. | |

**MEMORANDUM OPINION AND ORDER**

Kyle Counts ("Counts" or "Plaintiff") brings this putative class action against Arkk Food Company ("Arkk") and Wahlburgers I, LLC ("Wahlburgers", collectively, "Defendants") based on allegedly deceptive labeling of various pickle products sold by the Defendants. Before the Court is Defendants' motion to dismiss Plaintiff's First Amended Complaint for failure to state a claim under Rule 12(b)(6), for lack of subject matter jurisdiction under Rule 12(b)(1), and to strike Plaintiff's class allegations under Rule 23(c)(1)(A). [Dkt. 27]. Defendants' motion is denied in part and granted in part.

## I.     Background

The following factual allegations are taken from Plaintiff's First Amended Complaint and are accepted as true for the purposes of deciding the motion to dismiss. *Smith v. First Hosp. Lab'ys, Inc.*, 77 F.4th 603, 607 (7th Cir. 2023). Defendant Wahlburgers "sells burgers, sandwiches, and other tasty foods that people enjoy eating." [Dkt. 23 ¶ 26.] While Wahlburgers initially operated restaurants, the

1

company has since expanded to selling food at retailers nationwide. [*Id.* ¶¶ 25, 29, 34.] This includes various types of pickles, namely, Wahlburgers's "Fresh Dill Spears", "Fresh Dill Chips", and "Fresh Dill Chips Hot" (collectively, "Pickles"). [*Id.* ¶ 33.] Defendant Arkk distributes the Pickles and has an "exclusive license" over all Wahlburgers's retail products. [*Id.* ¶ 19.] Both Defendants have control over the recipe for the Pickles and the Pickles' labeling. [*Id.* ¶¶ 19-20.]

The labels on each of these products represent that the pickles are "Fresh", "All Natural", and contain "No Preservatives." [*Id.* ¶ 35.] These assertions are material to consumer decision making because consumers are willing to pay a premium for foods without synthetic ingredients. [*Id.* ¶ 5.] Despite these representations, laboratory testing conducted on several batches of the Pickles revealed that they contain sodium benzoate, a chemical preservative that is commonly used in the food industry to extend a product's shelf life. [*Id.* ¶¶ 2, 36.] Counts alleges that the presence of sodium benzoate renders the labels' representations false and misleading. Moreover, Counts alleges that he either would have paid less for the Pickles, or not purchased them at all had he known that they contained sodium benzoate. [*Id.* ¶¶ 52, 58, 116.]

Counts is an Illinois resident who purchased Wahlburgers's Fresh Dill Spears and Fresh Dill Chips products in Illinois at Jewel Osco and other grocery stores, with his latest purchasing occurring in September or October 2022.[1] [*Id.* ¶ 14.] He filed this putative class action against Defendants, seeking to represent a Nationwide

---

[1] Plaintiff does not allege that he purchased the "Fresh Dill Chips Hot" product.

Class, and two subclasses, an Illinois Subclass and a Multi-State Subclass comprised of consumers from California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, or Washington. [*Id.* ¶¶ 77-79.] Counts alleges that Defendants' conduct violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et seq.*; similar consumer fraud statutes from the Multi-State Subclass; and warranty and unjust enrichment law for all 50 states.

The Defendants have moved to dismiss Plaintiff's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and (1), arguing that Counts fails to state a claim and that he lacks Article III standing to bring claims under the laws of other states for which he suffered no injury. Defendants also seek to strike Plaintiff's class allegations under Rule 23(c)(1)(A).

## II.     Legal Standard

A motion to dismiss pursuant to Rule 12(b)(1) challenges the Court's subject-matter jurisdiction, while a motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the plaintiff's claims. In both cases, the Court takes well-pleaded factual allegations as true and draws reasonable inferences in favor of the plaintiff. *Choice v. Kohn L. Firm, S.C.*, 77 F.4th 636, 638 (7th Cir. 2023); *Reardon v. Danley*, 74 F.4th 825, 826-27 (7th Cir. 2023). "To survive a motion to dismiss under Rule 12(b)(6), plaintiff's complaint must allege facts which, when taken as true, plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Cochran v. Ill. State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (cleaned up).

