## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KYLE COUNTS, DAMANY BROWNE, and DENNIS MAYER, individually and on behalf of all others similarly situated,<br><br>               Plaintiffs,<br><br>   v.<br><br>ARKK FOOD COMPANY, a Michigan corporation, WAHLBURGERS I, LLC, a Massachusetts limited liability company, and PATRIOT PICKLE, INC., a New Jersey corporation,<br><br>               Defendants. | Case No.: 1:23-cv-00236-LCJ |

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, PRELIMIANRY CERTIFICATION OF SETTLEMENT CLASS, AND APPROVAL OF NOTICE PLAN**

## **TABLE OF CONTENTS**

TABLE OF CONTENTS…………………………………………………………..…. ii

TABLE OF AUTHORITIES……………………………………………………....…...v

I. INTRODUCTION ................................................................................................. 1

II. SUMMARY OF THE ACTION .......................................................................... 2

   A. Plaintiffs' Allegations .................................................................................... 2

   B. Litigation, Mediation, and Settlement ........................................................... 2

III. MATERIAL TERMS OF THE SETTLEMENT ................................................. 4

   A. Settlement Class Definition ............................................................................ 4

   B. The Settlement Includes Significant Monetary Relief to the Settlement Class ................. 5

     1. Cash to the Class. ..................................................................................... 5

     2. Settlement class notice. ............................................................................ 6

     3. Claims process. ........................................................................................ 6

     4. Disposition of residual funds. .................................................................. 7

     5. Settlement administrator. ......................................................................... 7

     6. Opt-Out & Objection Procedures ............................................................. 9

     7. Release of claims. ................................................................................... 10

     8. Attorneys' fees, costs, and service awards ............................................. 11

IV. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND WARRANTS PRELIMINARY APPROVAL ........................................................... 12

A.   The Settlement Amount is Substantial Given the Strengths of Plaintiffs' Claims and Attendant Risks (Factor 1) ..................................................................... 13

B.   Further Litigation Would Be Complex, Costly, and Lengthy (Factor 2)......................... 14

C.   The Court Cannot Assess the Reaction of the Settlement Class Until After Notice Issues (Factor 3)................................................................................................. 15

D.   Competent Counsel Endorse this Agreement (Factor 4) ................................................. 15

E.   Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (Factor 5)................................................................................................. 16

V.   CONDITIONAL   CERTIFICATION   OF   THE   SETTLEMENT   CLASS   IS APPROPRIATE.................................................................................................. 16

A.   Rule 23(a) is Satisfied ..................................................................................................... 17

    1.   The class is so numerous that joinder of all members is impracticable........................ 17

    2.   There are questions of law and fact common to the Class........................................... 17

    3.   The claims of the representative parties are typical of the claims of the class. ............ 18

    4.   The representative parties will fairly and adequately protect the interests of the class.18

B.   Rule 23(b)(3) is Satisfied ............................................................................................... 19

    1.   Common questions predominate...................................................................................... 20

    2.   Class treatment of Plaintiffs' claims is superior. .......................................................... 20

VI.  PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL .............. 21

VII. THE NOTICE PLAN CONTAINS THE BEST NOTICE PRACTICABLE....................... 22

VIII.LEAVE TO AMEND COMPLAINT .................................................................................. 23

IX.   PROPOSED SCHEDULE OF POST-SETTLEMENT EVENTS ......................................... 24

X.   CONCLUSION ................................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Am. Int'l Grp., Inc.  v. ACE INA Holdings, Inc.*,
  No. 07-2898, 2011 WL 3290302 (N.D. Ill. July 26, 2011) ................................................ 16

*Amchem, Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) .................................................................................................. 20, 21

*Armstrong v. Bd. of Sch. Dirs. of Milwaukee*,
  616 F.2d 305 (7th Cir. 1980) ....................................................................................... 13

*Chaffee v. A&P Tea Co.*,
  No. 79-2735, 79-3625, 1991 WL 5859 (N.D. Ill. Jan. 16, 1991) ...................................... 23

*Cotton v. Hinton*,
  559 F.2d 1326 (5th Cir. 1977) .................................................................................. 15

*CV Reit, Inc. v. Levy*,
  144 F.R.D. 690 (S.D. Fla. 1992) .................................................................................. 19

*E.E.O.C. v. Hiram Walker & Sons, Inc.*,
  768 F.2d 884 (7th Cir. 1985) ....................................................................................... 13

*Felzen v. Andreas*,
  134 F.3d 873 (7th Cir. 1998) ............................................................................... 12, 13

*Gen. Tel. Co. of the Sw. v. Falcon*,
  457 U.S. 147 (1982) ..................................................................................................... 21

*Haynes v. Logan Furniture Mart*, Inc.,
  503 F.2d 1161 (7th Cir. 1974) ...................................................................................... 21

*In Basic v. Levinson*,
  485 U.S. 224 (1988) ..................................................................................................... 20

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
  270 F.R.D. 330 (N.D. Ill. 2010) .......................................................................... 13, 14, 20

*In re Mexico  Money Transfer Litig.*,
  164 F. Supp. 2d 1002 (N.D. Ill. 2000) .......................................................................... 16

*In re Netflix  Privacy Litig.*,
No. 11-379, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ........................................... 15

*In re Southwest Airlines Voucher Litig.*,
No. 11-8176, 2013 WL 4510197 (N.D. Ill. Aug. 26, 2013) .......................................... 14

*In re TikTok, Inc.*, *Consumer Priv. Litig.*,
565 F. Supp. 3d 1076 (N.D. Ill. 2021) ........................................................................ 19

*Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
No. 07-2898, 09-2026, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012)............................. 13

*Isby v. Bayh*,
75  F.3d 1191 (7th Cir. 1996) ........................................................................ 12, 13, 16

*Kessler v. Am. Resorts Int'l's Holiday Network, Ltd.*,
No. 05-5944, 07-2439, 2007 WL 4105204 (N.D. Ill. Nov. 14, 2007)......................... 13

*Kitzes v. Home Depot, USA, Inc.*,
374 Ill. App. 3d 1053, 1061, 313 Ill. Dec. 293, 872 N.E.2d 53 (2007) ........................ 18

*Lane v. Facebook*, *Inc.*,
696 F.3d 811 (9th Cir. 2012) ........................................................................ 15