On motion or on its own, the Court may "strike from a pleading … any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Rule 23(c)(1)(A) permits courts to "deny class certification even before the plaintiff files a motion requesting certification." *Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011). Thus, the Court may strike "facially and inherently deficient" class allegations, but it is seldom appropriate to do so at the pleading stage. *See Robinson v. Lake Ventures LLC*, 2023 WL 5720873, at *9 (N.D. Ill. Sept. 5, 2023).

### III.    Analysis

Defendants' motion to dismiss argues that Plaintiff has failed to adequately plead all claims in the First Amended Complaint under Rule 12(b)(6), that Plaintiff lacks Article III standing to bring suit or represent classes based on other states' laws under Rule 12(b)(1), and that Plaintiff's class allegations should be stricken pursuant to Rule 23(c)(1)(A). The Court addresses these arguments in turn.

A.    <u>Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6)</u>

a.    <u>ICFA</u>

The first issue for the Court to resolve is what pleading standard governs Plaintiff's ICFA claim, a point of disagreement between the parties. Defendants contend that Rule 9(b)'s heightened pleading standard applies because Plaintiff alleges fraud, [Dkt. 27 at 5], whereas Plaintiff argues that he has pleaded his claim, at least in part, under the "unfair" prong of ICFA, which only requires adherence to Rule 8(a). [Dkt. 29 at 3-4.]

"To state a claim under the ICFA, a plaintiff must allege: (1) a deceptive act or unfair practice by the defendant; (2) defendant's intent that the plaintiff rely on the deception; and (3) that the deception occurred in the course of conduct involving trade and commerce." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 2010 WL 624709, at *7 (N.D. Ill. Feb. 18, 2010) (citations omitted). Under ICFA, a plaintiff may allege the defendant engaged in a deceptive act or an unfair practice (or both), but when the gravamen of a plaintiff's complaint sounds in fraud, all ICFA claims are evaluated under the heightened pleading standard of Rule 9(b). *Id.* at *6 ("ICFA claims sounding in fraud or deception are still required to meet the heightened pleading requirements of Rule 9(b)"); *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736-37 (7th Cir. 2014) ("Since Camasta's claim was of fraud under the ICFA, the sufficiency of his complaint is analyzed under the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b)").

Plaintiff's ICFA claim sounds in fraud. Plaintiff alleges that Defendants "go to considerable lengths to mislead consumers into believing the Pickles" do not contain sodium benzoate, and that they do so "to increase profits and market share in the consumer food product market." [Dkt. 23 ¶¶ 3-4.] Overall, the complaint alleges fraudulent conduct whereby Defendants induce customers to purchase the Pickles through the label representations, but then include sodium benzoate to give the Pickles "a longer shelf life than truly fresh pickles." [*Id.* ¶ 55.] This gives Defendants the competitive advantages of "hold[ing] inventory longer than they otherwise would be able to hold truly fresh pickles", and being able to attract consumers who value

5

natural pickles, while charging them more for it. [*Id.* ¶¶ 10, 14, 55.] As such, Rule 9(b) governs Plaintiff's ICFA claim.

Rule 9(b), in turn, requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." A plaintiff typically must describe the "who, what, when, where, and how" of the fraud. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441-442 (7th Cir. 2011). The "precise level of particularity required under Rule 9(b) depends upon the facts of the case" but the plaintiff must identify "the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Camasta*, 761 F.3d at 737. And while a plaintiff "generally cannot satisfy the particularity requirement of Rule 9(b) with a complaint that is filed on 'information and belief' it is permissible where "(1) the facts constituting the fraud are not accessible to the plaintiff and (2) the plaintiff provides the grounds for his suspicions." *Pirelli*, 631 F.3d at 442-43. "The grounds for the plaintiff's suspicions must make the allegations plausible." *Id.* at 441. Plaintiff has satisfied his burden here.