*McCabe v. Crawford & Co.*,
210 F.R.D. 631 (N.D. Ill. 2002) ........................................................................ 18

*McKinnie v. JP Morgan Chase Bank, N.A.*,
678 F. Supp. 2d 806 (E.D. Wis. 2009)........................................................................ 16

*Parker v. Risk Mgmt. Alternatives, Inc.*,
206 F.R.D. 211 (N.D. Ill. 2002) ........................................................................ 18

*Patterson v. Stovall*,
528 F.2d 108 (7th Cir. 1976) ........................................................................ 12

*Retired Chi. Police Ass'n v. City of Chi.*,
7 F.3d 584 (7th Cir. 1993) ........................................................................ 19

*Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*,
  786 F.3d 510 (7th Cir. 2015)………………………………………………………23

*Schulte v. Fifth Third Bank*,
  805 F. Supp. 2d 560 (N.D. Ill. 2011) ............................................................. 15

*Smith v. Sprint Commc'ns Co.*,
  387 F.3d 612 (7th Cir. 2004) ......................................................................... 13

*Synfuel Techs, Inc. DHL Express (USA), Inc.*,
  463 F.3d 646 (7th Cir. 2006) ................................................................... 14, 16

*Uhl v. Thoroughbred Tech. & Telecomms., Inc.*,
  309 F.3d 978 (7th Cir. 2002) ......................................................................... 12

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ...................................................................................... 18

*Zolkos v. Scriptfleet, Inc.*,
  No. 12-8230, 2014 WL 7011819 (N.D. Ill. Dec. 12, 2014)........................... 17

*Zolkos v. Scriptfleet, Inc.*,
  No. 12-9230, 2014 WL 7011819 (N.D. Ill. Dec. 12, 2014)........................... 13

**Other Authorities**

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
  797 F.3d 160 (2d Cir. 2015).......................................................................... 23

**Rules**

Fed. R. Civ. P. 15(a)(2)......................................................................................... 23

Federal Rule of Civil Procedure 15 .................................................................... 23

Fed. R. Civ. P. 23................................................................................... *passim*

**Treatises**

Newberg § 11.41 .................................................................................................. 12

Plaintiffs Kyle Counts ("Counts"), Damany Browne ("Browne"), and Dennis Mayer ("Mayer") (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys, respectfully submit this Memorandum in Support of their Unopposed Motion for Preliminary Approval of the Settlement Agreement with Defendants Arkk Food Company ("Arkk"), Wahlburgers I, LLC ("Wahlburgers"), and Patriot Pickle, Inc. ("Patriot"), (collectively, "Defendants").

## I.    INTRODUCTION

This action involves Defendants' manufacturing and sales of Wahlburgers pickles, which Plaintiffs allege were deceptively marketed and sold to consumers as "all natural" and containing "no preservatives." Plaintiffs, individually, and on behalf of the Settlement Class,[1] with Defendants Arkk, Wahlburgers, and Patriot, have entered into a Settlement to resolve Plaintiffs' claims on a class-wide basis. As demonstrated below, the Settlement provides significant monetary relief for the Settlement Class through a non-reversionary Cash Settlement Fund of $2,000,000.00.

Balancing the risks against the substantial benefits, the Court should find that the Settlement is fair, adequate, and reasonable and enter an order: (i) granting Preliminary Approval of the Settlement; (ii) provisionally certifying the Settlement Class for settlement purposes; (iii) appointing the Plaintiffs as Class Representatives and Class Counsel as Co-Lead Counsel for the SettlementClass; (iv) approving the form and manner of the Notice Plan; (v) appointing Angeion Group as Settlement Administrator; (vi) establishing deadlines for the Opt-Out Period and Objection Period; and (vii) scheduling a Final Approval Hearing at which the Court will consider Final Approval of the Settlement, Class Certification, and Class Counsel's Application for Attorneys' Fees, Costs and Service Awards for the Class Representatives.

---

[1] Capitalized terms shall have the same meaning set forth in the Settlement Agreement unless otherwise defined herein.

## II.    SUMMARY OF THE ACTION

### A.    Plaintiffs' Allegations

This case arises from Defendants' manufacturing, distribution, advertising, marketing, labeling, distribution, and sale of Wahlburgers pickles ("Products" or "Pickles")[2] that are sold in grocery stores nationwide and marketed as, among other things, "fresh," "all natural," and containing "no preservatives" ("Representations"). Plaintiffs allege that, despite being labelled "fresh," "all natural," and preservative free, the Pickles contain considerable amounts of an artificial chemical preservative, sodium benzoate, designed to lengthen the Pickles' shelf life. Amended Complaint (ECF No. 23) ¶ 1-2[3]. Based on these allegations, Plaintiffs filed lawsuits against Defendants as described below. Defendants deny all the allegations in Plaintiffs' complaints.

### B.    Litigation, Mediation, and Settlement

On January 16, 2023, Plaintiff Counts filed a putative class action complaint against Arkk Food Company and Wahlburgers I, LLC, in the United States  District Court for the Northern District of Illinois on behalf of himself and all others similarly situated (the "Counts Action"). (EFC No. 1). On April 18, 2023, Plaintiff Counts filed an Amended Complaint (EFC No. 23) based on the Labeling Claims related to the Products, and for violations of 1) state consumer fraud acts; 2) violation of the Illinois Consumer Fraud and Deceptive Practices Act; 3) breach of express warranties on behalf of a Nationwide Class; 4) breach of express warranties on behalf of a multi-state subclass; 5) breach of express warranties on behalf of an Illinois subclass; 6) unjust enrichment on behalf of a Nationwide class; and 7) unjust enrichment on behalf of an Illinois

---

[2] The Products refer to the following Wahlburgers Pickles varieties: Fresh Dill Spears; Fresh Dill Chips; Fresh Dill Chips Hot.

[3] The reference to the Amended Complaint ECF No. pertains to the legal action of *Counts v. Arkk Food Company et al*, No. 1:23-cv-00236.

subclass.

On April 5, 2023, this Court ordered a briefing schedule for the Defendants' motion to dismiss (ECF No. 20). Plaintiff Counts filed his memorandum opposing Defendants' Motion to Dismiss on June 23, 2023. (ECF No. 29). Defendants filed their reply on July 7, 2023. (ECF No. 30).