Defendants' motion to dismiss does not argue that pickles containing sodium benzoate can still be "Fresh", "All Natural", or do not "Contain Preservatives." Rather, the main thrust of Defendants' argument for why Plaintiff's ICFA claim does not satisfy Rule 9(b) is that Plaintiff has failed to allege concrete facts, relying instead on "information and belief" that "the Pickles *he* purchased contained any sodium benzoate." [Dkt. 27 at 5]; *see also* [Dkt. 30 at 1.] Defendants criticize Counts for failing

6

to have the Pickles he purchased tested, and for instead "leap[ing] to the conclusion" that all Defendants' Pickles contain sodium benzoate based on testing of a few batches. [Dkt. 27 at 5-6.] Defendants ultimately posit that Plaintiff "cannot rely on tests performed by a third party, using Pickles purchased in some other location, to establish a claim that the Pickles he purchased contained preservatives." [*Id.* at 6.]

As stated above, a Plaintiff can satisfy his Rule 9(b) obligations by alleging fraud upon information and belief where "(1) the facts constituting the fraud are not accessible to the plaintiff and (2) the plaintiff provides the grounds for his suspicions." *Pirelli*, 631 F.3d at 442-43. Here, the indisputable best evidence for whether the pickles Plaintiff purchased contained sodium benzoate would be to test those pickles. Plaintiff alleges that he last purchased Defendants' Pickles in either September or October of 2022. [Dkt. 23 ¶ 14.] Defendants provide no basis for the Court to find that Counts should have suspected the Pickles contained sodium benzoate while they were in his possession, and the Court will not infer otherwise at the motion to dismiss stage. *Choice*, 77 F.4th at 638.

Once Counts no longer possessed the Pickles he purchased, there was no way for him to test them. His only options would be to forego an ICFA claim against Defendants or rely on other evidence that would make his allegations "plausible."[2] *Pirelli*, 631 F.3d at 443. Said differently, the facts constituting the fraud were no longer accessible to Plaintiff. To provide "grounds for his suspicion" that the

---

[2] Purchasing and testing new Pickles would not have helped Plaintiff determine whether Pickles he purchased in September/October 2022 (or at any earlier time) contained sodium benzoate.

purchased pickles contained sodium benzoate, Plaintiff relies on tests conducted by Biogen Laboratory that are at issue in another lawsuit.[3] [Dkt. 23 ¶¶ 15-16, 36, Ex. A.] The Biogen tests all identified the presence of sodium benzoate in the Pickles. The tested Pickles, purchased in California, Michigan and Florida, were manufactured between May 2022 and March 2023. [*Id.* ¶ 16, Ex. B at ¶ 9.] Based on the presence of sodium benzoate in Defendants' Pickles from disparate locations throughout the country manufactured during the same timeframe as Plaintiff's purchase, Plaintiff alleges it is "reasonable to infer Plaintiff's pickles likewise contained sodium benzoate", [Dkt. 23 ¶ 16], even if the tests were not conducted on the specific pickles Plaintiff purchased, or Pickles from Illinois generally.

The Court agrees. Plaintiff is relying on verified laboratory results that conclude Defendants' Pickles selected from three geographically distinct sources in the U.S. manufactured at the same time as Plaintiff's purchase contained sodium benzoate. While it would be preferable if Pickles from Illinois were tested, Plaintiff is relying on the best information available to him—the test results—which were performed by another party. Plaintiff cannot go back and retest different Pickles, but it is plausible that a problem that impacted Defendants' products sold in California, Florida, and Massachusetts would likewise extend to Illinois. Ultimately, the test results and Plaintiff's conclusions derived therefrom as alleged in the First Amended

---

[3]     *See Grillo's Pickles, Inc. v. Patriot Pickle, Inc.*, No. 2:23-cv-00011-MCA-AME. The Court takes judicial notice of these documents. *See 520 S. Mich. Ave. Assocs., Ltd. v. Shannon*, 549 F.3d 1119, 1137 n. 14 (7th Cir. 2008) (the Court may take judicial notice of court filings and can do so "without converting a motion to dismiss into a motion for summary judgment"); *see also Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997).