On June 21, 2023, Plaintiff Browne filed a putative class action complaint in the United States District Court for the Eastern District of New York against Arkk Food Company and Wahlburgers I, LLC, on behalf of himself and all others similarly situated (the "Browne Action"). In his complaint, Plaintiff Browne alleged claims for violations of GBL §§ 349 and 350 on behalf of a New York class, based on the use of the Labeling Claims on the Products despite their allegedly containing sodium benzoate.

On November 3, 2023, the Court in the Counts Action issued an Order granting in part and denying in part Defendants' motion to dismiss.

On November 17, 2023, Dennis Mayer filed a putative class action complaint in the Supreme Court of the State of New York, County of Erie, against Arkk Food Company, Wahlburgers I, LLC, and Patriot Pickle Inc., on behalf of himself and all others similarly situated (the "Mayer Action"). In his complaint, Plaintiff Mayer alleged claims for violations of (1) GBL §§ 349 and 350 on behalf of a New York class, (2) breach of express warranty on behalf of a New York class, and (3) unjust enrichment on behalf of a New York class based on the Labeling Claims on the Products. On December 15, 2023, Defendants removed the Mayer Action to the United States District Court for the Western District of New York.

On November 21, 2023, the parties in the Counts Action reported to the Court that a mediation was scheduled for January. (ECF No. 38). The parties engaged in extensive pre-

mediation discovery, including the nationwide sales of the Pickles at issue. According to information provided by Defendants, they began taking steps to prevent contamination of the Products with sodium benzoate on January 3, 2023. (ECF No. 15-2, ¶ 15).

The parties in the Counts Action submitted a Joint Status Update that on January 11, 2024, the parties in the Counts Action took part in a full-day mediation with John DeGroote in Dallas, Texas. During the mediation, the parties in the Counts Action reached an agreement on the material points of a nationwide class action settlement.

As a result of the information exchanged by the parties in the Counts Action in advance of mediation, the parties entered settlement negotiations with substantial information about the merits of the legal claims and factual allegations. The parties were able to review key documents and information in this matter, which allowed them to confidently evaluate the strengths and weaknesses of Plaintiffs' claims and prospects for success at class certification, summary judgment, and trial.

After a full day of mediation, the parties in the Counts Action reached a settlement in principle, including with respect to the monetary relief to Settlement Class members, the settlement structure, and other key details. In subsequent weeks, the parties continued to negotiate the finer points of the Agreement, including the terms of the Releases, the Settlement Administrator and its respective duties, the Notice Plan, and the proposed schedule of post-settlement events. The parties further negotiated the involvement of the plaintiff in the Mayer Action in this settlement. During this process, the parties worked diligently to finalize the terms of the Agreement, ancillary documents, and the Notice Plan, completed in March 2024. The Agreement was executed on April 24, 2024.

## III.     MATERIAL TERMS OF THE SETTLEMENT

### A.     Settlement Class Definition

Plaintiffs seek Preliminary Approval of the Settlement on behalf of the following Settlement Class:

> All persons who, from May 1, 2021, to December 31, 2022, purchased one or more of the Products in the United States. Excluded from the Settlement Class and Settlement Class Members are: (a) the directors, officers, employees, and attorneys of Defendants, its parents and subsidiaries; (b) governmental entities; (c) the Court, the Court's immediate family, and Court staff; (d) John DeGroote and his immediate family; and (d) any person that timely and properly excludes himself or herself from the Settlement Class in accordance with the procedures approved by the Court.

Settlement Agreement ¶ 2.39.

**B.     The Settlement Includes Significant Monetary Relief to the Settlement Class**

**1.     Cash to the Class.**

*Cash Settlement Fund.* The Settlement provides for a Cash Settlement Fund of $2,000,000.00. The Cash Settlement Fund shall be used to pay: (1) Cash Payments to Settlement Class Members who purchased all of the varieties of Wahlburgers Pickles; (2) Service Awards to Class Representatives; (3) attorneys' fees and costs to Class Counsel; and (4) all Settlement Administration Costs.

*Claim Submission Process.* Each Settlement Class Member who timely submits a valid Claim Form shall be entitled to receive either a Cash Payment on the following terms:

*Cash Payment.* To qualify for a Cash Payment, a Claimant must submit a Claim Form no later than the Claim Filing Deadline, including Proof of Purchase of the varieties of Wahlburgers Pickles; if the Claimant does not have Proof of Purchase, the Claimant must certify the truth and accuracy of buying a Wahlburgers product. Claimants with Proof of Purchase will receive a full cash refund for each Product without limit. SA § III ¶ 3.4(a). Claimants without Proof of Purchase will receive a cash payment of $2.00 for each Product up to six Products. SA § III ¶ 3.4(b). There

may be a *pro rata* increase or reduction to each Settlement Class Member's actual amount of their Cash Payment, depending upon the total amount of dollars calculated for Valid Claims in comparison to the Net Settlement Fund

### 2. Settlement class notice.

The Parties have agreed upon a comprehensive Notice Plan, which includes a Long Form Notice, Publication Notice, and Settlement Website. SA § IV ¶¶ 4.1,4.2. Notice to the Class shall be provided on websites and/or social media platforms chosen by the Claim Administrator and accessible to desktop and mobile users so that overall notice of the Settlement is reasonably calculated to apprise the Settlement Class Members of the Settlement. SA § II ¶ 2.10, § IV ¶ 4.3. In addition, The Settlement Fund will first be used to pay for Class Notice and administration costs. *Id* ¶ § II 2.40. Notice to the Class shall be provided on websites and/or social media platforms chosen by the Claim Administrator and accessible to desktop and mobile users so that overall notice of the Settlement is reasonably calculated to apprise the Settlement Class Members of the Settlement. Such notice shall begin no later than thirty (30) days after Preliminary Approval. No later than fifteen (15) days prior to the hearing on Final Approval, the Claim Administrator shall submit a declaration to the Court under penalty of perjury explaining how the media were chosen and attesting to the number of impressions delivered. *Id* ¶ § IV 4.4. The proposed Preliminary Approval order and Long Form Notice will provide that any Settlement Class Member wishing to object or exclude themselves who fails to properly or timely file or serve any of the requested information and/or documents will be precluded from doing so. *Id* § IV ¶ 6.9.