Complaint provide legitimate "grounds for his suspicion" that the Pickles he purchased contained sodium benzoate.[4] *Pirelli*, 631 F.3d at 443.

Defendants, relying on *Pirelli*, argue that the lab results should be of limited value to the Court because "[i]t is appropriate to accord limited corroborative weight to allegations in another's lawsuit." [Dkt. 30 at 4.] While Defendants accurately quote *Pirelli*, there are two salient differentiating factors here. First, Plaintiff is not depending on the *allegations* made in another lawsuit, but scientific testing used to support those allegations. In *Pirelli*, the plaintiff relied on allegations made in two other lawsuits, many of which themselves were made on information and belief. *Pirelli*, 631 F.3d at 444. The Seventh Circuit held that parroting allegations in this manner was inappropriate and would reduce pre-suit inquiry to reading a "daily law bulletin." *Id.* Here, by contrast, Plaintiff points to more concrete proof that several batches of Defendants' Pickles, manufactured around the same time as Plaintiff's purchase, contained sodium benzoate. The *Pirelli* court also found that the plaintiff failed to exhaust the information available at his disposal before suing, unlike here where Plaintiff does not have access to superior sources of untapped knowledge at his disposal. *Id.* at 445. Absent testing the specific pickles he purchased, there was no additional pre-suit inquiry Plaintiff could have done to strengthen his claim.

Plaintiff's allegations also otherwise satisfy the Rule 9(b) burden and adequately state an ICFA claim. The First Amended Complaint alleges that the

---

[4]    Defendants' also acknowledge that there were "issues" with Defendants' manufacturing process that needed to be "resolved." [Dkt. 27 at 6 n.4.] The information required to understand the scope of these "issues" resides with Defendants alone.

Defendants fraudulently misrepresented that their Pickles were "Fresh", "All Natural", and contained "No Preservatives" to induce customer purchases and increase market share, when, in fact, the Pickles contained a chemical preservative. Plaintiff alleges he relied on the labels' representations when purchasing the product and was damaged as a result of those representations being incorrect.[5] *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 739 (7th Cir. 2019). Plaintiff's ICFA claim may proceed.

### b. Unjust Enrichment Claim

Defendants also move to dismiss under Rule 12(b)(6) Plaintiff's unjust enrichment claim, which is based on the same allegedly misleading conduct as his ICFA claim. [Dkt. 23.] For the same reasons articulated above, the motion is denied.

It is well established that "under Illinois law, unjust enrichment is not a separate cause of action" but is instead tied to fraudulent or unlawful conduct. *Pirelli*, 631 F.3d at 447. Because Plaintiff's ICFA claim can proceed, so too can his "claim" for unjust enrichment, properly understood as a request for restitution for Defendants' wrongful conduct. *Vanzant*, 934 F.3d 730 at 740 ("the request for relief based on unjust enrichment is tied to the fate of the claim under the Consumer Fraud Act").

---

[5] Defendants' argument that Plaintiff has failed to adequately allege it was the Defendants that are responsible for the misrepresentations on the label is unavailing (at minimum) because "[u]nder the ICFA, a defendant may be liable for the actions of its … agent." *Sneed v. Winston Honore Holdings, LLC*, 2017 WL 467686, at *5 (N.D. Ill. Feb. 3, 2017).

### c. Breach of Express Warranty Claim

Defendants also move to dismiss Plaintiff's breach of express warranty claim, which, again, is based on the same underlying conduct as the ICFA and unjust enrichment claims. While warranty claims are typically tethered to the success of an ICFA claim, Plaintiff's failure to provide adequate pre-suit notice as required by Illinois law defeats his warranty claim.