### 3. Claims process.

Pursuant to the terms and conditions set forth in the Settlement Agreement, it is hereby acknowledged that every member of the Settlement Class shall have the right to submit a claim for

settlement benefits. To be entitled to receive a Cash payment, Settlement Class Members must accurately and timely submit the Claim form within sixty (60) days after the start of the Notice Plan. Within twenty (20) days after the Claim Filing Deadline, the Claim Administrator shall notify by email all Settlement Class Members whose claims are denied of the reason(s) for the denial. Valid Claims shall be paid electronically or by check to the Settlement Class Member and mailed to the address provided on the Claim Form, as updated in the National Change of Address Database, sixty (60) days after Final Approval. *Id* ¶ 3.12.

### 4. Disposition of residual funds.

Any cash that remains in the Settlement Fund from uncashed checks, the remaining funds will be distributed to the Center for Science and the Public Interest ("CSPI") as a *cy pres* award. Under no circumstances shall any cash remaining in the Settlement Fund revert or otherwise be returned to Defendants. *Id* § III ¶ 3.8. If there are remaining funds in the Settlement Fund after calculating and paying all valid claims, they will be equitably distributed among eligible Settlement Class Members on a *pro rata* basis to augment their claimed relief for cash. *Id*.

### 5. Settlement administrator.

The proposed Claim Administrator, Angeion, is well-respected and reputable and was mutually selected by the Parties through a competitive bidding process. *See geneally,* Declaration of Steven Weisbrot, Esq. ("Admin Decl."); Declaration of Kevin Laukaitis ("Laukaitis Decl.") ¶ 10. The Claim Administrator shall be solely responsible for, among other things, providing notice as set forth in the Notice Plan, processing Claim Forms, administering the Settlement Website, administering the exclusion process, administering the Settlement Benefit claims process described herein (including receiving and maintaining on behalf of the Court and the Parties any Settlement Class Member correspondence regarding requests for exclusion from the Settlement

Class), and such other duties as may be reasonably necessary to administer the terms of this Agreement. SA § III ¶ 3.9. The duties of the Claim Administrator are as follows: (i) shall not approve duplicate or multiple claims for the same purchase but shall deem valid only one claimant for each purchase: (ii) will use adequate and customary procedures and standards to prevent the payment of fraudulent claims and to pay only Valid Claims; (iii) The Claim Administrator and Parties shall have the right to audit claims, and the Claim Administrator may request additional information from Claimants; (iv) shall have discretion to reasonably approve or deny each claim; (v) reviewing Claim Forms, notifying Claimants of deficient Claim Forms using the Notice of Missing or Inaccurate Information, and sending Cash Payments to Settlement Class Members; (vi) stablishing and maintaining the Cash Settlement Fund escrow bank account approved by the Parties; (vii) establishing and maintaining a post office  box for opt-out requests from the Settlement Class and to receive Claim Forms; (viii) establishing and maintaining an automated toll-free telephone line for Settlement Class members to call with Settlement-related inquiries, and providing answers to the frequently asked questions of Settlement Class members who call with or otherwise communicate such inquiries; (ix) responding to any mailed Settlement Class member inquiries (x) providing weekly reports to Class Counsel and Defendants' Counsel that summarize the number of Claims submitted, Claims approved and rejected, opt-out requests received that week, the total number of opt-out requests received to date, and other pertinent information; (xi) in advance of the Final Approval Hearing, preparing a declaration to submit to the Court confirming that the Notice Plan was completed in accordance with the terms of the Agreement and the Preliminary Approval Order, describing how the Notice Plan was completed, indicating the amount of valid Claim Forms received, providing the names of each Settlement Class member who timely and properly requested to opt-out from the Settlement Class, and other information as

may be necessary to allow the Parties to seek and obtain Final Approval; (xii) distributing, out of the Net Settlement Fund, Settlement Class Member Cash Payments by paper check, unless a Settlement Class Member elects to receive payment by electronic means; (xiii) paying Court-approved attorneys' fees and costs, and Service Awards out of the Cash Settlement Fund; (xiv) paying Settlement Administration Costs out of the Cash Settlement Fund following approval by Settlement Class Counsel; (xv) provide CAFA Notice to the Settlement Class members;and (xvi) any other Settlement Administration function at the instruction of Settlement Class Counsel and the Defendants, including, but not limited to, verifying that the Cash Settlement Fund have been properly administered and that the Cash Payments have been properly distributed. All fees and expenses incurred by the Claim Administrator in administering claims and performing the other tasks set forth in Section III of the Settlement Agreement shall be paid from the Settlement Fund. *See* Exhibit 1 to the Declaration of Kevin Laukaitis, filed concurrently herewith.

### 6. Opt-Out & Objection Procedures

If any Settlement Class Member wishes to be excluded from (in other words, opt out of) this Settlement, the Settlement Class Member may do so by completing the exclusion form at the Settlement Website, downloading and submitting to the Claim Administrator a completed exclusion form; or submitting a valid request to exclude themselves, as described in the Notice, to the Claim Administrator. *Id* § IV ¶ 6.8. Requests to exclude themselves must be delivered (not just postmarked) by the Opt-Out and Objection Deadline or they shall not be valid. A Settlement Class Member who elects to exclude themselves from this Settlement shall not be permitted to object to this Settlement or to intervene. Any Settlement Class Member who does not submit a timely request for exclusion shall be bound by all subsequent proceedings, orders, and the Final Approval in the Counts Action relating to this Settlement Agreement, even if he or she has pending, or

9

subsequently initiates litigation or any other proceeding against Defendants' relating to the Released Claims. *Id*. Immediately upon receipt of any objection, the Claim Administrator shall forward the objection and all supporting documentation to counsel for the Parties. At least fifteen (15) days prior to the hearing on Final Approval, Plaintiffs' Counsel shall file all such objections and supporting documentation with the Court along with any response to the objection made by the Parties. *Id* § IV ¶ 6.10. At least fifteen (15) days prior to the hearing on Final Approval, the Class Administrator shall prepare a list of the names of the persons who, pursuant to the Long Form Notice, have excluded themselves from the Settlement Class in a valid and timely manner. *Id* § IV ¶ 6.11.