"To state a claim for breach of express warranty in Illinois, plaintiffs must allege that the seller: (1) made an affirmation of fact or promise; (2) relating to the goods; (3) which was part of the basis for the bargain; and (4) guaranteed that the goods would conform to the affirmation or promise." *O'Connor v. Ford Motor Co.*, 477 F.Supp. 3d 705, 714 (N.D. Ill. 2020). Like unjust enrichment, a warranty claim survives with a properly pleaded ICFA claim so long as they are based on the same conduct. *See e.g., Bonahoom v. Staples, Inc.*, 2021 WL 1020986 at *7 (N.D. Ill. Mar. 17, 2021) ("Bonahoom's allegations about the existence of an express warranty and the breach of that warranty are adequate for the same reasons his ICFA allegations were adequate"); *Hayes v. General Mills, Inc.*, 2021 WL 3207749, at *4 (N.D. Ill. July 29, 2021) (breach of warranty claims based on the same conduct as an ICFA claim, "rise and fall" together); *Acosta v. Hopper (USA), Inc.*, 2023 WL 3072358, at *5 (N.D. Ill. Apr. 25, 2023) (plaintiff's breach of express warranty claim "arise[s] from the same allegations as her ICFA claim" and therefore "survive[s] alongside her ICFA claim.")

Illinois law, however, requires a plaintiff to provide the defendant with pre-suit notice of his breach of warranty claim, and Defendants have also moved to

dismiss on this basis. [Dkt. 27 at 8]. Notice of the alleged breach of warranty must occur *pre-suit*, and failure to do so is normally a bar to recovery. *O'Connor*, 477 F. Supp. 3d at 717; *Hamidani v. Bimbo Bakehouse LLC*, 2023 WL 167513 (N.D. Ill. Jan. 12, 2023) ("Plaintiff's argument that she complied with the statutory notice requirement by filing this suit fails. Plaintiff is required to give notice pre-suit"); 810 ILCS 5/2-607(3)(a).

Plaintiff argues in response (without citing to any legal authority) that his original complaint serves as adequate pre-suit notice because it did not contain a breach of warranty claim. [Dkt. 23 ¶ 123; *compare* Dkt. 1]; [Dkt. 29 at 8.] This is incorrect. Plaintiff was aware of the conduct serving as the basis for the breach of warranty (*i.e.*, the alleged misrepresentations on the labels) when he filed his initial pleading, so he was obligated to provide notice prior to filing suit. *Jones v. Apple, Inc.*, 2016 WL 11647699 (S.D. Ill. Aug. 22, 2016) (a party who brings a breach of warranty claim for the first time in an amended pleading does not satisfy the pre-suit notice requirement through the initial pleading where the plaintiff knew the facts underlying the warranty claim at the time of the initial suit).

Plaintiff also argues that he satisfied the pre-suit notice requirement through a separate communication mailed to Defendants *the same day* he filed his initial suit. [Dkt. 23 ¶ 123]; [Dkt. 29 at 8.] This contention likewise fails. Not only does this tactic highlight the possibility for "gamesmanship" in avoiding the notice requirement, *Jones*, 2016 WL 11647699 at *4 n.1, it also defeats its purpose, which is "to give the seller an opportunity to cure a defect and minimize damages, protect his ability to

investigate, gather evidence, and negotiate a possible settlement." *Schreib v. Walt Disney Co.*, 2006 WL 573008, at *5 (Ill. App. Ct. 1st Dist. 2006). Defendants here would have had no time to investigate Plaintiff's claim if they received notice and suit on the same day.