A Settlement Class Member who objects to the Settlement may also submit a Claim Form on or before the Claim Filing Deadline, which shall be processed like all other Claim Forms and shall not be entitled to an extension to the Claim Filing Deadline. The proposed Preliminary Approval order and Long Form Notice will provide that any Settlement Class Member wishing to object or exclude themselves who fails to properly or timely file or serve any of the requested information and/or documents will be precluded from doing so.

For an objection to be considered by the Court, the objection must be submitted no later than the last day of the Objection Period, as specified in the Notice. *See* Exhibit C1 to the Settlement Agreement. It must also set forth: (a) the objector's full name, mailing address, telephone number, and email address (if any); (b) The name of the case: *Counts et al v. Arkk Food Company*, Case Number 1:23-cv-00236; (c) A statement of why the Settlement Class member wants to be excluded from this Settlement and it has to be properly signed.

### 7.  Release of claims.

Upon the Effective Date and by operation of the judgment, the Releasing Parties shall have

fully, finally, and forever released, relinquished, and discharged against the Released Parties all Released Claims (including, without limitation, any unknown claims), as well as any claims arising out of, relating to, or in connection with, the defense, settlement or resolution of the Actions or the Released Claims. The Released Parties may file the Agreement and/or the Final Approval order in any action or proceeding that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim SA § VII ¶¶ 7.1-7.2.

### 8. Attorneys' fees, costs, and service awards.

The court shall determine the amount of any attorneys' fees, costs, or Service Awards. No later than thirty-five (35) days prior to the Opt-Out/Objection Deadline, Class Counsel shall apply to the Court for an award of its Attorneys' Fees in a total amount not to exceed 37.5% of the Settlement fund or $750,000.00. In addition, Class Counsel intends to move for Service Awards of $5,000.00 for each Class Representative (for a total of $15,000.00), subject to approval by the Court, as compensation for (a) the work they performed to represent the class, and (b) the general release set forth in Section 7.1 of the Settlement Agreement. Defendants agree not to oppose Plaintiffs' Counsel's application for Attorneys' Fees and Costs or Plaintiffs' application for Service Awards. SA § V ¶¶ 5.1-5.2. Counsel and Plaintiffs agree that the denial, downward modification, failure to grant the request for Attorneys' Fees and Costs or a Service Award, or the reversal or modification on appeal of any such awards, shall not constitute grounds for modification or termination of the settlement. All Attorneys' Fees and Costs, as well as the Services Awards, shall be paid from the Settlement Fund. *Id* § V. Plaintiff's Counsel have agreed to pay counsel for Plaintiff Mayer $75,000 from any award of attorney fees in recognition of their

efforts in bringing and prosecuting that action.

### IV. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND WARRANTS PRELIMINARY APPROVAL

The Settlement was negotiated at arm's length by competent, experienced counsel, with the assistance of a highly regarded mediator, John DeGroote. Laukaitis Decl. ¶ 4. It provides Settlement Class Members substantial monetary relief promptly and efficiently while at the same time mitigating the risk of protracted litigation and/or a negative outcome that would preclude any recovery whatsoever for the Settlement Class. *id*. The Settlement meets all the Seventh Circuit's standards for approving class action settlements and, therefore, warrants Preliminary Approval.

"Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996); *see also Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 986 (7th Cir. 2002); Newberg § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). "In reviewing a proposed settlement, the court should consider the judgment of counsel and the presence of good faith bargaining." *Patterson v. Stovall*, 528 F.2d 108, 114 (7th Cir. 1976), overruled on other grounds *by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Zolkos v. Scriptfleet, Inc.*, No. 12-9230, 2014 WL 7011819, at *1 (N.D. Ill. Dec. 12, 2014) (internal citation and quotation marks omitted); *cf. Smith v. Sprint Commc'ns Co.*, 387 F.3d 612, 614 (7th Cir. 2004) ("The fact that a settlement has been reached is, of course, relevant.").

At the preliminary approval stage, the Court's task is to "determine whether the proposed settlement is within the range of possible approval." *Armstrong v. Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980) (internal citation and quotation marks omitted) (at the final

12

fairness hearing, the court will "adduce all information necessary to enable [it ] intelligently to rule on whether the proposed settlement is fair, reasonable, and adequate"), overruled on other grounds by *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). Courts in this district perform a "summary version" of the final fairness inquiry at the preliminary approval stage. See, e.g., *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 346 (N.D. Ill. 2010) ("*In re AT&T*") (quoting *Kessler v. Am. Resorts Int'l's Holiday Network, Ltd.*, Nos. 05-5944, 07-2439, 2007 WL 4105204, at *5 (N.D. Ill. Nov. 14, 2007)). Accordingly, the Court's task on a motion for preliminary approval is "limited to the consideration of whether the proposed settlement is lawful, fair, reasonable, and adequate." Isby, 75 F.3d at 1196; *see also E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985). In making these determinations, the court considers five factors: (1) the strength of the plaintiff's case compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement among affected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed. *Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, Nos. 07-2898, 09-2026, 2012 WL 651727, at *2 (N.D. Ill. Feb. 28, 2012) (citation omitted). Each of these factors weighs in favor of approval of the Settlement and Preliminary Approval.

### A. The Settlement Amount is Substantial Given the Strengths of Plaintiffs' Claims and Attendant Risks (Factor 1)

"The most important factor relevant to the fairness of a class action settlement is . . . the strength of the plaintiff's case on the merits balanced against the amount offered in the settlement." *Synfuel Techs, Inc. DHL Express (USA), Inc.,* 463 F.3d 646, 653 (7th Cir. 2006) (internal quotes and citations omitted). "Because the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to the plaintiffs." *In re AT&T Mobility*, 270 F.R.D. at 347 (citations omitted).

13

Notwithstanding that Plaintiffs believe their claims against Defendants have merit, they are pragmatic and understand the legal uncertainties associated with continued litigation that pose a substantial risk of non-recovery to the Settlement Class. *See* Laukaitis Decl. ¶ 5; *see In re Southwest Airlines Voucher Litig.*, No. 11-8176, 2013 WL 4510197, at *7 (N.D. Ill. Aug. 26, 2013) ("In considering the strength of plaintiffs' case, legal uncertainties at the time of settlement favor approval."). Even though Plaintiffs survived a motion to dismiss, Defendants deny all liability in this action and will additionally oppose Plaintiffs' anticipated motion for class certification. Denial of class certification would result in no recovery at all for the Settlement Class. Plaintiffs maintain that Defendants face substantial risk, therefore warranting the recovery obtained in this Settlement. Plaintiffs also acknowledge that settling now reduces risks to themselves and the Settlement Class. *See* Laukaitis Decl. ¶ 6.