There are two exceptions to the notice requirement—"the seller has actual knowledge of the defect of the particular product" and "the plaintiff suffers a physical injury from the product"—but neither are applicable here. *Muir v. Nature's Bounty, Inc.*, 2017 WL 4310650, at *3 (N.D. Ill. Sept. 28, 2017). While Defendants were generally aware of allegations that their labels were misleading through the *Grillo* litigation, Illinois law requires the defendant to be aware that the *precise products sold to the plaintiff* were allegedly defective. *De Falco v. Vibram USA, Inc.*, 2013 WL 1122825, at *8 (N.D. Ill. Mar. 18, 2013) (rejecting argument that defendant had actual notice of plaintiff's claims based on earlier filed "nearly identical lawsuits" because "notice would only be excused in this case if the Defendants had actual knowledge of defects with the particular pairs of shoes sold to the Plaintiff"); *Cerretti v. Whole Foods Mkt. Grp., Inc.*, 2022 WL 1062793, at *6 (N.D. Ill. Apr. 8, 2022) (defendant's knowledge that other plaintiffs have alleged defects regarding the same type of product is "not the kind of knowledge that can excuse pre-suit notice under Illinois law.") Put differently, "the plaintiff must allege that the defendant had actual knowledge of the alleged breach of the particular product purchased by the named plaintiffs in the lawsuit." *Cristia v. Trader Joe's Co.*, 2022 WL 17551552, at *6 (Dec. 9, 2022). That is not the case here.

13

Plaintiff has therefore failed to provide Defendants with adequate pre-suit notice under Illinois law, and his claim must be dismissed. Plaintiff "cannot now unring that bell", and is precluded from curing this failure through an amended pleading. *O'Connor*, 477 F. Supp. 3d at 717; *Darne v. Ford Motor Co.*, 2017 WL 3836586 at *9 (N.D. Ill. Sept. 1, 2017) (finding it was "impossible" for plaintiff to provide pre-suit notice after filing suit).

### B. Article III Standing

Beyond claims in his individual capacity, Plaintiff also seeks to represent both a Nationwide Class and a Multi-State Subclass for various state consumer fraud statutes (Multi-State) and warranty/unjust enrichment claims (Nationwide). [Dkt. 23.] Defendants challenge Plaintiff's Article III standing to bring claims on behalf of these classes under the laws of any state beside Illinois because Plaintiff was only injured in Illinois. [Dkt. 27 at 10-11.] Plaintiff argues in response that the question of whether he may serve as a class representative for non-Illinois plaintiffs with non-Illinois claims is not an Article III issue and should be decided at the class certification stage. [Dkt. 29 at 11-12.]

The Court, in line with the "prevailing view" in this District, concludes that Plaintiff has satisfied his standing requirements. *Rawson v. Aldi, Inc.*, 2022 WL 1556395, at *5 (N.D. Ill. May 17, 2022). To establish standing under Article III, a plaintiff must show that he (1) "suffered an injury in fact that is concrete, particularized, and actual or imminent"; (2) "the injury was likely caused by [Defendants]"; and (3) "the injury would likely be redressed by judicial relief."

14

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203, 210 L. Ed. 2d 568 (2021) (citation omitted). "Standing is an essential component of Article III's case-or-controversy requirement." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009).

Defendants do not challenge Plaintiff's Article III standing to bring an ICFA, breach of warranty or unjust enrichment claim on behalf of himself. Nor can they— Plaintiff alleges he was injured (purchasing or overpaying for pickles), the injury was caused by Defendants (they misrepresented the content of the pickles), and the Court can provide relief (awarding damages). Instead, Defendants argue that Counts has no standing to sue based on other states' law, whether statutory or common law, because he was not injured under those statutes. Courts have rejected this precise argument:

> [Plaintiff] is proposing to serve as a class representative, not seeking to redress an injury specific to her—of course she herself did not pay for the pacifiers bought by each proposed class member. That is the whole point of a class action: to represent the interests of class members, not just the representative's own interests. If MAM is right about how Article III standing applies to proposed class actions—that is, that a plaintiff can only raise claims under her own State's laws—then no multi-state or nationwide class can ever be certified without a representative from each and every State in the proposed class.

*Freeman v. MAM USA Corp.*, 528 F.Supp.3d 849, 859 (N.D. Ill. 2021); *see also Woodman's Food Market, Inc. v. Clorox Co.*, 833 F.3d 743, 750 (7th Cir. 2016) ("the question of who is authorized to bring an action under a statute is one of statutory interpretation; it does not implicate Article III or jurisdiction."); *Block v. Lifeway Foods, Inc.*, 2017 WL 3895565, at *4 (N.D. Ill. Sept. 6, 2017) (the Seventh Circuit has

15

concluded that in class actions, "named plaintiffs need only show that they have suffered an injury caused by the defendant that is redressable by a judicial decision").