## B. Further Litigation Would Be Complex, Costly, and Lengthy (Factor 2)

Preliminary approval is also favored because "[s]ettlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011). If this litigation were to continue on the merits, it would be lengthy, expensive, and involve extensive motion practice, including a motion for class certification (and possibly a motion for decertification), motions for summary judgment, and various pretrial motions, as well as extensive fact and expert discovery, including the preparation of expert reports, expert depositions, and Daubert motions. *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("[C]lass action suits have a well-deserved reputation as being most complex."). And proceeding to trial would take years with substantial costs to both sides.

Rather than embarking on years of protracted and uncertain litigation, Plaintiffs and their counsel took advantage of the opportunity to negotiate a Settlement that provides immediate,

14

certain, and meaningful relief to all Settlement Class members. *Schulte*, 805 F. Supp. 2d at 586. When balanced against the significant costs, risks, and delay of proceeding with this litigation, the immediacy and certainty of a recovery weigh in favor of settlement. *See Lane v. Facebook*, *Inc*., 696 F.3d 811, 820 (9th Cir. 2012) ("the immediate benefits represented by the Settlement outweighed the possibility—perhaps remote—of obtaining a better result at trial"); *In re Netflix Privacy Litig.*, No. 11-379, 2013 WL 1120801, at *5 (N.D. Cal. Mar. 18, 2013) (determining that the settlement was fair, adequate, and reasonable when the calculation of the value of the case took into account the time value of money). Accordingly, the second factor weighs in favor of finding the Settlement fair, reasonable, and adequate.

### C. The Court Cannot Assess the Reaction of the Settlement Class Until After Notice Issues (Factor 3)

Notice regarding the Settlement has not yet been distributed. In the event any objections are received after the Notice is disseminated, they will be addressed in connection with Plaintiffs' Motion for Final Approval.

### D. Competent Counsel Endorse this Agreement (Factor 4)

Plaintiffs respectfully submit that they have retained counsel who are qualified, experienced, and fully capable of prosecuting this litigation on behalf of the Settlement Class. The firms involved in this litigation have proven track records in prosecuting complex class actions nationwide. See Laukaitis Decl. ¶ 2 and Exhibits 2-3 thereto. In assessing the qualifications of counsel under this factor, a court may rely upon affidavits submitted by class counsel and its own observations of class counsel during the litigation. *Isby*, 75 F.3d at 1200. Bringing this experience and knowledge to bear, Class Counsel believes that the Settlement is fair, reasonable, and adequate, and is in the best interests of the Settlement Class, especially since the Settlement achieves monetary relief similar to (if not *greater* than) what Plaintiffs and the Class could have

obtained at trial. Laukaitis Decl. ¶ 7. *See McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 812 (E.D. Wis. 2009) (that "counsel endorses the settlement, and it was achieved after arms-length negotiations facilitated by a mediator . . . suggest that the settlement is fair and merits final approval."); *see also In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1020 (N.D. Ill. 2000) (placing "significant weight on the… strong endorsement of [this] settlement" by a "well-respected" attorney).

      **E.    Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (Factor 5)**

The last factor concerns the stage of the proceedings and the amount of discovery completed at the time the settlement is reached. *Synfuel Techs. Inc.*, 463 F.3d at 653. This factor "indicates how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07-2898, 2011 WL 3290302 (N.D. Ill. July 26, 2011) (quoting *Armstrong*, 616 F.2d at 325) (internal quotations omitted).

Plaintiffs and Class Counsel's knowledge of the merits and strengths and weaknesses of the claims is certainly adequate to support the Settlement here. Indeed, it was only after substantial briefing in connection with the motion to dismiss and after written and document discovery was exchanged, that the Parties engaged in mediation.

**V.    CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE**

Plaintiffs seek to certify the Settlement Class for settlement purposes. The Seventh Circuit has long acknowledged the propriety of certifying a class solely for purposes of a class action settlement. "Provisional settlement, class certification, and appointment of class counsel have several practical purposes, including avoiding the costs of litigating class status while facilitating a global settlement, [and] ensuring notification of all class members of the terms of the proposed

[s]ettlement [a]greement, and setting the date and time of the final approval hearing." *Zolkos v. Scriptfleet, Inc.*, No. 12-8230, 2014 WL 7011819, at *2 (N.D. Ill. Dec. 12, 2014); *see also Newberg* § 11.27 ("When the court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only.").

Under Rule 23(a), a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b). As set forth below, Plaintiffs meet all the requirements.

### A.   Rule 23(a) is Satisfied

First, under Rule 23(a), the Court must determine whether it is likely to find that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Each requirement is satisfied here.

### 1.   The class is so numerous that joinder of all members is impracticable.

Rule 23(a)(1) requires that the class be so numerous that joinder of all members is impracticable. *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 643 (N.D. Ill. 2002) ("Although there is no 'bright line' test for numerosity, a class of forty is generally sufficient to satisfy Rule 23(a)(1)."). Here, purchasers of the Products during the relevant time period are indisputably in the tens of thousands and are geographically located throughout the United States, making joinder impracticable. Laukaitis Decl. ¶ 8. Thus, the numerosity requirement is easily met.

### 2.   There are questions of law and fact common to the Class.

The commonality requirement is satisfied where, as here, there are "questions of law or

fact common to the class." Fed. R. Civ. P. 23(a)(2). To establish commonality, class members must have "suffered the same injury," and "[t]heir claims must depend upon a common contention." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). "[F]or purposes of Rule 23(a)(2) even a single common question will do." *Id*. at 359 (cleaned up); *Parker v. Risk Mgmt. Alternatives, Inc.*, 206 F.R.D. 211, 213 (N.D. Ill. 2002) ("[A] common nucleus of operative fact is usually enough to satisfy the [commonality] requirement"). Here, common questions include but are not limited to whether the Pickles contained sodium benzoate and Defendants' failure to disclose that the Pickles allegedly contained sodium benzoate and that the front label of the Pickles containing the words "All Natural" and "No Preservatives" was likely to deceive reasonable consumers. Resolution of this common question would require evaluation of the question's merits under a single objective standard. *See Kitzes v. Home Depot, USA, Inc.*, 374 Ill. App. 3d 1053, 1061, 313 Ill. Dec. 293, 872 N.E.2d 53, 60-61 (2007).