As other courts have recognized, Defendants' argument is really a question of whether a plaintiff "can satisfy the Civil Rule 23 class-certification requirements as applied to a nationwide and multi-state class." *Freeman*, 528 F. Supp.3d at 859; *see also Morrison v. YTB Intern., Inc.*, 649 F.3d 533, 536 (7th Cir. 2011). And whether a purported class representative meets the requirements of Rule 23 "is a question to be answered after discovery on the propriety of class certification—not right out of the box by an overbroad application of Article III standing to proposed class actions." *Freeman* at 859. For these reasons, the Court declines to find that Plaintiff lacks Article III standing, and Defendants' motion to dismiss pursuant to Rule 12(b)(1) is denied.

### C. Striking Class Allegations

Defendants also move to strike Plaintiff's class allegations under Rule 23(c)(1)(A). [Dkt. 27 at 11-13.] More specifically, Defendants move to strike Plaintiff's proposed Multi-State Subclass for consumer fraud claims and proposed Nationwide Classes for warranty and unjust enrichment claims. Because Plaintiff has failed to adequately plead a breach of warranty claim, which cannot be cured through amendment, the Court grants the motion to strike class allegations related to warranty claims. The Court declines to strike the remaining class allegations at this stage as premature.

"At an early practicable time after a person sues . . . as a class representative,

the court must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A); *see also* Fed. R. Civ. P. 23(d)(1)(D) (permitting the court to "issue orders that . . . require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly"). "When a plaintiff's class allegations are facially and inherently deficient a motion to strike class allegations can be an appropriate device to determine whether the case will proceed as a class action." *Garvey v. Am. Bankers Ins. Co. of Fla.*, 2019 WL 2076288, at *1 (N.D. Ill. May 10, 2019) (cleaned up) (quoting *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 295 (N.D. Ill. 2014)); *see also Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011) (holding that a court "need not delay a ruling on certification if it thinks that additional discovery would not be useful in resolving the class determination").

However, "[m]ost often it will not be 'practicable' for the court to [strike class allegations] at the pleading stage[.]" *Hill v. Wells Fargo Bank, N.A.*, 946 F. Supp. 2d 817, 829 (N.D. Ill. 2013); *see also Murdock-Alexander v. Tempsnow Emp't*, 2016 WL 6833961, at *3 (N.D. Ill. Nov. 21, 2016) (quoting *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989)) (noting that the Seventh Circuit has warned that motions to strike are generally "disfavored" as plaintiffs have the burden of meeting Rule 23 but defendants generally control the information plaintiffs need to meet that burden). If "the dispute concerning class certification is factual in nature and 'discovery is needed to determine whether a class should be certified,' a motion to strike the class allegations at the pleading stage is premature." *Buonomo*, 301

17

F.R.D. at 295 (cleaned up) (quoting *Wright v. Family Dollar, Inc.*, 2010 WL 4962838, at *1 (N.D. Ill. Nov. 30, 2010)).

Defendants argue that Plaintiff's class allegations are inadequately plead because conflicts among states' consumer fraud statutes, and warranty and unjust enrichment law are too varied for Rule 23 requirements to be established as a matter of law. [Dkt. 27 at 12-13.] Defendants do not attempt to establish the salient differences in law between the states, but they do cite to several opinions where Courts have declined to certify national or multi-state classes based on the same claims at issue here. These opinions highlight the uphill battle Plaintiff faces in ultimately certifying these classes—especially the nationwide classes. But none of the cases Defendants rely on struck the class allegations at the pleading stage. *See In re McDonald's French Fries Litig.*, 257 F.R.D. 669 (N.D. Ill. 2009) (denying class certification after plaintiff moved for class certification); *Siegel v. Shell Oil Co.*, 256 F.R.D. 580 (N.D. Ill. 2008) (same); *In re Aqua Dots Prods. Liab. Litig.*, 270 F.R.D. 377 (N.D. Ill. 2010) (same); *Vulcan Golf, LLC v. Google Inc.*, 254 F.R.D. 521 (N.D. Ill. 2008) (same); *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672 (7th Cir. 2001) (reversing district court's class certification).