### 3. The claims of the representative parties are typical of the claims of the class.

Rule 23(a)(3), the typicality requirement, is satisfied when a plaintiff shows that the claims of the named plaintiffs arise from the same practice or course of conduct that gives rise to the claims of the proposed class members. *Parker,* 206 F.R.D. at 213 ("Typicality is satisfied if a plaintiff's claims arise from the same event, practice or course of conduct that gives rise to the claim of the other class members, and if the claims are based on the same legal theory."). Here, Plaintiffs' claims, legal theories, and evidence are identical to those of other members of the Settlement Class. Plaintiffs, like all members of the Settlement Class, purchased the Products during the Class Period and suffered damages because of Defendants alleged material misstatements and omissions. Accordingly, Rule 23(a)(3) typicality requirement is satisfied.

### 4. The representative parties will fairly and adequately protect the interests

of the class.

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This prerequisite of Rule 23(a) has two components: (1) "the representatives must not possess interests which are antagonistic to the interests of the class," and (2) "the representatives' counsel must be qualified, experienced, and generally able to conduct the proposed litigation." *In re TikTok, Inc.*, *Consumer Priv. Litig.*, 565 F. Supp. 3d 1076, 1085 (N.D. Ill. 2021) (quoting *CV Reit, Inc. v. Levy*, 144 F.R.D. 690, 698 (S.D. Fla. 1992)); *see also Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 598 (7th Cir. 1993).

Here, Plaintiffs' interests are coextensive with those of the Settlement Class. Like all members of the Settlement Class, Plaintiffs have claims against the Defendants in connection with their purchase of Products during the Class Period. Plaintiffs, like all members of the Settlement Class, were also allegedly injured by the Defendants' wrongful acts. Proof of Plaintiffs' claims would necessarily involve adjudicating the same issues of law and fact as the claims of the Settlement Class as a whole. Thus, Plaintiffs, and the Settlement Class they seek to represent, have the same interests in recovering damages allegedly caused by Defendants' wrongful conduct. Likewise, Class Counsel are highly qualified and have vast experience litigating consumer class actions. See Laukaitis Decl., ¶ 2, Ex. 2-3; *see also* § I, *infra*. Accordingly, Class Counsel will also adequately protect the Settlement Class.

### B. Rule 23(b)(3) is Satisfied

Rule 23(b)(3) requires the court to find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). District courts have broad discretion in making class

certification decisions. *In re AT&T*, 270 F.R.D. at 340. Factors particularly pertinent to these issues here "include: (A) the class members' interests in individually controlling the prosecution ... of separate actions" and "(B) the extent and nature of any litigation concerning the controversy already begun." *See id*. These prerequisites are satisfied here. Further, the manageability concerns of Rule 23(b)(3) are not an issue for a settlement class. *See Amchem, Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("a district court need not inquire whether the case if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

      **1.**      **Common questions predominate.**

Here, Plaintiffs' claims involve common questions of law and fact because the same set of operative facts applies to the Settlement Class. Specifically, common questions include whether the Products contained sodium benzoate, whether Defendants omitted or failed to disclose material information to Plaintiffs and the Settlement Class regarding the alleged sodium benzoate, and whether the Settlement Class was harmed. Accordingly, whether Defendants engaged in unfair or deceptive practices will entail common proof. *In Basic v. Levinson*, 485 U.S. 224 (1988), the Supreme Court dispensed with the requirement that each settlement class member prove individual reliance on a defendant's alleged misstatements and/or omissions. Thus, the "predominance" requirement is satisfied.

      **2.**      **Class treatment of Plaintiffs' claims is superior.**

The requirement of superiority is also met because, given the relatively modest amounts that Settlement Class members would stand to recover in individual actions, it is improbable that many "would possess the initiative to litigate individually." *See Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1165 (7th Cir. 1974); *cf. Amchem*, 521 U.S. at 617, 117 S.Ct. 2231 ("The policy at the very core of the class action mechanism is to overcome the problem that small

recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." (cleaned up)). A class action is a superior method for the fair and efficient adjudication of these claims. Plaintiffs' claims are shared by thousands of consumers nationwide, and resolution of all Settlement Class Members' claims in a single proceeding promotes judicial efficiency and avoids inconsistent decisions. *See Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 155 (1982) (noting "the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion under Rule 23"). Further, it is unlikely that any Settlement Class member would be willing or able to pursue relief on an individual basis given that the Products sell for under $10.

## VI.    PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL

Rule 23(g), which governs the standards and framework for appointing class counsel for a certified class, sets forth four criteria the district court must consider in evaluating the adequacy of proposed counsel: (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

The Court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class[.]" Fed. R. Civ. P. 23(g)(1)(B). The Advisory Committee has noted that "[n]o single factor should necessarily be determinative in a given case." Fed. R. Civ. P. 23(g) advisory committee's note.

Here, qualified and competent Class Counsel represent the Plaintiffs and the Settlement Class. Each firm is a leader in the class action field, and each attorney has extensive experience prosecuting and resolving complex class actions. Before commencing litigation, Class Counsel

investigated the potential claims against the Defendants, interviewed potential plaintiffs, and gathered information regarding the alleged presence of sodium benzoate in the Pickles. Laukaitis Decl. ¶ 13. Class counsel also reviewed Defendants' production and sales and assessed the overall value of this case should it proceed to trial. Considering the exceptional monetary relief achieved by this Settlement at this early stage, Reese LLP and Laukaitis Law LLC should be appointed Co-Lead Class Counsel.

## VII.    THE NOTICE PLAN CONTAINS THE BEST NOTICE PRACTICABLE

If the Court finds that it will likely be able to certify the Settlement Class and that the proposed Settlement is within the range of possible approval, the Court must then direct the Plaintiffs to provide notice "in a reasonable manner to all class members who would be bound" by the proposed settlement agreement. Fed. R. Civ. P. 23(e)(1). For any Rule 23(b)(3) class proposed to be certified for purposes of a settlement under Rule 23(e), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). This notice requirement "is designed to guarantee that those bound by the ruling in a class action were accorded their due process rights to notice and an opportunity to be heard." *Chaffee v. A&P Tea Co.*, Nos. 79 C 2735 and 79 C 3625, 1991 WL 5859, at *2 (N.D. Ill. Jan. 16, 1991).