Plaintiff's class allegations related to breach of warranty are nonetheless ripe to strike because he does not (and cannot) have a surviving breach of warranty claim and therefore cannot serve as a class member or representative. *See e.g.,* FED. R. CIV. P. 23(a) ("one or more members *of a class* may sue …" (emphasis added); *Doyle v. Prewitt*, 39 Fed. App'x 344, 348 (7th Cir. 2002) ("where the district court determines

18

that the plaintiff's claims are without merit, the plaintiff is disqualified as a class representative thus resolving the issue of class certification") (citations omitted); *Halperin v. Int'l Web Servs., LLC*, 123 F. Supp. 3d 999, 1009 (N.D. Ill. 2015) (plaintiff could not represent an ICFA class or any other class based on a state consumer fraud statute when plaintiff himself failed to properly plead an ICFA claim); *MorEquity, Inc. v. Naeem*, 118 F. Supp. 2d 885, 896 (N.D. Ill. 2000) (plaintiffs "are disqualified from acting as class representative for the class they seek to represent" if they fail to state a claim);

Given the case's infancy and the lack of any discovery on the class, striking Plaintiff's class allegations related to consumer fraud or unjust enrichment now would be premature. *See Damasco v. Clearwire Corp.*, 662 F.3d 891, 897 (7th Cir. 2011), *overruled on other grounds by Chapman v. First Index, Inc.*, 796 F.3d 783 (7th Cir. 2015) ("[A] court may abuse its discretion by not allowing for appropriate discovery before deciding whether to certify a class."); *Lucas v. Vee Pak, Inc.*, 68 F. Supp. 3d 870, 883 (N.D. Ill. 2014) (observing that the issue of predominance is "uniquely difficult to resolve based on the complaint alone"); *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012) ("Defining a class so as to avoid . . . being over-inclusive . . . is more of an art than a science . . . [and] can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis.").

This is particularly true for Plaintiff's proposed Multi-State Subclass, which Plaintiff contends was created after analysis of each state's consumer protection law

to ensure uniformity within the Subclass. [Dkt. 23 ¶ 79.] Defendants briefing does not point to differences in these states' consumer protection laws, or otherwise rebut this contention.

The Court has its reservations about Plaintiff's ability to represent his proposed Nationwide Class, particularly with respect to the unjust enrichment claim. Plaintiff did not undertake the same rigorous approach in narrowing his unjust enrichment (or warranty) classes as he did for the consumer protection claims, and Defendants have cited to cases which suggest nationwide classes for unjust enrichment claims are *per se* uncertifiable.[6] *In re Aqua Dots*, 270 F.R.D. at 386 ("[a]s other members of this court have pointed out, the law of unjust enrichment varies too much from state to state to be amenable to national or even to multistate class treatment."). While the Court is not prepared to strike the allegations now, class discovery will shed light on these issues, and Defendants are free to re-raise the matter at the appropriate time.

---

[6] The same is true for the dismissed nationwide warranty class. *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672 at 674 ("A nationwide class in what is fundamentally a breach-of-warranty action, coupled with a claim of fraud, poses serious problems about choice of law, the manageability of the suit, and thus the propriety of class certification").

## IV.     Conclusion

Defendants' motion to dismiss and motion to strike is denied in part and granted in part. Plaintiff's Counts III–V are dismissed with prejudice, and Plaintiff's allegations related to his proposed warranty classes are stricken.

Enter: 23-cv-0236
Date:  November 3, 2023

_____

Lindsay C. Jenkins
United States District Judge

21