The Notice PlanPlan satisfies the foregoing criteria. It includes a Long Form Notice, Publication Notice, Settlement Website, and toll-free telephone number, and shall provide, among other information: a description of the material terms of the Settlement; how to submit a Claim Form; the Claim Filing Deadline; a date by which Settlement Class members may opt-out of the Settlement Class; a date by which Settlement Class Members may object to the Settlement and/or to Class Counsel's Application for Attorneys' Fees, Costs and Service Awards; the date the Final

Approval Hearing is scheduled to occur; and the Settlement Website address at which Settlement Class members may access this Agreement and other related documents and information. SA § IV ¶¶ 4.1-4.7 The Notice Plan is designed to directly reach a very high percentage of Settlement Class members through the Publication Notice, which will be published on websites and/or social media platforms to be agreed upon by the Parties and the Settlement Administrator. *Id.* see Admin. Decl. ¶¶ 18-49. Thus, the Court should approve the Notice Plan, including the form and content of the Notices. *See* SA at Ex. C1, C2, C3.

## VIII.   LEAVE TO AMEND COMPLAINT

Plaintiffs respectfully request the Court grant leave to file the Second Amended Complaint. Federal Rule of Civil Procedure 15 provides that courts "should freely give leave" to amend in the early stages of litigation "when justice so requires." Fed. R. Civ. P. 15(a)(2). This permissive standard is consistent with the Seventh Circuit's strong preference for resolving disputes on the merits. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 520 (7th Cir. 2015) (citations omitted) ("In the face of that uncertainty, applying the liberal standard for amending pleadings, especially in the early stages of a lawsuit, is the best way to ensure that cases will be decided justly and on their merits.").

The proposed Amended Complaint allows the Parties to resolve all claims in the most efficient manner and conserve precious judicial resources. First, it unifies the three separate actions into a single action. Second, it incorporates a nationwide class under a single set of uniform claims (i.e. fraud under Massachusetts common law and unjust enrichment). This has the dual benefit of bringing uniformity to the claims, and ensuring a nationwide resolution; both of which provide the maximum benefit to the nationwide class. Third, it avoids the necessity of filing fifty actions in fifty states to reach the same conclusion. Not only does this preserve judicial resources; it also avoids the potential for competing and contrary resolutions. This also preserves party resources by

avoiding 50 separate notice campaigns and the administrations of fifty different settlements. Finally, it creates greater ease and clarity for Class Members by directing them to a single settlement through a single administrator.

## IX. PROPOSED SCHEDULE OF POST-SETTLEMENT EVENTS

Plaintiffs respectfully propose the following schedule for the Court's review and approval, which summarizes the deadlines in the Preliminary Approval Order. If the Court agrees with the proposed schedule, Plaintiffs request that the Court schedule the Final Approval Hearing for such date available on the Court's calendar.

| | |
|---|---|
| Deadline to start Notice Plan | *At least 30 days after entry of Preliminary Approval Order* |
| Class Counsel's Application for Attorneys' Fees, Costs and Service Awards | *56 days before Final Approval Hearing* |
| Deadline for filing Motion for Final Approval | *30 days before Final Approval Hearing* |
| Opt-out Period Ends | *21 days before Final Approval Hearing* |
| Objection Period Ends | *21 days before Final Approval Hearing* |
| Deadline for filing Class Counsel Reply in Support fo Application for Attorney's Fees, Costs and Service Awards, as well as Motion for Final Approval | *15 days before Final Approval Hearing* |
| Deadline for Objectors to file Notice of Appearance for Final Approval Hearing | *15 days before Final Approval Hearing* |
| Deadline to file List of Exclusions and Declaration of Notice Plan | *15 days before Final Approval Hearing* |
| Final Approval Hearing | *_____ at ____ a.m./p.m., or such later date available on the Court's calendar* |
| Claim Filing Deadline | *60 days after the start of the Notice Plan* |
| Deadline for Notice of Claim Denial | *20 days after Claim Filing Deadline* |

## X.    CONCLUSION

For the foregoing reasons, Plaintiffs and Class Counsel respectfully request that the Court:

1.    Preliminarily approve the Settlement;

2.    Certify the Settlement Class for settlement purposes;

3.    Approve the Notice Plan, including the Opt-Out and Objection procedures;

4.    Approve the Claims process;

5.    Appoint Michael Reese and Charles D. Moore of Reese LLP and Kevin Laukaitis of Laukaitis Law LLC as Co-Lead Class Counsel;

6.    Appoint Angeion Group as the Settlement Administrator; and

7.    Enter the proposed Preliminary Approval Order attached hereto as Exhibit D.

Date: April 26, 2024                    Respectfully submitted,

*/s/ Kevin Laukaitis*
Kevin Laukaitis
**LAUKAITIS LAW LLC**
954 Avenida Ponce De Leon
Suite 205, #10518
San Juan, Puerto Rico 00907
Phone: (215) 789-4462
klaukaitis@laukaitislaw.com

**REESE LLP**
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, New York 10025
Phone: (212) 643-0500
Email: mreese@reesellp.com

**REESE LLP**
Charles D. Moore
100 West 93rd Street, 16th Floor
New York, New York 10025
T: (212) 643-0500
cmoore@reesellp.com

*Attorneys for Plaintiffs and the Proposed Class*

**POMERANTZ LLP**
Gustavo F. Bruckner
Samuel J. Adams
Ankita Sangwan
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
gfbruckner@pomlaw.com
sjadams@pomlaw.com
asangwan@pomlaw.com

**THE FINK LAW FIRM, P.C**.
Steven M. Fink
488 Madison Avenue, 20th Floor
New York, New York 10022
Telephone: (212) 280-6600
Facsimile: (212) 898-1117
sfink@thefinklawfirmpc.com

*Additional Attorneys for Plaintiff Dennis Mayer*

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 26, 2024, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all

CM/ECF participants in this case.


*/s/ Kevin Laukaitis*
Kevin Laukaitis