# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KYLE COUNTS, DAMANY BROWNE, and DENNIS MAYER, individually and on behalf of all others similarly situated,<br><br><div align="center">Plaintiffs,</div><br>  v.<br><br>ARKK FOOD COMPANY, a Michigan corporation, WAHLBURGERS I, LLC, a Massachusetts limited liability company, and PATRIOT PICKLE, INC., a New Jersey corporation,<br><br><div align="center">Defendants.</div> | Case No.: 1:23-cv-00236 |

## <u>SETTLEMENT AGREEMENT</u>

Subject to the approval of the Court and pursuant to Rule 23 of the Federal Rules of Civil Procedure, this Class Action Settlement Agreement and Release, including the attached Exhibits ("Settlement Agreement"), is entered into between Plaintiffs Kyle Counts ("Counts"), Damany Browne ("Browne") and Dennis Mayer ("Mayer") (collectively, the "Plaintiffs"), on behalf of themselves and those similarly situated, (hereinafter the "Settlement Class Members"), and Defendants Arkk Food Company ("Arkk"), Wahlburgers I, LLC ("Wahlburgers I"), and Patriot Pickle, Inc. ("Patriot") (collectively "Defendants"). Plaintiffs and Defendants are collectively referred to as "the Parties."

## I.   RECITALS

1.1    WHEREAS, on January 3, 2023, Grillo's Pickles, Inc. filed an action in the United States  District Court for the District of New Jersey, *Grillo's v. Patriot Pickle Inc. et al*, Case No. 2:23-cv-00011 (D.N.J.) (the "Grillo Action"), against Defendants  alleging: (1) violation of the Lanham Act 15 U.S. C. § 1125(a); and (2) common law unfair competition; based on Defendants' Wahlburgers-branded pickles ("the Products"), being labeled: (a) "fresh"; (b) "all natural"; and (c)

"no preservatives" (collectively the "Labeling Claims"), while the Products allegedly contained sodium benzoate.

1.2     WHEREAS, on January 16, 2023, Plaintiff Counts filed a putative class action complaint in the United States District Court for the Northern District of Illinois, captioned *Counts v. Arkk Food Company et al*, Case No. 1:23-cv-00236 (the "*Counts* Action"), against ARKK and Wahlburgers on behalf of himself and all others similarly situated. In his complaint, Plaintiff Counts alleged claims for violations of: (1) multiple state consumer fraud acts, including New York, on behalf of a multi-state class; (2) Illinois Consumer Fraud and Deceptive Practices Act ("ICFA") on behalf of an Illinois subclass; and (3) unjust enrichment on behalf of nationwide, Illinois, and multi-state classes based on the use of the Labeling Claims on the Products despite their allegedly containing sodium benzoate.

1.3     WHEREAS, on March 28, 2023, ARKK and Wahlburgers filed a motion to dismiss the *Counts* Action, asserting Plaintiff Count's failure to state a claim, lack of standing to sue under state consumer fraud acts other than Illinois, and seeking to strike the nationwide and multi-state class allegations.

1.4     WHEREAS, on April 18, 2023, Plaintiff Counts filed an amended complaint against ARKK and Wahlburgers based on the Labeling Claims related to the Products, and for violations of: (1) multiple state consumer fraud acts, including New York General Business Law ("GBL") §§ 349 and 350 and the consumer protection statutes of nine other states, on behalf of a multi-state class; (2) the ICFA on behalf of an Illinois subclass; (3) breach of express warranties of 49 states and the District of Columbia on behalf of a nationwide class; (4) breach of express warranty of ten states on behalf of the multi-state class; (5) breach of express warranty under Illinois law on behalf of the Illinois class; (6) unjust enrichment on behalf of nationwide class; and (7) unjust enrichment on behalf of the Illinois class.

1.5     WHEREAS, on June 21, 2023, Plaintiff Browne filed a putative class action complaint in the United States District Court for the Eastern District of New York, captioned *Browne v. Arkk Food Company et al*, Case No. 1:23-cv-04603 (the "*Browne* Action"), against

2

ARKK and Wahlburgers on behalf of himself and all others similarly situated. In his complaint, Plaintiff Browne alleged claims for violations of GBL §§ 349 and 350 on behalf of a New York class, based on the use of the Labeling Claims on the Products despite their allegedly containing sodium benzoate.

1.6    WHEREAS, on November 3, 2023, the Court in the *Counts* Action issued an Order granting in part and denying in part Defendants' motion to dismiss. Specifically, the Court in the *Counts* Action dismissed the breach of express warranty claims and struck the express warranty classes.

1.7    WHEREAS, on November 17, 2023, Plaintiff Mayer filed a putative class action complaint in the Supreme Court of the State of New York, County of Erie, captioned *Mayer v. Patriot Pickle Inc. et al*, Index No. 814871/2023, against Defendants on behalf of himself and all others similarly situated. In his complaint, Plaintiff Mayer alleged claims for violations of (1) GBL §§ 349 and 350 on behalf of a New York class, (2) breach of express warranty on behalf of a New York class, and (3) unjust enrichment on behalf of a New York class based on the Labeling Claims on the Products (the "*Mayer* Action"). On December 15, 2023, Defendants removed the *Mayer* Action to the United States District Court for the Western District of New York, No. 1:23-cv-1299 (W.D.N.Y.)

1.8    WHEREAS, the Parties strongly disagree on the merits and viability of the claims set forth in the *Counts* Action, *Browne* Action, and *Mayer* Action (collectively, the "Actions").

1.9    WHEREAS, the Parties have engaged in extensive interrogatory and document discovery directed at both liability and class certification in the *Counts* Action since May 2023.

1.10   WHEREAS, Plaintiffs have not filed motions for class certification in any Action.

1.11   WHEREAS, Defendants deny all of the allegations made in the Actions and all charges of wrongdoing or liability against them arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged against them by Plaintiffs either on an individual basis, or on behalf of the putative classes. Defendants also deny that the claims asserted in the Actions meet the requirements for certification as a class action, other than for purposes of

settlement. Defendants further deny that the evidence supports a finding of liability or monetary or equitable relief to Plaintiffs, any additional putative class representative, or any member of the Settlement Class (as defined below), with respect to any of the Labeling Claims (as defined below) or other allegations made by Plaintiffs.

    1.12    WHEREAS, Plaintiffs believe all claims are viable and subject to class certification.

    1.13    WHEREAS, the Parties have engaged in extensive arm's length, good-faith negotiations in an effort to reach a resolution of the Labeling Claims (as defined below). Such negotiations culminated in an all-day, in-person mediation with mediator John DeGroote on January 11, 2024 in Dallas, Texas.

    1.14    WHEREAS, the Parties, and their respective counsel, taking into account the risks, uncertainties, delay, and expense involved in pursuing the Labeling Claims, as well as other relevant considerations, have concluded that it is in the best interests of Plaintiffs and Defendants to compromise fully and finally settle all claims relating to the alleged sodium benzoate in the Products ("Labeling Claims").

    1.15    WHEREAS, the attorneys representing Plaintiffs (hereinafter referred to as "Class Counsel") are experienced in litigating class action claims like the Labeling Claims asserted by Plaintiffs.

    1.16    WHEREAS, Class Counsel has analyzed and evaluated the merits of all Parties' contentions and this settlement as it affects all Parties and the Settlement Class Members (as defined below). Among the risks and uncertainties of the Actions is the possibility that Plaintiffs will be unable to prove liability or damages (individually or on a class wide basis) at trial on a class wide or individual basis. Plaintiffs and Class Counsel, after taking into account the foregoing, along with the risks, uncertainties and costs of further prosecution of the Actions, are satisfied that the terms and conditions of this Agreement are fair, reasonable, adequate, and equitable, and that a settlement and the prompt provision of meaningful benefits to the Settlement Class are in the best interests of the Settlement Class Members.

1.17    WHEREAS, Defendants, while continuing to deny all allegations of, and disclaiming any liability with respect to any and all Labeling Claims, have concluded that it is in their best interest to resolve the Labeling Claims on the terms stated in this Agreement, in order to avoid further expense, inconvenience, and interference with ongoing business operations, and to dispose of burdensome litigation.

1.18    WHEREAS, the undersigned Parties agree, subject to approval by the Court, that the Labeling Claims asserted by Plaintiffs shall be fully and finally compromised, settled and released on the terms and conditions set forth in this Agreement. The Parties intend that the Court conditionally certify a class for settlement and that this Agreement will encompass and end all pending, threatened, or possible litigation or claims of Plaintiffs against Defendants based on the subject matter of the Labeling Claims (as defined below).

1.19    WHEREAS, for purposes of settlement only, Plaintiff Counts will seek leave of Court to amend his complaint in the *Counts* Action to add Plaintiffs Browne and Mayer as class representatives, and to assert claims under Massachusetts law—Wahlburger I's state of organization and primary place of business—on behalf of a nationwide class of consumers, with Plaintiffs as class representatives ("Amended Complaint for Settlement").

1.20    WHEREAS, Plaintiffs and Defendants specifically agree that Defendants' execution of this Agreement, and consent to the filing of the Amended Complaint for Settlement, is not, and shall not be construed as, an admission by Defendants, or deemed to be evidence: (1) of the validity of any of the claims made by Plaintiffs or of any liability to Plaintiffs, as alleged in the Actions or Amended Complaint for Settlement; (2) that Defendants violated any state or federal law in any respect; or (3) that class certification of the Labeling Claims is appropriate under Fed. R. Civ. P. 23 or any analogous state law. Nothing in this Agreement shall constitute an admission of liability or be used as evidence of liability, by or against any Party hereto.

1.17    WHEREAS, Defendants agree to personal jurisdiction and venue of the Court for purposes of Plaintiffs Browne and Mayer and the Nationwide Class alleged in the Amended Complaint solely for purposes of this settlement. If the Agreement fails to receive Court approval

DocuSign Envelope ID: 6BDFEE538-B73F-4496-9738-FD1111A11448

or the Effective Date does not occur, then Defendants retain the right to challenge personal jurisdiction and venue of the Court over these claims.

NOW, THEREFORE, without (a) any admission or concession on thepart of Plaintiffs about the likelihood of success at trial, on appeal, or in other motions practice, or (b) any admission or concession of the merit of the Labeling Claims or of liability or wrongdoing or the lack of merit of any defense whatsoever by Defendants, it is hereby stipulated and agreed by the undersigned, on behalf of Plaintiffs, the Settlement Class and Defendants, that these Actions and all Claims of the Settlement Class be settled, compromised, and finally adjudged, subject to Court approval as required by Federal Rule of Civil Procedure 23, on the terms and conditions set forth herein.

The recitals stated above are true and accurate and are hereby made a part of this Settlement Agreement.

## II. DEFINITIONS

Capitalized terms in this Agreement shall be defined as follows:

2.1 "Actions" means, collectively, the lawsuits captioned *Counts, et al. v. Arkk Food Co. and Wahlburgers I, LLC*, Case No. 1:23-cv-00236-LCJ (N.D. Ill.), *Browne v. Arkk Food Company et al*, Case No. 1:23-cv-04603 (E.D.N.Y), and *Mayer v. Patriot Pickle Inc. et al.*, No. 1:23-cv-1299 (W.D.N.Y.).

2.2 "Agreement" or "Settlement Agreement" means this Settlement Agreement, including all exhibits hereto.

2.3 "Allegations" means the allegations as asserted in the Amended Complaint for Settlement (attached hereto as Exhibit A).

2.4 "Attorneys' Fees and Costs" means such funds as may be awarded by the Court to Plaintiffs' Counsel for their work, efforts, and expenditures in connection with their respective Actions and settlement, including fees, costs, and expenses of experts, consultants, or other individuals retained by, or who assisted Plaintiffs' Counsel in connection with their respective Actions and settlement, as described more particularly in Section V of this Agreement.

DocuSign Envelope ID: 6BDFEE38-B73F-4496-9739-5D1111A11448

2.5     "Claim" means a claim for Settlement Benefits submitted under Section III of this Agreement.

2.6     "Claim Administrator" or "Settlement Administrator" means, subject to Court approval, Angeion Group, unless another third-party administrator is later agreed to by the Parties in writing and approved by the Court.

2.7     "Claim Filing Deadline" means sixty (60) days after the start of the Notice Plan.

2.8     "Claim Form" means a form in substantially the same form as Exhibit B hereto to be used by Class Member to make a Claim under the Settlement.

2.9     "Claimant" means a Settlement Class Member who submits a claim for payment as described in Section 3.2 of this Agreement.

2.10    "Class Notice" means the notice to the Class to be disseminated by the Claim Administrator as forth in the Notice Plan described in the Declaration of Steven Weisbrot of Angeion Group and as anticipated to be approved in accordance with the Court's Preliminary Approval.

2.11    "Class Period" means the period of time from April 1, 2021 through March 31, 2023.

2.12    "Class Representatives" means Plaintiffs Kyle Counts, Damany Browne, and Dennis Mayer collectively.

2.13    "Court" means the United States District Court, Northern District of Illinois.

2.14    "Defendants" means collectively Arkk Food Company, Wahlburgers I, LLC, and Patriot Pickle, Inc.

2.15    "Effective Date" means the date on which the Final Approval is final and no longer subject to any further appeal as of right, or by discretionary review.

2.16    "Final Approval" means the order and judgment entered by the Court approving this Settlement Agreement and, certifying a class for settlement purposes.

2.17    "Household" means any number of natural persons who currently or during the Class Period occupied the same dwelling unit.

DocuSign Envelope ID: 6BDFEE538-B73F-4496-9738-FD1111A11448

2.18   "Labeling Claims" means all outstanding and putative claims, including without limitation the labeling or other claims asserted in the Amended Complaint for Settlement, arising out of or relating to the Product Labeling (as defined in Section 2.16) that were, or could have been, asserted by Plaintiffs in the Actions. However, for the avoidance of any doubt, "Labeling Claims" does not include any competitor claims brought in the *Grillo's Pickles* Action.

2.19    "Long Form Notice" means notice to Settlement Class Members in substantially the same form as Exhibit C1.

2.20   "Mayer's Counsel" means collectively Pomerantz LLP and The Fink Law Firm, P.C.

2.21   "Net Settlement Fund" means the Settlement fund, minus any Court-approved attorneys' fees, costs, Service Awards, and Settlement Administration Costs.

2.22   "Notice Date" means the day on which the Claim Administrator initiates the Online Notice.

2.23   "Notice Plan" means the Parties and Claim Administrator's plan to provide the Settlement Class with notice of Settlement.

2.24   "Online Notice" means notice to Settlement Class Members in substantially the same form as Exhibit C3.

2.25   "Opt-Out and Objection Deadline" means twenty-one (21) days prior to the initially scheduled hearing date on Final Approval.

2.26   "Parties" means Plaintiffs Kyle Counts, Damany Browne, Dennis Mayer and Defendants, collectively.

2.27   "Party" means any one of Plaintiffs or Defendants.

2.28   "Person(s)" means any natural person.

2.29   "Plaintiffs," "Representative Plaintiffs" or "Class Representatives" means Kyle Counts, Damany Browne, and Dennis Mayer.

2.30   "Plaintiffs' Counsel" or "Class Counsel" means collectively Reese LLP and Laukaitis Law LLC.

2.31    "Preliminary Approval" means issuance of an order, granting preliminary approval to this Agreement as within the range of possible Final Approval; approving Class Notice to the Settlement Class Members as described in Section IV below; and setting a hearing to consider Final Approval of the settlement and any objections thereto.

2.32    "Product Labeling" or "Representations" means (a) "fresh"; (b) "all natural"; and (c) "no preservatives".

2.33    "Wahlburgers Pickles," "Product" and/or "Products" means Wahlburgers Pickles in the following varieties: (a) Fresh Dill Spears; (2) Fresh Dill Chips; (3) Fresh Dill Chips Hot.

2.34    "Proof of Purchase" means documentation from a third-party retail source that reasonably establishes the fact of the purchase of the Product during the Class Period in the United States as determined by the Claim Administrator, subject to review of the Court.

2.35    "Released Claims" means any and all claims, demands, rights, suits, liabilities, and causes of action of every nature and description whatsoever, known or unknown, matured or unmatured, at law or in equity, existing under federal or state law, that any member of the Settlement Class has or may have against the Released Parties arising out of or related in any way to the transactions, occurrences, events, behaviors, conduct, practices, and policies alleged in, or that could have been alleged in the Actions, including but not limited to those claims asserted in the *Counts* Action, *Browne* Action, *Mayer* Action, and/or the Amended Complaint for Settlement, and in connection with the conduct of the Actions, that have been brought, could have been brought, or are currently pending in any forum in the United States. For sake of clarity Released Claims do not cover claims, if any, for bodily injury arising out of a Settlement Class Members' use of the Products, nor do they include any competitor claims brought in the *Grillo's Pickles* Action.

2.36    "Released Parties" means Defendants, and each and all of their respective present or former parent companies, subsidiaries, affiliates, predecessors, successors and assigns, and each and all of their respective present or former members, officers, directors, managers, employees, employers, attorneys, accountants, financial advisors, commercial bank landers, insurers,

investment bankers, representatives, general and limited partners and partnerships, co-manufacturers, distributors, any trust of which Defendants are a settlor, trustee, or beneficiary, heirs, executors, administrators, successors, affiliates, and assigns of each of them.

2.37    "Releasing Parties" means Plaintiffs Counts, Browne, and Mayer, and all Settlement Class Members who have not validly and timely opted out of the Settlement Class, and all their respective spouses, children, executors, representatives, guardians, wards, heirs, estates, successors, bankruptcy estates, bankruptcy trustees, predecessors, agents, and assigns, and all those who claim through them or who assert or could assert claims on their behalf.

2.38    "Service Award" means any award sought by application to and approval by the Court that is payable to the Class Representatives to compensate them for their efforts in bringing their respective Actions and achieving the benefits of this settlement on behalf of the Settlement Class.

2.39    "Settlement" means the settlement embodied in this Agreement.

2.40    "Settlement Benefit(s)" means the benefits provided to Settlement Class Members as set forth in Sections 3.4 through 3.6 of this Agreement.

2.41    "Settlement Class," "Settlement Class Members," "Class" or "Class Members" means all persons in the United States who purchased the Products during the Class Period for personal or household use. Excluded from this definition are the Released Parties, any government entities, persons who made a valid, timely request for exclusion, and the Hon. Lindsay C. Jenkins and John DeGroote, and any members of their immediate families.

2.42    "Settlement Fund" means the aggregate value of Two Million Dollars and No Cents ($2,000,000.00) that may be distributed through the Cash Fund to Settlement Class Members who submit valid and timely Claim Forms, pursuant to Section 3.42. The Settlement Fund will first be used to pay for Class Notice and administration costs or other costs pursuant to the terms of Section 3.15(a) of this Agreement, and all attorney fees and service awards, prior to any distribution from the payments to Class Members.

DocuSign Envelope ID: 8BDFEE38-B735-4496-972B-FD1111A11448

2.43    "Settlement Website" means an internet website created and maintained by the Claim Administrator, the URL of which shall be specified in the Notice Plan.

2.44    "Termination Date" means the date that the Agreement is terminated as set forth in Section 8.3.

2.45    "Valid Claim" means a claim submitted in compliance with Section III of this Agreement and determined to be valid by the Claim Administrator, and as further described in that Section.

## III.    SETTLEMENT BENEFITS AND CLAIMS ADMINISTRATION

3.1    Subject to the rights and limitations set forth in this Agreement, every Settlement Class Member shall have the right to submit a Claim for Settlement Benefits.  A Claim shall be a Valid Claim only if submitted on the Claim Form pursuant to, and in compliance with, the procedures set forth in this Section III.  Submission of a Claim, regardless of whether it is determined to be a Valid Claim, shall confer no rights or obligations on any Party, any Settlement Class Member, or any other Person, except as expressly provided herein.

3.2    At the election of the Settlement Class Member, Claim Forms may be submitted in paper via regular U.S. mail or online at the Settlement Website.  Claim Forms must be postmarked or submitted online no later than the Claim Filing Deadline. Claim Forms received or submitted online after that date will not be Valid Claims.  For Claim Forms that are submitted online, the Class Member shall have the opportunity to upload Proof of Purchase image files (e.g., .jpg, .tiff, .pdf); to preview and confirm information entered in the Claim Form prior to submitting the claim; and to print a page immediately after the Claim Form has been submitted showing the information entered, the names of image files uploaded, and the date and time the Claim Form was received.

3.3    On the Claim Form, the Settlement Class Member, or a Person with authority to sign and bind the Settlement Class Member, must provide and certify the truth and accuracy of the following information under the penalty of perjury by signing the Claim Form physically, or by e-signature, to be considered a Valid Claim:

DocuSign Envelope ID: 8BDFEE38-B735-4496-972B-ED1111A11448

(a) The Settlement Class Member's name and mailing address;

(b) The Settlement Class Member's email address (unless the Settlement Class Member submits a claim form by mail, in which case an email address is optional, or the Settlement Class Member attests that he or she does not have an e-mail address);

(c) That the Settlement Class Member made the purchase or purchases directly at a retail establishment or online;

(d) That the claimed purchases were not made for purposes of resale, commercial use or for any other purpose;

(e) That no refund has been received for the claimed purchases; and

(f) For each claimed purchase that is not supported by Proof of Purchase, the number of Product(s) purchased.

3.4     Subject to the total dollar value cap in Settlement Benefits as provided in Section 3.6, each Settlement Class Member who submits one (1) Valid Claim per household, as determined by the Claim Administrator, shall receive a Settlement Benefit as follows:

(a) A Settlement Class Member who submits a Valid Claim, with a Proof of Purchase, shall receive a full, cash refund for each Product purchased by the Settlement Class Member, without limit, for which a Proof of Purchase is submitted.

(b) A Settlement Class Member who submits a Valid Claim, without a Proof of Purchase, shall receive a cash payment of $2.00 for each Product purchased by the Settlement Class Member, up to a maximum of six (6) Products.

(c) Claims with Proof of Purchase and without Proof of Purchase shall be cumulative. For example, a Class Member may make a valid claim for 15 products with Proof of Purchase, and 3 products without Proof of Purchase.

(d) The total cash payment due to the Settlement Class Member shall be provided electronically or in a single check payable to the Settlement Class Member, as elected by the Settlement Class Member.

DocuSign Envelope ID: 8BDFEE38-B735-4496-972B-ED1111A11448

3.5     Each Household is limited to and may only submit a single Claim Form.

3.6     The total dollar value of Valid Claims submitted will be capped at the amount of Settlement Funds remaining after the costs of notice, service awards, and attorney fees have been subtracted.

3.7     Settlement fund.

(a)     Defendants shall establish a Settlement Fund with a cash value of Two Million Dollars and No Cents ($2,000,000.00).

(b)     Initial Deposit.   Within ten (10) calendar days after the entry of the Preliminary Approval Order, Defendants shall transfer to to a Settlement fund escrow bank account established by the Settlement Administrator and approved by the Parties Two Million Dollars and No Cents ($2,000,000.00).

(c)     The Settlement Fund at all times will be deemed a "qualified settlement fund" within the meaning of United States Treasury Reg. § 1.468B-1. All taxes (including any estimated taxes, and any interest or penalties relating to them) arising with respect to the income earned by the Settlement Fund or otherwise, including any taxes or tax detriments that may be imposed upon Defendants with respect to income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for the purpose of federal or state income taxes or otherwise (collectively "Taxes"), will be paid out of the Settlement Fund. Defendants and their counsel, and Plaintiffs and Class Counsel, will have no liability or responsibility for any of the Taxes. The Settlement Fund will indemnify and hold harmless Defendants and their counsel, and Plaintiffs and Class Counsel, for all Taxes (including, without limitation, Taxes payable by reason of any such indemnification).

(d)     In no circumstances shall Defendants' total contribution to the Settlement Fund exceed Two Million Dollars and No Cents ($2,000,000.00) in the aggregate.   Under this Settlement Agreement, the Parties agree that Defendants' contribution to the Settlement Fund will encompass the full extent of the Released Parties' monetary payment in full consideration for the Releases and covenants not to sue set forth in Section VII of this Agreement.   These payments,

DocuSign Envelope ID: 8BDFEF38-B735-4496-972B-FD1111A11448

pursuant to the terms and conditions of this Agreement, and any other non-monetary obligations of and considerations due from Defendants set forth in this Agreement, will be in full satisfaction of all Released Claims.

(e) Defendants are not obligated (and will not be obligated) to compute, estimate, or pay any taxes on behalf of Plaintiffs, Class Counsel, any Settlement Class Member, or the Settlement Administrator, or otherwise administer or support the implementation of the Settlement except as set forth herein.

(f) In the event the Effective Date does not occur, all amounts paid into the Settlement Fund, less amounts incurred for claims administration and notice up to the date it is determined that the Effective Date will not occur, shall be returned to Defendants. In no other event shall the amounts paid into the Settlement Fund revert to Defendants.

3.8    Excess or Insufficient Funds in the Settlement Fund.

(a) The Settlement Administrator shall determine each authorized Claimant's payment based upon each Claimant's Claim Form and the total number of valid Claims in accordance with this Section.

(b) Excess Funds. If, after calculating the payment amount for all valid Claims, value remains in the Settlement Fund, such remaining funds shall increase eligible Settlement Class Members' claimed relief for cash on a *pro rata* basis.

(c) Insufficient Funds. If the total amount of the timely, valid, and approved Claims for cash awards exceeds the value of the Settlement Fund, such claims will be reduced on a *pro rata* basis.

(d) *Cy Pres*. It is the Parties' intent to distribute the entirety of the Settlement Fund to Settlement Class Members pursuant to Sections 3.8 (a)-(c). If, after distributing the funds from the Settlement Fund in accordance with Sections 3.8 (a)-(c), including the payment of notice and administration costs, any cash remains in the Settlement Fund from uncashed checks, the remaining funds will be distributed to the Center for Science and the Public Interest ("CSPI") as a

*cy pres* award.  Under no circumstances shall any cash remaining in the Settlement Fund revert or otherwise be returned to Defendants.

3.9     The Claim Administrator shall be solely responsible for, among other things, providing notice as set forth in the Notice Plan, processing Claim Forms, administering the Settlement Website, administering the exclusion process, administering the Settlement Benefit claims process described herein (including receiving and maintaining on behalf of the Court and the Parties any Settlement Class Member correspondence regarding requests for exclusion from the Settlement Class), and such other duties as may be reasonably necessary to administer the terms of this Agreement.  The Claim Administrator shall not approve duplicate or multiple claims for the same purchase but shall deem valid only one claimant for each purchase. The Claim Administrator will use adequate and customary procedures and standards to prevent the payment of fraudulent claims and to pay only Valid Claims. The Claim Administrator and Parties shall have the right to audit claims, and the Claim Administrator may request additional information from Claimants.  If any fraud is detected or reasonably suspected, the Claim Administrator can require further information from the Settlement Class Member or deny claims, subject to the supervision of the Parties and ultimate oversight by the Court.

3.10     The determination of validity of claims shall occur within a reasonable time.  The Claim Administrator shall have discretion to reasonably approve or deny each claim.  Plaintiffs' Counsel and Defendants shall have the right to audit claims and to challenge the Claim Administrator's decision by motion to the Court. Plaintiffs' Counsel's or Defendants' choice not to audit the validity of any one or more Claim Forms shall not constitute or be construed as a waiver or relinquishment of any audit or other rights as to any other Claim Forms, individually or as a group, and similarly, shall not be construed as a waiver or relinquishment by such Party as to any of its audit and other rights under this Agreement.  No Person shall have any claim against Plaintiffs, Defendants, Plaintiffs' Counsel, Defendants' counsel, or the Claim Administrator based on any determination of a Valid Claim, distributions or awards made in accordance with this

DocuSign Envelope ID: 8BDFEE38-B735-4496-972B-FD1111A11448

Agreement and the Exhibits hereto. Neither Plaintiffs, nor Defendants, nor their respective counsel, shall have any liability whatsoever for any act or omission of the Claim Administrator.

3.11    Within twenty (20) days after the Claim Filing Deadline, the Claim Administrator shall notify by email all Settlement Class Members whose claims are denied of the reason(s) for the denial, using the email address or physical address (if any) provided by the Settlement Class Member on the Claim Form. If no email address or physical address is provided by the Settlement Class Member on the Claim Form, the Administrator shall not have an obligation to provide the Settlement Class Member any notification of the denial of the claim or the reasons for denial.

3.12    Valid Claims shall be paid electronically or by check to the Settlement Class Member and mailed to the address provided on the Claim Form, as updated in the National Change of Address Database, sixty (60) days after Final Approval. In the event of an appeal from Final Approval that challenges only the award of Attorneys' Fees and Costs and/or the Service Award and does not challenge any other aspect of the settlement and does not raise an issue that could result in the reversal of Final Approval or modification of other terms of the settlement, then all Valid Claims shall still be paid within sixty (60) days after Final Approval, unless otherwise ordered by the Court. If the appeal challenges any other aspect of the Settlement, Valid Claims shall be paid sixty (60) days after the Effective Date.

3.13    All settlement payments shall be subject to a ninety (90) days void period, after which the payments shall no longer be negotiable. If a settlement payment is not negotiated, the Settlement Class Member shall not be entitled to any further payment under this Agreement. If the check is returned as undeliverable, the Claim Administrator shall send an email to the claimant, if one was provided with the claim, to attempt to obtain a better address, and if obtained, shall mail the check to the new address, but shall have no other obligation to skip-trace or obtain an updated address. The return or failure to cash checks shall have no effect on a Settlement Class Member's release of claims, obligations, representations, or warranties as provided herein, which shall remain in full effect.

DocuSign Envelope ID: 8BDFEE38-B735-4496-972B-FD1111A11448

3.14    No deductions for taxes will be taken from any Settlement Benefit at the time of distribution.  Settlement Class Members are responsible for paying all taxes due on such Settlement Benefits.  All Settlement Benefit payments shall be deemed to be paid solely in the year in which such payments are actually issued.  Counsel and the Parties do not purport to provide legal advice on tax matters to each other or Settlement Class Members.  To the extent this Agreement, or any of its exhibits or related materials, is interpreted to contain or constitute advice regarding any U.S. Federal or any state tax issue, such advice is not intended or written to be used, and cannot be used, by any Person for the purpose of avoiding penalties under the Internal Revenue Code or any state's tax laws.

3.15    All fees and expenses incurred by the Claim Administrator in administering claims and performing the other tasks set forth in Section III shall be paid from the Settlement Fund. The Claim Administrator has represented to the Parties that its fees for administering this Settlement are estimated to be approximately $240,000 and in any event shall not exceed three hundred thousand and 00/100 dollars ($300,000).

## IV.    NOTICE

4.1    The Claim Administrator will facilitate the notice process by assisting the Parties, including by providing notice of this settlement to the appropriate federal and state officials in the United States, as provided by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA Notice"). The Claim Administrator shall serve notice of the Agreement that meets the requirements of 28 U.S.C. § 1715, on the appropriate federal and state officials no later than ten (10) days after Plaintiff files the Motion for Preliminary Approval.  The Claim Administrator will file a certification with the Court stating the date or dates on which the CAFA Notice was sent. Defendants will provide Class Counsel with any substantive responses received in response to any CAFA Notice.

4.2    Prior to the Notice Date, the Claim Administrator shall establish the Settlement Website, which shall contain the Long Form Notice in a downloadable PDF format; answers to frequently asked questions; a Contact Information page that includes the address for the Claim

Administrator and addresses and telephone numbers for Plaintiffs' Counsel and Defendants'Counsel; the Agreement; the signed order of Preliminary Approval; a downloadable and online version of the Claim Form; a downloadable and online version of the form by which Settlement Class Members may exclude themselves from the Settlement Class; and (when they become available) the motion for final approval and Plaintiffs' application(s) for Attorneys' Fees, Costs and Service Award, and any Order on Final Approval.

4.3     The Claim Administrator will terminate the Settlement Website two-hundred and forty (240) days after either (1) the Effective Date, or (2) the date on which the settlement is terminated or otherwise not approved by a court.

4.4     Notice to the Class shall be provided on websites and/or social media platforms chosen by the Claim Administrator and accessible to desktop and mobile users, so that overall notice of the Settlement is reasonably calculated to apprise the Settlement Class Members of the Settlement.  Such notice shall begin no later than thirty (30) days after Preliminary Approval.  No later than fifteen (15) days prior to the hearing on Final Approval, the Claim Administrator shall submit a declaration to the Court under penalty of perjury explaining how the media were chosen and attesting to the number of impressions delivered.

4.5     The Claim Administrator shall establish and maintain a toll-free telephone helpline, available 24 hours per day, where callers may obtain information about the Settlement.

4.6     Class Counsel and Defendants shall supervise the Claim Administrator in the performance of the notice functions set forth in this Section IV.

4.7     At least fifteen (15) days prior to the final approval hearing referenced in Section VI of this Agreement, the Claim Administrator shall certify to the Court that it has complied with the notice requirements set forth herein.

## V.     ATTORNEYS' FEES, EXPENSES AND CLASS REPRESENTATIVE PAYMENT

5.1     <u>Attorneys' Fees, Costs, and Expenses</u>.  No later than thirty-five (35) days prior to the Opt-Out/Objection Deadline, Class Counsel shall apply to the Court for an award of its Attorneys' Fees in a total amount not to exceed 37.5% of the Settlement fund or $750,000.00.

DocuSign Envelope ID: 8BDFEF38-B735-4496-972B-FD1111A11448

Class Counsel shall also separately apply for the reimbursement of costs and expenses. From any fee award, Class Counsel shall pay to Mayer's Counsel $75,000. Class Counsel submits to the jurisdiction of this Court for the enforcement of this provision of the Agreement and for enforcement of all other provisions of this Agreement.

5.2     <u>Class Representative Payment</u>.  No later than thirty-five (35) days prior to the Opt-Out/Objection Deadline, Plaintiffs shall apply to the Court for a Service Award in an amount not to exceed $5,000 each (for a total of $15,000), subject to approval by the Court, as compensation for (a) the work they performed to represent the class, and (b) the general release set forth in Section 7.1.

5.3     Defendants agree not to oppose Plaintiffs' Counsel's application for Attorneys' Fees and Costs or Plaintiffs' application for Service Awards, made in accordance with the provisions of Sections 5.1 and 5.2.

5.4     In no event shall Defendants be obligated to pay to Plaintiffs' Counsel an amount larger than the amounts specified in Section 5.1.

5.5     Any payment of a Service Award as set forth in Section 5.2 shall be, in addition to any amount claimed by Plaintiffs subject to Section III above, the total obligation of Defendants to pay money to Plaintiffs, in connection with the Actions and this settlement.

5.6     In the event the Court approves the Settlement Agreement, but declines to award fees and costs in the amount requested by Plaintiffs' Counsel, the Settlement will nevertheless be binding on the Parties. Plaintiffs' Counsel and Plaintiffs agree that the denial, downward modification, failure to grant the request for Attorneys' Fees and Costs or a Service Award, or the reversal or modification on appeal of any such awards, shall not constitute grounds for modification or termination of the settlement.

5.7     All Attorneys' Fees and Costs, as well as the Services Awards, shall be paid from the Settlement Fund.

5.8     To be clear, Class Counsel's fees shall be based only on the Settlement fund, and shall in no way be based on nor tied to any non-monetary relief or business practice changes.

DocuSign Envelope ID: 8BDFEF38-B735-4496-072B-FD1111A11448

5.8     The Attorneys' Fees and Costs awarded to Plaintiffs' Counsel shall be paid to Plaintiffs' Counsel within five (5) business days after the Effective Date.

5.9     Within five (5) business days after the Effective Date, any Court-approved Service Award shall be wired by the Claims Administrator to Plaintiffs' Counsel to be paid to Plaintiffs.

## VI.     CLASS SETTLEMENT PROCEDURES

6.1     <u>Class Certification</u>.  The Parties agree that, for settlement purposes only, the *Counts* Action shall be certified as a class action pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3) with Representative Plaintiffs as the Class Representatives and Plaintiffs' counsel as Class Counsel.

6.2     In the event the Settlement Agreement is terminated for any reason, the certification of the Class shall be vacated, and the Actions shall proceed as if the Class had not been certified, and the parties will be restored to their respective places in the Actions as of the November 21, 2023 order from the Court in the *Counts* Action, the December 21, 2023 order from the Court in the *Browne* Action, and the March 13, 2024 order from the Court in the *Mayer* Action, staying the respective cases. Defendants' conditional consent herein to certification of the Class shall not be used against Defendants by any Party or non-party for any purpose in the Actions or any other litigation, lawsuit, or proceeding of any kind whatsoever.

6.3     <u>Settlement Approval</u>.  Contemporaneously with the filing of this Settlement Agreement, Plaintiffs shall move for an order granting Preliminary Approval to this Agreement as within the range of possible Final Approval; approving Class Notice to the Settlement Class Members as described in Section IV above; and setting a hearing to consider Final Approval of the settlement and any objections thereto.  Defendants shall have no obligation to make separate filings in support of the motion but may do so at its election after the motion has been filed. Defendants shall appear at the hearing to confirm their agreement with the terms of the settlement as provided herein.  The Parties agree to the form and substance of the Proposed Order of Preliminary Approval, attached hereto as Exhibit D.

6.4    Amended Complaint for Settlement. Solely for purposes of implementing this Agreement and effectuating the proposed Settlement, the Parties agree and stipulate that:

(a)    Plaintiffs shall seek leave of Court to file the Amended Complaint for Settlement, without material changes to the version attached hereto as Exhibit A, and Defendants shall consent to such amendment pursuant to Fed. R. Civ. P. 15(a)(2). The motion for leave to file the Amended Complaint for Settlement shall be filed concurrently with the motion for preliminary approval of the Settlement so that the Amended Complaint for Settlement may become operative upon the Court's preliminary approval of the Settlement.

(b)    If for any reason Final Approval of the Settlement does not occur, the Amended Complaint shall be stricken from the record and the operative complaint in the *Counts* Action shall be the complaint in effect in the *Counts* Action as of November 21, 2023, in the *Browne* Action as of December 21, 2023, and in the *Mayer* Action as of January 12, 2024.

6.5    Final Approval Order and Judgment. No later than thirty-five (35) days prior to the Opt-Out/Objection deadline, Class Counsel shall file their motion for payment of Class Counsel's fees and costs and payment of service awards to the Class Representatives. No later than thirty (30) days prior to the hearing on Final Approval, or otherwise in accordance with the court's schedule for the Final Approval Hearing, Plaintiffs shall file their Motion for Final Approval of the Settlement. Plaintiffs shall move for the entry of an order of Final Approval, granting Final Approval of this Settlement and holding this Agreement to be final, fair, reasonable, adequate, and binding on all Settlement Class Members who have not excluded themselves as provided below, and ordering that the settlement relief be provided as set forth in this Agreement, ordering the releases as set forth in Section VII, below, and entering judgment in this case. Defendants shall have no obligation to make separate filings in support of the motion. Defendants shall appear at the hearing to confirm their agreement with the terms of the Settlement as provided herein.

6.6    Exclusions and Objections. The Notice shall advise prospective Settlement Class Members of their rights to forego the benefits of this Settlement and pursue an individual claim;

DocuSign Envelope ID: 8BDFEF38-B735-4496-972B-FD1111A11448

to object to this Settlement individually or through counsel; and, if they object, to appear at the final approval hearing.

6.7    If any Settlement Class Member wishes to object to the settlement, the Settlement Class Member must submit a written objection to the Claim Administrator.  The Parties may respond to any objection to the Settlement with appropriate arguments and evidence.

6.8    If any Settlement Class Member wishes to be excluded from (in other words, opt out of) this Settlement, the Settlement Class Member may do so by completing the exclusion form at the Settlement Website; downloading and submitting to the Claim Administrator a completed exclusion form; or submitting a valid request to exclude themselves, as described in the Notice, to the Claim Administrator.  Requests to exclude themselves must be delivered (not just postmarked) by the Opt-Out and Objection Deadline or they shall not be valid.  A Settlement Class Member who elects to exclude themselves from this Settlement shall not be permitted to object to this Settlement or to intervene.  Any Settlement Class Member who does not submit a timely request for exclusion shall be bound by all subsequent proceedings, orders, and the Final Approval in the *Counts* Action relating to this Settlement Agreement, even if he or she has pending, or subsequently initiates, litigation, arbitration, or any other proceeding against Defendants' relating to the Released Claims.

6.9    The proposed Preliminary Approval order and Long Form Notice will provide that any Settlement Class Member wishing to object or exclude themselves who fails to properly or timely file or serve any of the requested information and/or documents will be precluded from doing so.

6.10    Immediately upon receipt of any objection, the Claim Administrator shall forward the objection and all supporting documentation to counsel for the Parties.  At least fifteen (15) days prior to the hearing on Final Approval, Plaintiffs' Counsel shall file all such objections and supporting documentation with the Court along with any response to the objection made by the Parties.

DocuSign Envelope ID: 8BDFEE38-B735-449C-972B-FD1111A11448

6.11    At least fifteen (15) days prior to the hearing on Final Approval, the Claim Administrator shall prepare a list of the names of the Persons who, pursuant to the Long Form Notice, have excluded themselves from the Settlement Class in a valid and timely manner, and Plaintiffs' Counsel shall file that list with the Court.

6.12    A Settlement Class Member who objects to the settlement may also submit a Claim Form on or before the Claim Filing Deadline, which shall be processed in the same way as all other Claim Forms.  A Settlement Class Member shall not be entitled to an extension to the Claim Filing Deadline merely because the Settlement Class Member has also submitted an objection.

6.13    If a Settlement Class Member submits both an objection and an exclusion request, the exclusion shall take precedence and be considered valid and binding, and the objection shall be deemed to have been sent by mistake and rejected.

6.14    <u>Effect if Settlement Not Approved or Agreement is Terminated</u>.  This Agreement was entered into only for purposes of settlement.  In the event that Preliminary or Final Approval of this settlement and this Agreement does not occur for any reason, other than a modification of the attorney's fees that Class Counsel will seek under Section 5.1,  or if Final Approval is reversed on appeal, other than a reduction of the amount of attorney's fees awarded to Class Counsel,  then no term or condition of this Agreement, or any draft thereof, or discussion, negotiation, documentation, or other part or aspect of the Parties' settlement discussions shall have any effect, nor shall any such matter be admissible in evidence for any purpose in the Actions, or in any other proceeding, and the parties will be restored to their respective places in the Actions as of the November 21, 2023 order from the Court in the *Counts* Action, the December 21, 2023  order from the Court in the *Browne* Action, and the March 13, 2024 order from the Court in the *Mayer* Action, staying the respective cases.

## VII.    RELEASES

7.1    Upon the Effective Date and by operation of the judgment, the Releasing Parties shall have fully, finally, and forever released, relinquished, and discharged against the Released Parties all Released Claims (including, without limitation, any unknown claims), as well as any

claims arising out of, relating to, or in connection with, the defense, settlement or resolution of the Actions or the Released Claims.

7.2     No Admission of Liability.   This Agreement reflects, among other things, the compromise and settlement of disputed claims among the Parties hereto, and neither this Agreement nor the releases given herein, nor any consideration therefor, nor any actions taken to carry out this Agreement are intended to be, nor may they be deemed or construed to be, an admission or concession of liability, or the validity of any claim, or defense, or of any point of fact or law (including but not limited to matters respecting class certification) on the part of any Party. Defendants expressly deny the allegations of the Actions and Amended Complaint for Settlement in the Actions including all Labeling Claims.  Neither this Agreement, nor the fact of settlement, nor the settlement proceedings, nor settlement negotiations, nor any related document, shall be used as an admission of any fault or omission by the Released Parties, or be offered or received in evidence as an admission, concession, presumption, or inference of any wrongdoing by the Released Parties.  The Released Parties may file the Agreement and/or the Final Approval order in any action or proceeding that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim.

7.3     This Agreement and all negotiations, correspondence and communications leading up to its execution will be deemed to be within the protection of Federal Rule of Evidence 408 and any analogous state or federal rules or principles.

**VIII.   ADDITIONAL PROVISIONS**

8.1     Best Efforts.  Subject to the limitations expressed herein, the Parties' counsel shall use their best efforts to cause the Court to give Preliminary Approval to this Agreement and settlement as promptly as practicable, to take all steps contemplated by this Agreement to effectuate the settlement on the stated terms and conditions, to cooperate in addressing any objections, and to obtain Final Approval of this Agreement.  The Parties and Counsel shall not

encourage anyone directly or indirectly to opt out or object. If the Court requires changes to the Agreement as a prerequisite to Preliminary Approval or Final Approval, the Parties shall negotiate in good faith regarding such changes.

8.2     <u>Changes of Time Periods</u>.   The time periods and/or dates described in this Agreement with respect to the giving of notices and hearings are subject to approval and change by the Court or by the written agreement of Plaintiffs' Counsel and Defendants' Counsel, without notice to Settlement Class Members except that the Claim Administrator shall ensure that such dates are posted on the Settlement Website.

8.3     <u>Termination Rights</u>.   Either Party may unilaterally terminate this Settlement Agreement, declare it null and void, and have no further obligations under this Settlement Agreement, if any of the following conditions subsequent occurs:

     a.  The Parties fail to obtain and maintain preliminary approval of the proposed settlement;

     b.  The Court refuses to certify the Settlement Class;

     c.  The Court fails to enter Final Approval consistent with the provisions in Section 6.5, other than with respect to the denial of any request for an award of attorney's fees contemplated under Section 5.1, or reduction in the amount of the award of attorney's fees sought under that section; or

     d.  The Settlement Agreement is not upheld on appeal, including review by the United States Supreme Court, other than with respect to the denial of any request for an award of attorney's fees as contemplated under Section 5.1, or reduction in the amount of the award of attorney's fees sought under that section.

8.4     <u>Time for Compliance</u>. All time periods set forth herein shall be computed in calendar days unless otherwise specified.  If the date for performance of any act required by or under this Agreement falls on a Saturday, Sunday or court holiday, that act may be performed on the next business day with the same effect as if it had been performed on the day or within the period of time specified by or under this Agreement.

DocuSign Envelope ID: 8BDFEF38-B735-4496-972B-FD1111A11448

8.5    <u>Governing Law</u>.  This Agreement is intended to and shall be governed by the laws of the State of Illinois, without regard to conflicts of law principles that would require the application of the laws of another jurisdiction.

8.6    <u>Entire Agreement</u>.  The terms and conditions set forth in this Agreement constitute the complete and exclusive statement of the agreement between the Parties hereto relating to the subject matter of this Agreement, superseding all previous negotiations and understandings, and may not be contradicted by evidence of any prior or contemporaneous agreement.  The Parties further intend that this Agreement constitutes the complete and exclusive statement of its terms as between the Parties hereto, and that no extrinsic evidence whatsoever may be introduced in any agency or judicial proceeding, if any, involving this Agreement.  Any amendment or modification of the Agreement must be in writing and signed by each of the Parties and their counsel.

8.7    <u>Advice of Counsel</u>.  The determination of the terms of, and the drafting of, this Agreement have been by mutual agreement after negotiation, with consideration by and participation of all Parties hereto and their counsel.

8.8    <u>Binding Agreement</u>.  This Agreement shall be binding upon and inure to the benefit of the respective heirs, successors and assigns of the Parties hereto.

8.9    <u>No Waiver</u>.  The waiver by any Party of any provision or breach of this Agreement shall not be deemed a waiver of any other provision or breach of this Agreement.

8.10    <u>No Assignment</u>.  Plaintiffs and Plaintiffs' Counsel represent and warrant that none of Plaintiffs' Claims referred to in this Litigation or this Settlement Agreement have been assigned, encumbered, or in any manner transferred in whole or in part.

8.11    <u>Execution in Counterparts</u>.   This Agreement shall become effective upon its execution by all of the undersigned.  The Parties may execute this Agreement in counterparts and/or by fax or electronic mail, and execution of counterparts shall have the same force and effect as if all Parties had signed the same instrument. The Parties and their counsel may execute this agreement by electronic signature.

DocuSign Envelope ID: 8BDFEE38-B735-4496-972B-FD1111A11448

8.12    <u>Captions</u>.  Captions and section numbers herein are inserted merely for the reader's convenience, and in no way define, limit, construe, or otherwise describe the scope or intent of the provisions of this Agreement.

8.13    <u>Extensions of Time</u>.  The Parties reserve the right, by agreement and subject to the Court's approval, to grant any reasonable extension of time that might be needed to carry out any of the provisions of this Agreement.

8.14    <u>Enforcement of this Agreement</u>.  The Court shall retain jurisdiction to enforce, interpret, and implement this Agreement.  All Parties hereto submit to the jurisdiction of the Court for these purposes.

8.15    <u>Severability</u>.  In the event that any provision hereof becomes or is declared by a court of competent jurisdiction to be illegal, unenforceable, or void, this Settlement Agreement shall continue in full force and effect without said provision.

8.16    <u>No Primary Drafter of Settlement Agreement</u>.  The determination of the terms of, and the drafting of, this Settlement Agreement has been by mutual understanding after negotiation, with consideration by and participation of, the Parties hereto and their counsel.

8.17    <u>Variance in Terms</u>.  In the event of any variance between the terms of this Settlement Agreement and any of the Exhibits hereto, the terms of this Settlement Agreement shall control and supersede the Exhibit(s).

8.18    <u>Authorization to Enter Settlement Agreement</u>.  The individual signing this Settlement Agreement on behalf of Defendants  represent that he/she is fully authorized by Defendants to enter into, and to execute,  this Settlement Agreement on behalf of Defendants. Plaintiffs' Counsel represent that they are fully authorized to conduct settlement negotiations with Defendants'  counsel on behalf of Plaintiffs, and to enter into, and to execute, this  Settlement Agreement on behalf of the Settlement Class, subject to Court  approval pursuant to Federal Rule of Civil Procedure 23(e).  Plaintiffs enter  into and execute this Settlement Agreement on behalf of themselves, and as  representatives of and on behalf of the Settlement Class, subject to Court approval pursuant to Federal Rule of Civil Procedure 23(e).

8.19    Notices.  All notices to the Parties or counsel required by this Agreement, shall be made in writing and communicated by mail and fax or email to the following addresses:

If to Plaintiffs or Plaintiffs' Counsel:

> Charles D. Moore, Esq.
> Reese LLP
> 121 North Washington Ave., 4th Floor
> Minneapolis, Minnesota 55401
> Telephone:  (212) 643-0500
> Facsimile:  (212) 253-4272
> Email:  cmoore@reesellp.com
>
> -or-
>
> Kevin Laukaitis, Esq.
> Laukaitis Law LLC
> 954 Ave. Ponce De Leon Ave.,
> Suite 205
> San Juan, PR 00907
> Email: klaukaitis@laukaitislaw.com

If to Defendants or Defendants' Counsel:

> Michael G. Latiff
> Jacob D. Radecki
> McDonald Hopkins LLC
> 300 N. LaSalle St., Ste. 1400
> Chicago, IL 60654
> mlatiff@mcdonaldhopkins.com
> jradecki@mcdonaldhopkins.com
>
> *Attorneys for Defendants Arkk Food Company and Wahlburgers I, LLC*
>
> Jennifer L. Del Medico
> Terri L. Chase (admitted *pro hac vice*)
> Eliot Pedrosa (admitted *pro hac vice*)
> **JONES DAY**
> 250 Vesey Street
> New York, NY 10281-1047
> Telephone: (212) 326-3939
> jdelmedico@jonesday.com
> tlchase@jonesday.com
> epedrosa@jonesday.com
>
> *Attorneys for Defendant Patriot Pickle, Inc*

DocuSign Envelope ID: 8BDFEF38-B735-4496-972B-FD1111A11448

8.20 <u>Protective Orders</u>. All orders and designations regarding the confidentiality of documents and information ("Protective Orders") remain in effect, and all Parties and counsel remain bound to comply with the Protective Orders, including the provision to certify the destruction of "Confidential" documents.

IN WITNESS HEREOF the undersigned, being duly authorized, have caused this Agreement to be executed on the dates shown below and agree that it shall take effect on the last date it is executed by all of the undersigned.

**APPROVED AND AGREED:**

DATED: 4/22/2024

_____
Kyle Counts
*Plaintiff and Class Representative*

DATED:

_____
Damany Browne
*Plaintiff and Class Representative*

DATED:

_____
Dennis Mayer
*Plaintiff and Class Representative*

**(INTENTIONALLY LEFT BLANK)**

DocuSign Envelope ID: 99310869-3639-484E-9105-09F85FDEAA9A

8.20    <u>Protective Orders</u>.  All orders and designations regarding the confidentiality of documents and information ("Protective Orders") remain in effect, and all Parties and counsel remain bound to comply with the Protective Orders, including the provision to certify the destruction of "Confidential" documents.

IN WITNESS HEREOF the undersigned, being duly authorized, have caused this Agreement to be executed on the dates shown below and agree that it shall take effect on the last date it is executed by all of the undersigned.

**APPROVED AND AGREED:**

DATED:

_____
Kyle Counts
*Plaintiff and Class Representative*

DATED: 4/22/2024

_____
Damany Browne
*Plaintiff and Class Representative*

DATED: April 22, 2024

/s/ Dennis Mayer
_____
Dennis Mayer
*Plaintiff and Class Representative*

**(INTENTIONALLY LEFT BLANK)**

DocuSign Envelope ID: 282FE4CE-42C5-4665-9A71-013C1DAD24C0

DATED:    4/22/2024          **REESE LLP**

Charles D. Moore
*Class Counsel and Plaintiffs' Counsel*


DATED:    April 26, 2024      **LAUKAITIS LAW LLC**

/s/ Kevin Laukaitis

Kevin Laukaitis
*Class Counsel and Plaintiffs' Counsel*


DATED:                **POMERANTZ LLP**

Gustavo F. Bruckner
*Counsel for Plaintiff Mayer*


DATED:                **THE FINK LAW FIRM, P.C.**

Steven M. Fink
*Counsel for Plaintiff Mayer*


**(INTENTIONALLY LEFT BLANK)**

DATED:                          **REESE LLP**


_____
Charles D. Moore
*Class Counsel and Plaintiffs' Counsel*


DATED:                          **LAUKAITIS LAW LLC**


_____
Kevin Laukaitis
*Class Counsel and Plaintiffs' Counsel*


DATED:  April 22, 2024          **POMERANTZ LLP**


_____
Gustavo F. Bruckner
*Counsel for Plaintiff Mayer*


DATED:                          **THE FINK LAW FIRM, P.C.**


_____
Steven M. Fink
*Counsel for Plaintiff Mayer*


**(INTENTIONALLY LEFT BLANK)**

DocuSign Envelope ID: B90B91GC-208F-4649-A91D-6282800B7259

DATED:                 **REESE LLP**

_____
Charles D. Moore
*Class Counsel and Plaintiffs' Counsel*

DATED:                 **LAUKAITIS LAW LLC**

_____
Kevin Laukaitis
*Class Counsel and Plaintiffs' Counsel*

DATED:                 **POMERANTZ LLP**

_____
Gustavo F. Bruckner
*Counsel for Plaintiff Mayer*

DATED: 4/22/2024         **THE FINK LAW FIRM, P.C.**

DocuSigned by:

*Steven M. Fink*

ED49EECAC05D452

Steven M. Fink
*Counsel for Plaintiff Mayer*

**(INTENTIONALLY LEFT BLANK)**

**APPROVED AND AGREED (CONTINUED):**

DATED: 4/23/2024       **ARKK FOOD COMPANY**

By: _Ryan Jahnke_

Name: Ryan Jahnke

Its: Vice President

DATED:       **WAHLBURGERS I, LLC**

By: _____

Name: _____

Its: _____

DATED:       **PATRIOT PICKLE, INC.**

By: _____

Name: _____

Its: _____

DATED:       **MCDONALD HOPKINS LLC**

_____
Jacob D. Radecki (ARDC No. 6321345)
*Defendant's Counsel*

**(INTENTIONALLY LEFT BLANK)**

**APPROVED AND AGREED (CONTINUED):**

DATED:                 **ARKK FOOD COMPANY**

By: _____

Name: _____

Its: _____

DATED: 4/23/2024       **WAHLBURGERS I, LLC**

Alan McKenna

By: _____

Name: _Alan McKenna_____
           8E39D98FDE7F486...

Its: _Chief Fin. Ofcr & Chief Legal Ofcr_

DATED:                 **PATRIOT PICKLE, INC.**

By: _____

Name: _____

Its: _____

DATED:                 **MCDONALD HOPKINS LLC**

_____
Jacob D. Radecki (ARDC No. 6321345)
*Defendant's Counsel*

**(INTENTIONALLY LEFT BLANK)**

**APPROVED AND AGREED (CONTINUED):**

DATED:                         **ARKK FOOD COMPANY**

                                        By: _____

                                      Name: _____

                                      Its: _____

DATED:                         **WAHLBURGERS I, LLC**

                                        By: _____

                                      Name: _____

                                      Its: _____

DATED:                         **PATRIOT PICKLE, INC.**

                                        By: *Bill McEntee (Apr 24, 2024 18:20 CDT)*

                                      Name:   Bill mcentee

                                      Its:   President

DATED:                         **MCDONALD HOPKINS LLC**

                                      _____

                                      Jacob D. Radecki (ARDC No. 6321345)
                                      *Defendant's Counsel*

**(INTENTIONALLY LEFT BLANK)**

**APPROVED AND AGREED (CONTINUED):**

DATED:                            **ARKK FOOD COMPANY**

                                      By: _____

                                        Name: _____

                                        Its: _____

DATED:                            **WAHLBURGERS I, LLC**

                                        By: _____

                                        Name: _____

                                        Its: _____

DATED:                            **PATRIOT PICKLE, INC.**

                                        By: _____

                                        Name: _____

                                        Its: _____

DATED: April 24, 2024             **MCDONALD HOPKINS LLC**

                                      s /Jacob D. Radecki
                                   _____
                                   Jacob D. Radecki (ARDC No. 6321345)
                                   *Defendant's Counsel*

**(INTENTIONALLY LEFT BLANK)**

DATED: 4/24/24

**JONES DAY**

Jennifer L. Del Medico
*Counsel for Defendant Patriot Pickle*

DocuSign Envelope ID: 8BDFEF38-B735-4496-972B-FD1111A11448

## LIST OF EXHIBITS

Exhibit A:     Draft Amended Complaint

Exhibit B:     Claim Form

Exhibit C1:    Long Form Notice

Exhibit C2:    Print Publication Notice

Exhibit C3:    Online Notice

Exhibit D:     Proposed Order of Preliminary Approval

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| KYLE COUNTS, DAMANY BROWNE, and DENNIS MAYER, individually and on behalf of all others similarly situated, | ) ) ) | Case No.: 1:23-cv-00236-LCJ |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| ARKK FOOD COMPANY, a Michigan corporation, WAHLBURGERS I, LLC, a Massachusetts limited liability company, and PATRIOT PICKLE, INC. a New Jersey corporation | ) ) ) ) | |
| Defendants. | | |

### [PROPOSED] SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiffs Kyle Counts ("Counts"), Damany Browne ("Browne"), and Dennis Mayer ("Mayer") (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys, bring this Second Amended Class Action Complaint against Defendants Arkk Food Company, Wahlburgers I, LLC, and Patriot Pickle, Inc. ("Defendants") and alleges the following upon information and belief, except for those allegations pertaining to Plaintiffs, which are based on personal knowledge:

### NATURE OF THE ACTION

1.     This is a class action lawsuit regarding Defendants' manufacturing, distribution, advertising, marketing, labeling, distribution, and sale of Wahlburgers pickles ("Products" or "Pickles")[1] that are sold in grocery stores nationwide and marketed as, among other things, "fresh,"

---

[1] The Products refer to the following Wahlburgers Pickles varieties: Fresh Dill Spears; Fresh Dill Chips; Fresh Dill Chips Hot. Plaintiff reserves the right to amend the complete list of Pickles subject to this lawsuit based on facts obtained in discovery.

"all natural," and containing "no preservatives" ("Representations"). Unfortunately for all reasonable consumers, including Plaintiffs, these claims are false and misleading.

2. Far from being "fresh," "all natural," and preservative free, the Pickles contain considerable amounts of an artificial chemical preservative, sodium benzoate, designed to lengthen the Pickles' shelf life.

3. Despite including this artificial chemical preservative, sodium benzoate, in their Pickles, Defendants go to considerable lengths to mislead consumers into believing the Pickles are free from such preservative:

    a. Defendants label the Pickles with the words "All Natural" and "No Preservatives";

    b. Defendants place the term "Fresh" as the first word for all of the Pickles' varieties directly on the front labels of the Pickles;

    c. Defendants omit the artificial chemical preservative as an ingredient – a material fact to Plaintiffs and all reasonable consumers – on the Pickles' labeling and any marketing regarding the Pickles.

4. Defendants make the Representations and omissions to increase profits and market share in the consumer food product market, specifically the pickle market. Indeed, consumers place value on "natural" products.

5. Consumers have become increasingly concerned about the effects of synthetic, artificial, and chemical ingredients in food, dietary supplements, cleaning products, bath and beauty products, and everyday household products. Companies such as Defendants have capitalized on consumers' desire for purportedly "natural products." Indeed, consumers are willing to pay and have paid a premium for products branded "natural" over products that contain synthetic

ingredients. In 2015, sales of natural products grew 9.5% to $180 billion.[2] Reasonable consumers, including Plaintiffs and Class Members, value natural products for important, material reasons, including the belief that they are safer and healthier than alternative products that are not represented as natural.

6.      Before placing the Pickles into the stream of commerce and into the hands of consumers to eat, Defendants knew or should have known that the Products contained an artificial chemical preservative, sodium benzoate, but Defendants misrepresented, omitted, and concealed this material fact to all reasonable consumers, including Plaintiffs and Class members, by not including the words sodium benzoate anywhere on the Products' labeling.

7.      Plaintiffs and Class members reasonably relied on Defendants' Representations and material omissions when purchasing the Pickles.

8.      Defendants' Representations are material affirmations of fact that became part of the basis of the bargain between Plaintiffs and Class members and Defendants when purchasing the Pickles.

9.      Plaintiffs and Class members purchased the Pickles and paid a price premium for the Pickles based on Defendants' Representations and omissions.

10.     Pickles that contain artificial chemical preservatives typically sell for approximately one or two dollars less than truly fresh pickles that do not. For example, a 32-ounce

---

[2] *Natural Products Industry Sales up 9.5% to $180bn Says NBJ,* FOOD NAVIGATOR, http://www.foodnavigator-usa.com/Markets/EXPO-WEST-trendspotting-organics-natural-claims/(page)/6; *see also* Shoshanna Delventhal, *Study Shows Surge in Demand for "Natural" Products*, INVESTOPEDIA (February 22, 2017), http://www.investopedia.com/articles/investing/022217/study-shows-surge-demand-natural-products.asp (Study by Kline Research indicated that in 2016, the personal care market reached 9% growth in the U.S. and 8% in the U.K. The trend-driven natural and organic personal care industry is on track to be worth $25.1 million by 2025); *Natural living: The next frontier for growth? [NEXT Forecast 2017]*, NEW HOPE NETWORK (December 20, 2016), http://www.newhope.com/beauty-and-lifestyle/natural-living-next-frontier-growth-next-forecast-2017.

Wahlburgers Fresh Dill Spears container costs, when not on sale, $7.99[3] or $0.25 per ounce. But a 24-ounce container of Vlasic Kosher Dill Spears—which does not make any "natural" or preservative free claims—costs $3.49,[4] or $0.14 per ounce.[5]

11.     Because Defendants' false and misleading Representations dupe reasonable consumers into believing the Pickles feature premium attributes (are "fresh," "all natural," and free from artificial chemical preservatives), Defendants' Representations thus dupe reasonable consumers into paying premium prices for the Pickles, even though they do not actually feature the premium attributes for which the consumers, including Plaintiffs and class members, pay.

12.     Defendants are therefore liable to Plaintiffs and Class members for selling the Pickles without disclosing that the Pickles contained or risked containing an artificial chemical preservative, in contravention of their stated Representations and omissions.

13.     This lawsuit seeks to recover monetary damages on behalf of Plaintiffs and class members and equitable relief to halt Defendants' illegal labeling of the Pickles.

**PARTIES**

14.     Plaintiff Kyle Counts is a resident and citizen of Park Forest, Illinois. Plaintiff Counts has purchased numerous varieties of the Products, including Wahlburgers Fresh Dill Spears and Wahlburgers Fresh Dill Chips, multiple times during any statutory limitations period. Plaintiff purchased the Products in person in grocery stores, including Jewel Osco in Illinois. Most recently,

---

[3] https://www.hy-vee.com/aisles-online/p/3318751/Wahlburgers-Fresh-Dill-Spears (last visited April 12, 2023) (Note: at the time of this Complaint, this particular store sold Wahlburger Pickles at a sale price of $6.29 – still far above the price charged by Vlasic).
[4] https://www.hy-vee.com/aisles-online/p/51684/Vlasic-Kosher-Dill-Spears (last visited April 12, 2023).
[5] Plaintiff provides this example of the price premium of Defendants' Pickles containing the Representations. A more detailed price premium damages analysis will be conducted by an expert later in the case after discovery.

Plaintiff purchased the Products in or around September or October 2022 at the Products' retail price.

15.     Plaintiff Damany Browne is a resident and citizen of Brooklyn, New York. Plaintiff Browne has purchased numerous varieties of the Products, including Wahlburgers Fresh Dill Spears and Wahlburgers Fresh Dill Chips, multiple times during any statutory limitations period. Plaintiff purchased the Products in person in grocery stores, including Aldi in Brooklyn, New York. Most recently, Plaintiff purchased the Products between January and April 2023 at the Products' retail price.

16.     Plaintiff Dennis Mayer is a resident and citizen of Erie Country, New York. Plaintiff Mayer has purchased multiple quantities of the Products, including Wahlburgers Fresh Dill Spears and Wahlburgers Fresh Dill Chips, at retail stores, including at Topps Friendly Stores located at 6262 Transit Road, Depew, New York 14043. Many of his purchases began in or around July 2021 and he continued to purchase the Products thereafter.

17.     According to the testing attached as Exhibit A, the products tested had "best by date"—stated as "BBD" on the testing results—of 09/03/22, 10/27/22, 11/24/22, and 07/02/23. *See* Exhibit A. Each of these tests showed significant levels of sodium benzoate. *See id.* These initial tests were then confirmed fourteen additional tests conducted on products with BBD dates from January to  March 2023. *See* Ex. B. According to the sworn statement of Mr. Kahl, "[t]he level of sodium benzoate detected across all samples is present at intentional usage levels that the brine has been formulated with." Ex. B. ¶ 2.

18.     The Pickles have 120 day expiration dates, so that means these Pickles were manufactured between May 2022 and March 2023—all showing significant amounts of sodium benzoate. Plaintiffs purchased the Pickles during this time. Given the consistent presence of

sodium benzoate in testing for the Pickles during this time, it is reasonable to infer Plaintiffs' pickles likewise contained sodium benzoate. As such, on information and belief, the Pickles Plaintiffs purchased in September or October of 2022 and January and April 2023 contained sodium benzoate.

19.     Plaintiffs and reasonable consumers believe that products that are labeled as natural do not contain synthetic ingredients. Plaintiffs and reasonable consumers believe a synthetic ingredient is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources.

20.     When purchasing the Pickles, Plaintiffs read and reviewed the accompanying labels and disclosures and understood them as representations and warranties by Defendants that the Pickles were adequately manufactured, labeled, free from defects, and that the Representations were true. Plaintiffs read and relied on Defendants' Representations and warranties when deciding to purchase the Pickles, and these Representations and warranties were part of the basis of the bargain. Had Defendants not made the false, misleading, and deceptive Representations and omissions alleged herein regarding the Pickles, Plaintiffs would not have been willing to purchase the Pickles. Plaintiffs paid a price premium for the Pickles based on Defendants' Representations, material omissions, and warranties. Accordingly, Plaintiffs were injured and lost money due to Defendants' mislabeling and deceptive conduct.

21.     Defendant ARKK Food Company ("ARKK") is a corporation incorporated under the laws of Michigan, with its principal place of business in Bloomfield Hills, Michigan. ARKK is in the business of creating and producing food products and is the distributor for Wahlburgers Pickles and the exclusive licensee of Wahlburgers' retail products. Upon information and belief, ARKK controls the entire line of Wahlburgers retail products. Upon information and belief, ARKK

has control over the Wahlburgers Pickles' recipes and labeling. ARKK selected and approved the recipe for Wahlburgers Pickles, and ARKK created the labels for Wahlburgers pickles.

22.     Defendant Wahlburgers I, LLC is a limited liability company organized under the laws of Massachusetts with its headquarters in Hingham, Massachusetts. Wahlburgers I, LLC is the owner of the Wahlburgers trademark that appears on the Wahlburgers Pickles' labels and, upon information and belief, has licensed these trademarks to ARKK. Upon information and belief, as the licensor of the Wahlburgers trademarks and by its contractual relationship with ARKK, Wahlburgers I, LLC has control over the Wahlburgers Pickles' recipes and labeling.

23.     Defendant Patriot Pickle Inc. is a corporation incorporated under the laws of Delaware with its headquarters in Wayne, New Jersey. Patriot Pickle is the manufacturer of the Wahlburgers Pickles.

24.     Defendants sell the Pickles throughout the United States, including Illinois and New York. The Pickles, including those purchased by Plaintiffs and Class members, are available at various retail stores throughout the United States, including Illinois and New York. Defendants authorized the false, misleading, and deceptive marketing, advertising, distribution, and sale of the Pickles to consumers nationwide, including Illinois and New York.

## JURISDICTION AND VENUE

25.     This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, (2) the action is a class action, (3) there are members of the Class who are diverse from Defendants, and (4) there are more than 100 Class members. This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy as the claims within the Court's original jurisdiction.

26.     This Court has personal jurisdiction over Defendants because the claims asserted in this complaint arise from Defendants' contacts with this District. Defendants have been afforded due process because they have, at all times relevant to this matter, individually or through their agents, subsidiaries, officers, and/or representatives, operated, conducted, engaged in, and carried on a business venture in Illinois, and/or marketed, advertised, distributed and/or sold the Products, committed a statutory violation within Illinois related to the allegations made herein, and caused injuries to Plaintiff Counts and putative Class Members, which arose out of the acts and omissions that occurred in the state of Illinois, during the relevant time period. At that time, Defendants were engaged in business activities in Illinois.

27.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted in this complaint occurred in Illinois. Venue is also proper pursuant to 28 U.S.C. § 1391(c) because Defendants conduct substantial business in this District, have sufficient minimum contacts with this District, and otherwise purposely avails themselves of the markets in this District through the promotion, sale, and marketing of the Products in this District. Venue is also proper because Plaintiff Counts resides in this District.

## COMMON FACTUAL ALLEGATIONS

I.     **Wahlburgers' Fast Rise in the Food Industry**

28.     Wahlburgers' first brick-and-mortar restaurant opened in 2011.[6]

29.     Wahlburgers sells burgers, sandwiches, and other tasty foods that people enjoy eating.[7]

---

[6] https://wahlburgers.com/our-story. (Last accessed April 12, 2023).
[7] https://wahlburgers.com/menu. (Last accessed April 12, 2023).

30.     After only three (3) years of opening its first restaurant, Wahlburgers began franchising the restaurants.

31.     By 2023, Wahlburgers now has nearly 100 restaurants in states throughout the United States.[8]

32.     Seeking to build on its success in the restaurant market, Wahlburgers launched its Wahlburgers at Home product line in approximately 2021. According to Wahlburgers, "We embrace loyalty, gratitude, excellence and community. We share these values in our restaurants every day and now in your home."[9] Wahlburgers at Home's product line includes everyday consumer products in grocery stores, including meats, bacon, hotdogs, sauces, and pickles.[10]

33.     Wahlburgers continues its aggressive push to expand its business and make more money with plans to build 50 restaurants across Mexico.[11]

34.     Wahlburgers is quickly becoming an industry leader in the food industry, and they are undoubtedly a well-known nationwide brand continuing to gain market share.

35.     Wahlburgers seeks to build trust among its customers by touting, "As we expand our restaurant locations worldwide, it was only natural that we offer our high quality products for your home."[12] Accordingly, reasonable consumers, including Plaintiffs and Class members, trust and expect that Wahlburgers sells high quality products that are accurately and truthfully labeled.

## II.     Wahlburgers Pickles' Labeling Contains False and Misleading Representations

---

[8] https://wahlburgers.com/all-locations. (Last accessed April 12, 2023).
[9] https://www.wahlburgersathome.com/our-story/. (Last accessed April 12, 2023).
[10] https://www.wahlburgersathome.com/products/. (Last accessed April 12, 2023).
[11] Wahlburgers has already expanded internationally to Canada, Australia, and New Zealand.
[12] https://www.wahlburgersathome.com/our-story/. (Last accessed April 12, 2023).

36.     Wahlburgers markets, sells, and distributes Pickles, including Fresh Dill Spears; Fresh Dill Chips; Fresh Dill Chips Hot. Each product is depicted below[13]:



---

[13] These images are found on Wahlburgers' website: https://www.wahlburgersathome.com/products/pickles/. (Last accessed Jan. 16, 2023).





37.     Wahlburgers Pickles are manufactured, distributed, and sold throughout the United States, including the State of Illinois and New York. The Pickles are sold in-store at mass market retailers and grocery stores.

38.     Right on the front labeling of all the Pickles, Wahlburgers represents the Pickles accordingly:

- The labels all prominently feature the word "FRESH" in all capitals as the first word in their names, which are printed multiple times on their labels;

- The labels all prominently represent that the Pickles have "no preservatives"; and

- The labels all prominently represent that the Pickles are "all natural."



39.     Defendants' claims that Wahlburgers pickles are "fresh," "all natural," and contain "no preservatives" are false and misleading. Testing performed by Biogen Laboratory Developments reveals that Wahlburgers Pickles contain substantial amounts of benzoic acid, which is often added into foods via sodium benzoate, an artificial chemical preservative designed to lengthen the Pickles' shelf life. In fact, certificates of analysis from Biogen's testing (attached hereto as Exhibits A and B) indicate[14], for example, Wahlburgers Hot Dill Chips pickles (a.k.a "Wahlburgers Fresh Dill Chips Hot") contain sodium benzoate in a concentration of 641 parts per million; Wahlburgers Dill Spears pickles (a.k.a. "Wahlburgers Fresh Dill Spears") contain sodium

---

[14] Biogen's tests revealed the amounts of benzoic acid indicated on Exhibits A and B, and benzoic acid is almost always added to food via sodium benzoate, an artificial chemical preservative, sodium benzoate.

benzoate in a concentration of between 424 and 436 parts per million; and Wahlburgers Dill Chips pickles (a.k.a. "Wahlburgers Fresh Dill Chips") contain sodium benzoate in a concentration of 600 parts per million. As such, the Pickles' labeling Representations that the Pickles contain "no preservatives" and that the Pickles are "all natural" are false and misleading because the Pickles contain an artificial chemical preservative.

40.     Plaintiffs and the Class are entitled to damages, at least, in the amount of the price premium Defendants charged because of making the false Representations.

## III.    Defendants Also Make Omissions of Material Facts Regarding the Pickles

41.     Defendants' omission of the artificial chemical preservative, sodium benzoate, from the Pickles' labeling is also deceptive.

42.     Sodium benzoate is manufactured in one of three ways:

   a.   naphthalene is oxidized with vanadium pentoxide to give phthalic anhydride, which is decarboxylated to yield benzoic acid;

   b.   toluene is mixed with nitric acid and oxidized to produce benzoic acid; or

   c.   benzotrichloride is hydrolyzed and then treated with a mineral acid to produce benzoic acid.[15]

In each instance, the benzoic acid is then refined to produce sodium benzoate, including dissolving the benzoic acid in a sodium hydroxide-solution. *Id.*

43.     Regardless of the method used, sodium benzoate is thus produced through a chemical process and/or chemical synthesis. Regardless of the base material used, it has undergone a chemical change, so the sodium benzoate is chemically and/or structurally different from how it naturally occurred.

---

[15]   Sodium Benzoate, ENCYLOPEDIA.COM (updated May 18, 2018), available at https://www.encyclopedia.com/science-and-technology/chemistry/organic-chemistry/sodium-benzoate

44.     In 2013, the United States Department of Agriculture ("USDA") issued a Draft Guidance Decision Tree for Classification of Materials as Synthetic or Nonsynthetic (Natural). In accordance with this decision tree, a substance is natural—as opposed to synthetic—if: (a) it is manufactured, produced, or extracted from a natural source (i.e., naturally occurring mineral or biological matter); (b) it has not undergone a chemical change (i.e., a process whereby a substance is transformed into one or more other distinct substances) so that it is chemically or structurally different than how it naturally occurs in the source material; or (c) the chemical change was created by a naturally occurring biological process such as composting, fermentation, or enzymatic digestion or by heating or burning biological matter.

45.     Congress has defined "synthetic" to mean "a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plants, animals, or mineral sources . . . ." 7 U.S.C. § 6502 (21).

46.     Consumers lack the meaningful ability to test or independently ascertain or verify whether a product is natural, especially at the point of sale. Consumers would not know the true nature of the ingredients merely by reading the ingredients label.

47.     Discovering that the ingredients are not natural and are actually synthetic requires a scientific investigation and knowledge of chemistry beyond that of the average consumer.

48.     Defendants' labeling Representations that the Pickles are "fresh" are also false and misleading. "Fresh" products do not contain artificial chemical preservatives; thus, because the Pickles contain an artificial chemical preservative, they are not "fresh." See 21 C.F.R. § 101.95(a) (stating the term "fresh" can be used when food "has not been frozen or subjected to any form of thermal processing or any other form of preservation").

49.     In Illinois, any "advertisement of a food, drug, device or cosmetic shall be deemed false if it is false or misleading in any particular." 410 ILCS § 620/20.

50.     As alleged herein, Defendants have violated the FDCA; 410 ILCS § 620/20; Illinois' Consumer Fraud and Deceptive Trade Practices Act ("ICFA"); and various state consumer protection statutes. Defendants engaged in fraudulent, unfair, deceptive, misleading, and/or unlawful conduct stemming from its misrepresentations and omissions regarding an artificial chemical preservative contained in the Pickles.

51.     In New York, "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state are . . . unlawful." New York General Business Law Section 349 ("GBL § 349"). New York General Business Law § 350 ("GBL § 350") further provides, in part, as follows: False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this State is hereby declared unlawful. Defendants have thus also violated GBL § 349 and GBL § 350.

52.     If Defendants had disclosed, at the point of purchase, to Plaintiffs and putative class members that the Pickles contained sodium benzoate, Plaintiffs and putative class members would not have purchased the Pickles, or they would have paid less for the Pickles.

53.     As a consumer food product seller, Defendants had a duty to ensure that the Pickles did not contain sodium benzoate, including through regular testing, especially before injecting the Pickles into the stream of commerce for consumers to eat. But based on the testing results set forth above, Defendants made no reasonable effort to test their Pickles for sodium benzoate, despite their false and misleading labeling Representations discussed above. The same Defendants claim that: "We embrace loyalty, gratitude, excellence and community. We share these values in our restaurants every day and now in your home." *And* "[We] offer our high quality products for your

home." Moreover, Defendants represented and warranted, expressly and impliedly, that the Pickles were of merchantable quality, complied with federal and state law, and did not contain an artificial chemical preservative, sodium benzoate. All of these claims are false.

## IV. Defendants' Knowledge, Representations, Omissions, and Concealment of Material Facts Deceived Plaintiffs and Reasonable Consumers – This Conduct is Deceptive *and* Unfair under the ICFA and the GBL

54.    Testing performed by Biogen Laboratory Developments reveals that the Pickles contain substantial amounts of benzoic acid, which is often added to foods via sodium benzoate, an artificial chemical preservative designed to lengthen the Pickles' shelf life. In fact, certificates of analysis from Biogen's testing (attached hereto as **Exhibits A and B**) indicate[16], for example, Wahlburgers Hot Dill Chips Pickles (a.k.a "Wahlburgers Fresh Dill Chips Hot") contain sodium benzoate in a concentration of 641 parts per million; Wahlburgers Dill Spears Pickles (a.k.a. "Wahlburgers Fresh Dill Spears") contain sodium benzoate in a concentration of between 424 and 436 parts per million; and Wahlburgers Dill Chips Pickles (a.k.a. "Wahlburgers Fresh Dill Chips") contain sodium benzoate in a concentration of 600 parts per million.

55.    Upon information and belief, Defendants' addition of an artificial chemical preservative to the Pickles and the effects thereof afford Defendants' Pickles a longer shelf life than truly fresh pickles and allow Defendants to hold inventory longer than they otherwise would be able to hold truly fresh pickles. On information and belief, this artificially enhanced shelf life and ability to hold inventory longer afford Defendants a competitive advantage that is not available to companies that produce genuinely fresh pickles.

---

[16] Biogen's tests revealed the amounts of benzoic acid indicated on **Exhibits A and B**, and benzoic acid is almost always added to food via sodium benzoate, an artificial chemical preservative, sodium benzoate.

56. And to drive up sales in the competitive food industry market and expand its market share, Defendants knowingly omit the material fact that the Pickles contain an article chemical preservative.

57. Thus, reasonable consumers shopping for fresh, and/or all natural, and/or preservative-free pickles purchase Defendants' Pickles based on the above Representations and omissions made by Defendant at the point of sale. But for Defendants' false and misleading labeling Representations, these customers would not have purchased Defendants' Pickles or would not have paid as much as they did.

58. Additionally, a large cross-section of customers, particularly those that are a part of the "real food" or "clean labeling" movements, will not consider purchasing products that contain artificial preservatives. These customers chose to purchase Wahlburgers Pickles based on the false belief that they did not contain artificial preservatives. But for Wahlburgers' false and misleading labeling statements, these customers would not have purchased Wahlburgers Pickles or would have paid less for the Pickles.

59. Wahlburgers, a large, sophisticated company in the business of manufacturing, distributing, and selling consumer food products, knew or should have known the Pickles contained an article chemical preservative.

60. Defendants sold, and continue to sell, the Pickles containing an artificial chemical preservative during the relevant class period despite Defendants' knowledge of the presence of sodium benzoate in the Pickles.

61. Sodium benzoate is not listed on the Pickles' labels as an ingredient, nor is there any disclosure about sodium benzoate's inclusion (or potential inclusion) in the Pickles.

62.     Defendants have engaged in deceptive, untrue, and misleading advertising by making labeling Representations discussed above. Defendants' conduct is also deceptive because Defendants omit the material fact that the Pickles contain sodium benzoate. Defendants' conduct is also **unfair** for all of the reasons discussed above.

63.     Plaintiffs would not have purchased the Pickles or paid as much for them had they been truthfully and accurately labeled.

64.     Had Defendants adequately tested the Pickles for sodium benzoate, they would have discovered that the Pickles contained sodium benzoate, making the Products containing the false Representations illegal to distribute, market, and sell.

65.     Defendants' concealment was material and intentional because people are concerned with what is in the foods they eat. Consumers such as Plaintiffs and class members make purchasing decisions based on the Representations made on the Products' labeling, including the ingredients listed.

66.     Defendants know that if they had not omitted that the Pickles contained or risked containing sodium benzoate, then Plaintiffs and class members would not have purchased the Pickles or would not have paid as much as they did.

**V.    Injuries to Plaintiffs and Class Members – and the Public at Large**

67.     When Plaintiffs purchased Defendants' Pickles, Plaintiffs did not know and had no reason to know that Defendants' Pickles contained or risked containing an artificial chemical preservative. Not only would Plaintiffs not have purchased Defendants' Pickles had they known the Pickles contained an artificial chemical ingredient, but they would also not have been capable of purchasing them if Defendants had done, as the law requires, and tested the Products for such ingredients and accurately labeled the Pickles.

68. Consumers lack the ability to test or independently ascertain or verify whether a product contains an artificial chemical preservative, such as sodium benzoate, especially at the point of sale. Therefore, they must trust and rely on Defendants to truthfully and honestly report what the Products contain on their packaging and labeling.

69. Further, given Defendants' position as a nationwide leader in the food industry, Plaintiffs and all reasonable consumers trusted and relied on Defendants' Representations and omissions regarding the Pickles.

70. Yet, when consumers look at the Pickles' packaging, there is no mention of sodium benzoate or any preservative. It is not listed in the ingredients section, nor is there any disclosure about its inclusion in the Pickles.

71. No reasonable consumer, including Plaintiffs, would have paid as much for Defendants' Pickles containing the Representations had they known those Pickles contain or may contain any amount of sodium benzoate, let alone at the limits found in Defendants' Pickles – making such omitted facts material to them.

72. Defendants' false, misleading, and deceptive Representations and omissions made on the labeling of the Pickles are likely to continue to deceive and mislead reasonable consumers and the public, as they have already deceived and misled Plaintiffs and the Class Members.

73. As alleged above, Plaintiffs and Class members Products either contained sodium benzoate or were at significant risk of containing the same.

74. Plaintiffs and Class members are entitled to statutory and punitive damages, equitable relief, attorneys' fees and costs, and any further relief this Court deems just and proper.

**CLASS ALLEGATIONS**

75. Plaintiffs, individually and on behalf of all others, brings this class action pursuant to Fed. R. Civ. P. 23.

76. Plaintiffs seek to represent a class defined as:

All persons who purchased Wahlburgers Pickles in the United States for personal or household use within any applicable limitations period ("Class").

77. Plaintiff Counts also seeks to represent a subclass defined as:

All persons who purchased Wahlburgers Pickles in Illinois for personal or household use within any applicable limitations period ("Illinois Subclass").

78. Plaintiffs also seek to represent a subclass defined as:

All persons who purchased Wahlburgers Pickles in the States of California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, or Washington for personal or household use within any applicable limitations period ("Multi-State Subclass").[17]

79. Plaintiffs Browne and Mayer also seek to represent a subclass defined as:

All persons who purchased Wahlburgers Pickles in the State of New York for personal or household use within any applicable limitations period ("New York Subclass").

80. Excluded from the Class and Subclasses are: (1) any Judge or Magistrate presiding over this action and any members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entities in which Defendants or their parents and any entities in which Defendants have a controlling interest and their current or former employees, officers, and directors; (3) individuals who allege personal bodily injury resulting from the use of the Pickles; and (4) resellers of the Pickles.

---

[17] While discovery may alter the following, the states in the Consumer Fraud Multi-State Class are limited to those states with similar consumer fraud laws under the facts of this case: California (Cal. Bus. & Prof. Code § 17200, *et seq.*); Florida (Fla. Stat. § 501.201, *et seq.*); Illinois (815 Ill. Comp. Stat. 505/1, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*); Michigan (Mich. Comp. Laws § 445.901, *et seq.*); Minnesota (Minn. Stat. § 325F.67, *et seq.*); Missouri (Mo. Rev. Stat. § 407.010, *et seq.*); New Jersey (N.J. Stat. § 56:8-1, *et seq.*); New York (N.Y. Gen. Bus. Law §§ 349 and 350); and Washington (Wash. Rev. Code § 19.86.010, *et seq.*). Plaintiff Counts has standing to represent the proposed Multi-State Subclass. Any challenge brought by Defendants regarding Plaintiff's standing to represent any proposed class should be deferred to the class certification stage because that is what Illinois law requires.

81. Plaintiffs reserve the right to modify, change or expand the definitions of the Class based upon discovery and further investigation.

82. *Numerosity*: The Class is so numerous that the joinder of all members is impracticable. The Class likely contains thousands of members based on publicly available data. The Class is ascertainable by records in Defendants' possession.

83. *Commonality*: Questions of law or fact common to the Class include, without limitation:

   a. Whether the Products contain an artificial chemical ingredient;

   b. Whether a reasonable consumer would consider the presence of an artificial chemical ingredient in the Pickles (and omission of that ingredient) to be material;

   c. Whether Defendants knew or should have known that the Pickles contain an artificial chemical ingredient;

   d. Whether Defendants' Representations are deceptive;

   e. Whether Defendants' Representations are false and misleading;

   f. Whether Defendants failed to disclose that the Pickles contain an artificial chemical ingredient;

   g. Whether Defendants concealed that the Pickles contain an artificial chemical preservative or ingredient;

   h. Whether Defendants engaged in **<u>unfair or</u>** deceptive trade practices;

   i. Whether Defendants violated the state consumer protection statutes alleged herein;

   j. Whether Defendants were unjustly enriched; and

   k. Whether Plaintiffs and Class members are entitled to monetary damages and injunctive relief.

84.     *Typicality*: Plaintiffs' claims are typical of the claims of Class members. Plaintiffs and Class members were injured and suffered damages in the same manner, have the same claims against Defendants relating to the same course of conduct, and are entitled to relief under the same legal theories.

85.     *Adequacy*: Plaintiffs will fairly and adequately protect the interests of the Class and have no interests antagonistic to those of the Class. Plaintiffs have retained counsel experienced in prosecuting complex class actions, including actions with issues, claims, and defenses similar to the present case. Counsel intends to prosecute this action vigorously.

86.     *Predominance and superiority*: Questions of law or fact common to Class members predominate over any questions affecting individual members. A class action is superior to other available methods for the fair and efficient adjudication of this case because individual joinder of all Class members is impracticable, and the amount at issue for each Class member would not justify the cost of litigating individual claims. Should individual Class members be required to bring separate actions, this Court would be confronted with multiple lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale, and comprehensive supervision by a single court. Plaintiffs are unaware of any difficulties likely to be encountered in managing this action that would preclude its maintenance as a class action.

87.     Accordingly, this class action may be maintained under Fed. R. Civ. P. 23(b)(2) and (b)(3).

**CAUSES OF ACTION**
**COUNT I**
**COMMON LAW FRAUD UNDER**
**MASSACHUSETTS COMMON LAW**

88.     Plaintiffs repeat and reallege each and every allegation contained in the preceding paragraphs as if fully set forth herein.

89.     Plaintiffs bring this Count on behalf of themselves and the Class against Defendants.

90.     This claim is brought under the laws of the State of Massachusetts.

91.     As discussed above, Defendants provide Plaintiffs and the Class members with false or misleading material information and fail to disclose material facts about the Products, including the Representations. These misrepresentations and omissions are made with knowledge of their falsehood.

92.     The misrepresentations and omissions made by Defendants, upon which Plaintiffs and the Class members reasonably and justifiably rely, are intended to induce and actually induce Plaintiffs and the Class members to purchase the Products.

93.     The gravamen, focus, and center of activity of Defendants' fraudulent actions occurred in Massachusetts.

94.     The fraudulent actions of Defendants caused damage to Plaintiffs and the Class members, who are entitled to damages and other legal and equitable relief as a result.

95.     As a result of Defendants' wrongful conduct, Plaintiffs and the Class members have suffered and continue to suffer economic losses and other general and specific damages, including amounts paid for the Products and any interest that would have been accrued on these monies, all in the amount to be determined at trial.

96.     Therefore, Plaintiffs pray for relief as set forth below.

<u>**COUNT II**</u>
**VIOLATIONS OF STATE CONSUMER FRAUD ACTS**
**(On behalf of Plaintiff and the Multi-State Subclass)**

97.     Plaintiffs repeat and reallege each and every allegation contained in the preceding paragraphs as if fully set forth herein.

98.     Plaintiffs bring this Count on behalf of themselves and the Multi-State Subclass against Defendants.

99.     The Consumer Fraud Acts of the States in the Multi-State Subclass prohibit unfair or deceptive business practices in trade or commerce. The specific laws at issue are:

    a.  California (Cal. Bus. & Prof. Code § 17200, *et seq.*);

    b.  Florida (Fla. Stat. § 501.201, *et seq.*);

    c.  Illinois (815 Ill. Comp. Stat. 505/1, *et seq.*);

    d.  Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*);

    e.  Michigan (Mich. Comp. Laws § 445.901, *et seq.*);

    f.  Minnesota (Minn. Stat. § 325F.67, *et seq.*);

    g.  Missouri (Mo. Rev. Stat. § 407.010, *et seq.*);

    h.  New Jersey (N.J. Stat. § 56:8-1, *et seq.*); and

    i.  Washington (Wash. Rev. Code § 19.86.010, *et seq.*)

100.    Plaintiffs and the other Members of the Multi-State Subclass have standing to pursue a cause of action for violations of the Consumer Fraud Acts of the states in the Multi-State Subclass because Plaintiffs and Members of the Multi-State Subclass have suffered an injury in fact and lost money as a result of Defendants' actions set forth herein.

101.    Defendants engaged in unfair and/or deceptive conduct by making material representations and omissions regarding the presence of an artificial chemical preservative, sodium benzoate, in the Pickles, as discussed herein.

102.     Defendants intended that Plaintiff and each of the other Members of the Multi-State Subclass would rely upon its unfair and deceptive conduct, and a reasonable person would be misled by this deceptive conduct described above.

103.     Given Defendants' position in the consumer food industry and its growing popularity as an established and trustworthy national (even international) brand, Plaintiff and reasonable consumers trusted and relied on Defendants' Representations and omissions regarding the presence of an artificial chemical preservative, sodium benzoate, in the Pickles.

104.     As a result of Defendants' use or employment of unfair or deceptive acts or business practices, Plaintiffs and the other Members of the Multi-State Subclass have sustained damages in an amount to be proven at trial.

105.     In addition, Defendants' conduct showed malice, motive, and reckless disregard for the truth, so an award of punitive damages is appropriate.

### COUNT III
**VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE PRACTICES ACT, 815 ILCS 505/1, et seq. ("ICFA")**
**(On behalf of Plaintiffs and the Nationwide Class and Illinois Subclass)**

106.     Plaintiffs re-allege and incorporate all preceding factual allegations as set forth fully herein.

107.     Plaintiffs bring this cause of action on behalf of themselves and the Nationwide Class and Illinois Subclass Members against Defendants.

108.     Plaintiffs and other Class Members are persons within the context of the Illinois Consumer Fraud and Deceptive Trade Practices Act ("ICFA"), 815 ILCS 505/1(c).

109.     Each Defendant is a person within the context of the ICFA, 815 ILCS 505/1(c).

110.     At all times relevant hereto, Defendants were engaged in trade or commerce as defined under the ICFA, 815 ILCS 505/1(f).

111.     Plaintiffs and the proposed Class are "consumers" who purchased the Products for personal, family, or household use within the meaning of the ICFA, 815 ILCS 505/1(e).

112.     The ICFA does not apply to "[a]ctions or transactions specifically authorized by laws administered by any regulatory body or officer of this State or the United States." 815 ILCS 505/10b(1).

113.     The ICFA prohibits engaging in "unfair or deceptive acts or practices … in the conduct of any trade or commerce…." ICFA, 815 ILCS 505/2.

114.     The ICFA prohibits any deceptive, unlawful, unfair, or fraudulent business acts or practices, including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or employment of any practice described in Section 2 of the Uniform Deceptive Trade Practices Act ("UDTPA"). 815 ILCS § 505/2.

115.     Plaintiffs and the other Nationwide Class and Illinois Subclass Members reasonably relied upon Defendants' Representations and omissions alleged herein regarding the presence of an artificial chemical preservative, sodium benzoate, in the Pickles. Plaintiffs read and relied on Defendants' labeling Representations and omissions to conclude that the Pickles did not contain an artificial chemical preservative, sodium benzoate, in the Pickles.

116.     Defendants' conduct, as described herein, took place within the State of Illinois and constitutes unfair or deceptive acts or practices in the course of trade and commerce, in violation of 815 ICFA 505/1, et seq.

117.     Defendants violated the ICFA by representing that the Products have characteristics or benefits that they do not have. 815 ILCS § 505/2; 815 ILCS § 510/2(7).

118.    Defendants advertised the Products with the intent not to sell them as advertised, in violation of 815 ILCS § 505/2 and 815 ILCS § 510/2(9).

119.    Defendants engaged in fraudulent and/or deceptive conduct, which creates a likelihood of confusion or misunderstanding in violation of 815 ILCS § 505/2; 815 ILCS § 510/2(3).

120.    Before placing the Pickles into the stream of commerce and into the hands of consumers, including Plaintiffs and reasonable consumers, Defendants knew or should have known that the Pickles contained an artificial chemical preservative, sodium benzoate, but Defendants omitted, and concealed this material fact to consumers, including Plaintiffs and Class members, by not including the words sodium benzoate on the Pickles' labeling or otherwise disclosing its presence. Defendants chose to label the Pickles in this way to impact consumer choices and gain market share. They are aware that all consumers who purchased the Pickles were exposed to and would be affected by its omissions and would reasonably believe that the Pickles did not contain an artificial chemical preservative, sodium benzoate and that Defendants' Representations were otherwise accurate. However, Defendants' Representations are false and misleading because the Pickles contain an artificial chemical preservative, sodium benzoate.

121.    Defendants intended that Plaintiffs and each of the other Nationwide Class and Illinois Subclass Members would reasonably rely upon the Representations, misleading characterizations, and material omissions concerning the true nature of the Pickles.

122.    Defendants' Representations, concealment, omissions, and other deceptive conduct were likely to deceive and cause misunderstanding and/or cause Plaintiffs and the other Nationwide Class and Illinois Subclass Members to be deceived about the true nature of the Pickles.

28

123. Plaintiffs and Class Members have been damaged as a proximate result of Defendants' violations of the ICFA. They have suffered damages as a direct and proximate result of purchasing the Pickles.

124. As a direct and proximate result of Defendants' violations of the ICFA, as set forth above, Plaintiffs and the Nationwide Class and Illinois Subclass Members have suffered ascertainable losses of money caused by Defendants' Representations and material omissions regarding the presence of an artificial chemical preservative, sodium benzoate, in the Pickles.

125. Had they been aware of the true nature of the Pickles, Plaintiffs and Class Members would have paid less for the Pickles or would not have purchased them.

126. Based on Defendants' unfair and/or deceptive acts or practices, Plaintiffs and the Nationwide Class and Illinois Subclass Members are entitled to relief, including restitution, actual damages, treble damages, punitive damages, costs, and attorney's fees, under 815 ILCS 505/10a. Plaintiff and Class Members are also entitled to injunctive relief, seeking an order enjoining Defendants' unfair and/or deceptive acts or practices.

## COUNT IV
## UNJUST ENRICHMENT
### (On behalf of Plaintiff and the Nationwide Class)

127. Plaintiffs repeat and reallege each and every allegation contained in the preceding paragraphs as if fully set forth herein.

128. Plaintiffs bring this Count on behalf of themselves and the Nationwide Class against Defendants.

129. This claim is brought under the laws of the State of Massachusetts.

130. This claim is brought in the alternative to the other Counts. The Federal Rules of Civil Procedure allow Plaintiffs to plead alternative theories.

131.    Defendants' conduct violated, *inter alia*, state, and federal law by manufacturing, advertising, labeling, marketing, distributing, and selling the Pickles while misrepresenting and omitting material facts, including by making the labeling Representations alleged herein.

132.    Defendants' unlawful conduct allowed Defendants to knowingly realize substantial revenues from selling the Pickles at the expense of, and to the detriment or impoverishment of, Plaintiffs and Class members and to Defendants' benefit and enrichment. Defendants have violated fundamental principles of justice, equity, and good conscience.

133.    Plaintiffs and Class members conferred significant financial benefits and paid substantial compensation to Defendants via retailers for the Pickles, which were not as Defendants represented them to be.

134.    Defendants knowingly received and enjoyed the benefits conferred by Plaintiff and Class members.

135.    It is inequitable for Defendants to retain the benefits conferred by Plaintiff and Class members' overpayments.

136.    Plaintiff and Class members seek to establish a constructive trust from which Plaintiff and Class members may seek restitution.

## COUNT V
## VIOLATION OF NEW YORK GBL § 349
**(On Behalf of Plaintiff sBrowne and Mayer and the New York Subclass Members)**

137.    Plaintiffs Browne and Mayer repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

138.    New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

139.    The conduct of Defendants alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the other Class Members seek monetary damages.

140.    Defendants misleadingly and deceptively represent the Products to consumers.

141.    Defendants further omitted material facts, including the presence of sodium benzoate in the Products (or that the Products risked containing sodium benzoate).

142.    Defendants' unlawful consumer-oriented conduct is misleading materially because Plaintiff and the other class members believed that the Products were "fresh," "all natural," and preservative free and did not contain sodium benzoate.

143.    Plaintiffs Browne and Mayer and other New York Subclass Members paid extra money for accurately labeled Products that were "fresh," "all natural," and preservative free and did not contain sodium benzoate. Had Plaintiffs Browne and Mayer and reasonable consumers known that the Products were not "fresh," "all natural," and preservative free, and contained sodium benzoate, they would not have purchased them at all or at least not have paid as much for them.

144.    Defendants engaged in its unlawful conduct as alleged herein willfully, wantonly, and with reckless disregard for the truth.

145.    Plaintiffs Browne and Mayer and other New York Subclass Members have been injured inasmuch as they, having viewed the Products label, and paid a premium for the Products. Accordingly, Plaintiffs Browne and Mayer and other New York Subclass Members paid more than the Products they bargained for and received were worth.

31

146.     Defendants' conduct as alleged herein constitutes a deceptive act and practice in business conduct violating New York General Business Law §349(a), and Plaintiffs Browne and Mayer and other New York Subclass members have been damaged thereby.

147.     As a result of Defendants' deceptive acts and practices, Plaintiffs Browne and Mayer and other New York Subclass Members are entitled to monetary and compensatory damages, interest, and attorneys' fees and costs. This includes actual damages under GBL § 349 and statutory damages of $50 per unit purchased pursuant to GBL § 349.

**COUNT VI**
**VIOLATION OF NEW YORK GBL § 350**
**(On Behalf of Plaintiffs Browne and Mayer and the New York Subclass Members)**

148.     Plaintiffs Browne and Mayer repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

149.     N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.

150.     N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

151.     Defendants' labeling contains a deceptive and materially misleading statement concerning its Products inasmuch as they misrepresented the Products were "fresh," "all natural," and preservative free, and did not contain sodium benzoate.

152.     Defendants' labeling contains deceptive and materially misleading omissions concerning sodium benzoate.

153.     Plaintiffs Browne and Mayer and other New York Subclass Members have been injured since they, having viewed Defendants' label, paid a premium for the Products. Plaintiffs Browne and Mayer and other New York Subclass Members paid more than the Products they bargained for and received were worth.

154.     Defendants engaged in unlawful conduct as alleged herein willfully, wantonly, and with reckless disregard for the truth.

155.     Defendants' material misrepresentations and omissions were uniform.

156.     As a result of Defendants' acts and practices in violation of GBL § 350, Plaintiffs Browne and Mayer and other New York Subclass Members are entitled to monetary and compensatory damages, restitution, and disgorgement of all monies obtained using Defendants' unlawful conduct, interest, and attorneys' fees and costs, as well as statutory damages of $500 per Product purchased.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for relief and judgment against Defendants as follows:

a.  Certifying the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as representatives of the Class and Subclasses, and designating Plaintiffs' counsel as Class Counsel;

b.  Awarding Plaintiffs and Class members compensatory, statutory, or other monetary damages, in an amount to be determined at trial;

    c.  Awarding Plaintiffs and Class members appropriate relief, including but not limited to actual damages;

    d.  For restitution and disgorgement of profits;

    e.  Awarding Plaintiffs and Class members reasonable attorneys' fees and costs as allowable by law;

    f.  Awarding pre-judgment and post-judgment interest;

    g.  For punitive damages;

    h.  For injunctive relief; and

    i.  Granting any other relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury of all claims so triable.

Dated: April \_\_\_, 2024

Respectfully Submitted,

**LAUKAITIS LAW FIRM LLC**

*/s/ draft*
Kevin Laukaitis
737 Bainbridge Street #155
Philadelphia, PA 19147
Phone: (215) 789-4462
Email: klaukaitis@laukaitislaw.com

**REESE LLP**
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, New York 10025
Phone: (212) 643-0500
Email: mreese@reesellp.com

**REESE LLP**
Charles D. Moore
121 N. Washington Ave, 4th Floor
Minneapolis, Minnesota 55401
Telephone: 212-643-0500
Email: *cmoore@reesellp.com*

**POMERANTZ LLP**
Gustavo F. Bruckner
Samuel J. Adams
Ankita Sangwan
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
gfbruckner@pomlaw.com
sjadams@pomlaw.com
asangwan@pomlaw.com

**THE FINK LAW FIRM, P.C**.
Steven M. Fink
488 Madison Avenue, 20th Floor
New York, New York 10022
Telephone: (212) 280-6600
Facsimile: (212) 898-1117
sfink@thefinklawfirmpc.com

*Attorneys for Plaintiff and the Proposed Classes*

# EXHIBIT B

# Counts et al. v. Arkk Food Company et al.
# Claim Form Instructions

## INSTRUCTIONS FOR COMPLETING THE CLAIM FORM

If you believe you are an eligible Settlement Class Member and you wish to apply for a Settlement benefit, you must complete and submit a Claim Form. Please read the full Class Notice available at the Settlement Website, **[INSERT WEBSITE]**, carefully before completing a Claim Form. You may submit your Claim Form online at the Settlement Website or by mailing it to the Settlement Administrator:

**ONLINE:**       **Visit the Settlement Website, [INSERT WEBSITE], and submit your Claim Form online.**

**MAIL**:          **[INSERT ADDRESS]**

If you submit your Claim Form online, you must do so on or before [sixty (60) days after the start of the Notice Plan], 2024.  If you are mailing your Claim Form, you must do so via first-class United States Mail, and it must be postmarked no later than [sixty (60) days after the start of the Notice Plan], 2024.

If you have questions about this Claim Form, please visit the Settlement Website, [INSERT WEBSITE], or contact the Settlement Administrator via email at [insert email address] or call toll-free at [phone number].

## CLAIM FORM REMINDER CHECKLIST

**Before submitting this Claim Form, please make sure you:**

1. Complete fields in Section A (Name and Contact Information) of this Claim Form.

2. Number of purchased Products in Section B of this Claim Form.

3. YOU MUST sign the Attestation under penalty of perjury in Section C of this Claim Form.

4. Include copies of any Proof of Purchase documentation that you are submitting in support of your Claim Form. Do not send original documents.

**Please keep a copy of your Claim Form for your records.**

<table>
<tr><td>

**Your claim must be postmarked by: XXXX XX, 2024**

</td><td>

## Counts et al. v. Arkk Food Company et al.
## Claim Form

</td><td>

**WAHL**

**Claim Form**

</td></tr>
</table>

---

## SECTION A:   NAME AND CONTACT INFORMATION

---

Provide your name and contact information below. It is your responsibility to notify the Settlement Administrator of any changes to your contact information after the submission of your Claim Form.

| | |
|---|---|
| **First Name** | **Last Name** |

**Street Address**

| | | |
|---|---|---|
| **City** | **State** | **Zip Code** |

| | |
|---|---|
| **Phone Number** | **E-Mail Address** |

## SECTION B:   PRODUCTS PURCHASE VERIFICATION

---

Provide the following information regarding purchases you made during the Class Period of Products, and indicate the purchases for which you are attaching Proof of Purchase documentation. Proof of Purchase means documentation from a third-party retail source that reasonably establishes the fact of the purchase of the Product during the Class Period in the United States. You may submit claims for up to 6 products without Proof of Purchase, and as many products as you have Proof of Purchase for. Your claims will be cumulative meaning, any claims for products with Proof of Purchase will not be counted towards your limit on claims without Proof of Purchase

**Limit 1 Claim Form per Household.**

| **Number of Product Without Proof of Purchase** | **Number of Products With Proof of Purchase** |
|---|---|
| | |

Please select from **one** of the following payment options:

☐ **Venmo -** Enter the mobile number associated with your Venmo account: __ __ __-__ __ __-__ __ __ __

☐ **Zelle -** Enter the mobile number or email address associated with your Zelle account:

Mobile Number: __ __ __-__ __ __-__ __ __ __   or Email Address: _____

☐ **Virtual Prepaid Card -** Enter your email address: _____

☐ **Physical Check -** Payment will be mailed to the address provided in Section A above.

---

## SECTION C:   ATTESTATION UNDER PENALTY OF PERJURY

I declare, under penalty of perjury, that the information in the Claim Form is true and correct to the best of my knowledge, and that I purchased the Product(s) claimed above from retail locations in the United States during the Class Period. The purchases were not made for resale or commercial use. I understand that my Claim Form may be subject to audit, verification, and Court review. Neither I nor anyone from my Household have previously submitted a Claim Form in this Settlement.

| | |
|---|---|
| Signature | Date |

Print Name

**Please note that you will not be eligible to receive any Settlement benefits unless you sign above.**

# EXHIBIT C1

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS

# If you purchased any Wahlburgers Pickles
# Between April 1, 2021 and March 31, 2023
# You May be Eligible to Receive a Payment from a Class Action Settlement.

### *A Federal Court authorized this notice. This is not a solicitation from a lawyer.*

- A proposed nationwide settlement ("Settlement") has been reached in a class action lawsuit involving Defendants Arkk Food Company ("Arkk"), Wahlburgers I, LLC ("Wahlburgers I"), and Patriot Pickle, Inc ("Patriot Pickle") (collectively "Defendants") Wahlburgers Pickles sold in stores in the United States ("Products"). The Settlement resolves litigation over whether the Defendants allegedly violated state laws regarding the marketing and sale of the Products.

- You may be eligible to participate in the proposed Settlement, if it is finally approved, if you purchased any Products between April 1, 2021 and March 31, 2023.

- The Settlement will provide payments to those who qualify. You will need to file a Claim Form to get a payment from the Settlement.

- Your legal rights are affected whether you act or do not act. Read this notice carefully.

## YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT

| | |
|---|---|
| **SUBMIT A CLAIM FORM BY [INSERT DEADLINE]** | This is the only way to get a payment. |
| **EXCLUDE YOURSELF BY [INSERT DEADLINE]** | Get no payment from the Settlement. This is the only option that allows you to ever be a part of any other lawsuit against the Defendants about the legal claims in this case. |
| **OBJECT BY [INSERT DEADLINE]** | Write to the Court about why you think the Settlement is unfair, inadequate, or unreasonable. |
| **GO TO A HEARING [INSERT HEARING DATE]** | Ask to speak in Court about the fairness of the Settlement. |
| **DO NOTHING** | Get no payment. Give up rights to ever sue the Defendants about the legal claims in this case. |

- These rights and options—**and the deadlines to exercise them**—are explained in this notice. The deadlines may be moved, canceled, or otherwise modified, so please check the Settlement Website, [**INSERT URL**], regularly for updates and further details.

- The Court in charge of this case still has to decide whether to approve the Settlement. Payments will be made if the Court approves the Settlement and after any appeals are resolved. Please be patient.

## WHAT THIS NOTICE CONTAINS:

**BASIC INFORMATION**
1.   Why is there a notice?
2.   What is this lawsuit about?
3.   Why is this a class action?
4.   Why is there a Settlement?

**WHO IS IN THE SETTLEMENT?**
5.   How do I know if I am in the Settlement?
6.   Which Products are included in the Settlement?
7.   What if I am still not sure if I am included in the Settlement?

**SETTLEMENT BENEFITS**
8.   What does the Settlement provide?
9.   What can I get from the Settlement?
10.  What am I giving up to stay in the Class?

**HOW TO GET A PAYMENT**
11.  How can I get a payment?
12.  When will I get my payment?

**EXCLUDING YOURSELF FROM THE SETTLEMENT**
13.  How do I get out of the Settlement?
14.  If I do not exclude myself, can I sue the Defendant for the same thing later?
15.  If I exclude myself, can I still get a payment?

**OBJECTING TO THE SETTLEMENT**
16.  How can I tell the Court if I do not like the Settlement?
17.  What is the difference between objecting and excluding?

**THE LAWYERS REPRESENTING YOU**
18.  Do I have a lawyer in this case?
19.  How will the lawyers be paid?

**THE COURT'S FAIRNESS HEARING**
20.  When and where will the Court decide whether to approve the Settlement?
21.  Do I have to come to the hearing?
22.  May I speak at the hearing?

**IF YOU DO NOTHING**
23.  What happens if I do nothing at all?

**GETTING MORE INFORMATION**
24.  How do I get more information?

## BASIC INFORMATION

**1.**    **Why is there a notice?**

You have a right to know about a proposed Settlement of a class action lawsuit, and about your options, before the Court decides whether to approve the Settlement.

The Court in charge of this case is the United States District Court for the Northern District of Illinois (the "Court"), and the case is called *Counts et al v. Arkk Food Company.*, Case Number 1:23-cv-00236. The individuals who sued are called the Plaintiffs, and the companies Plaintiffs sued, Arkk Food Company, Wahlburgers I, LLC, and Patriot Pickle, Inc. are called the Defendants.

**2.**    **What is this lawsuit about?**

The lawsuit alleges that statements (a) "fresh"; (b) "all natural"; and (c) "no preservatives" (collectively the "Representations") on the Wahlburgers Pickles are misleading because the Products contained sodium benozate.

The Defendants deny any and all wrongdoing of any kind whatsoever, and deny any liability to Plaintiffs and to the Settlement Class.

**3.**    **Why is this a class action?**

In a class action, one or more people, called "Class Representative(s)," sue on behalf of people who have similar claims. All the people who have similar claims are in a "class" and are "class members," except for those who exclude themselves from the class. United States District Court Judge Lindsay C. Jenkins in the United States District Court for the Northern District of Illinois is in charge of this class action.

**4.**    **Why is there a Settlement?**

Defendants are not admitting that it did anything wrong, but both sides want to avoid the cost of further litigation. The Court has not decided in favor of the Plaintiffs or the Defendants. The Class Representatives and their attorneys think the Settlement is best for everyone who is affected. The Settlement provides the opportunity for Settlement Class Members to receive Settlement benefits.

## WHO IS IN THE SETTLEMENT?

**5.**    **How do I know if I am in the Settlement?**

The Settlement Class includes all persons who, from April 1, 2021 to March 31, 2023, purchased one or more of the Products in the United States. Excluded from the Settlement Class and Settlement Class Members are: (a) the directors, officers, employees, and attorneys of Defendant, its parents and subsidiaries; (b) governmental entities; (c) the Court, the Court's immediate family, and Court staff; (d) John DeGroote and his immediate family; and (d) any person that timely and properly excludes himself or herself from the Settlement Class in accordance with the procedures approved by the Court.

**6.**    **Which Products are included in the Settlement?**

The Products covered by this Settlement are products sold under the brand name Wahlburgers Pickles in the United States. They are sold in the following varieties: (a) Fresh Dill Spears; (2) Fresh Dill Chips; (3) Fresh Dill Chips Hot.

**7.**    **What if I am still not sure if I am included in the Settlement?**

If you are not sure whether you are a Settlement Class Member, or have any other questions about the Settlement Agreement, you should visit the Settlement Website, [**INSERT URL**], or call the toll-free number, [**INSERT TOLL FREE NUMBER**].

### SETTLEMENT BENEFITS

**8.    What does the Settlement provide?**

The Settlement provides that Defendants will pay $2,000,000 into a settlement fund to pay for the following: a) Notice and Claims Administration; b) Attorney Fees and Services Award; and c) eligible Claims submitted by Settlement Class Members. Settlement Class Members who timely submit valid Claim Forms are entitled to receive a cash payment from the Settlement.

**9.    What can I get from the Settlement?**

If you submit a valid Claim Form by the deadline, you can get a payment from the Settlement for $2 per product, for up to 6 products without proof of purchase, and full reimbursement for as many products as you have proof of purchase for. Any claims with proof of purchase will not count against your total claims without proof of purchase. The actual amount recovered by each Settlement Class Member will not be determined until after the Claims Period has ended and all Claims have been calculated.

**10.    What am I giving up to stay in the Class?**

Unless you exclude yourself from the Settlement, you cannot sue the Defendants, continue to sue, or be part of any other lawsuit against the Defendants about the claims released in this Settlement. It also means that all of the decisions by the Court will bind you. Below is a summary of Released Claims. The full Release is described more fully in the Settlement Agreement and describes exactly the legal claims that you give up if you stay in the Settlement Class. The Settlement Agreement is available at the Settlement Website, [**INSERT URL**].

"Released Claims" means any and all claims, demands, rights, suits, liabilities, and causes of action of every nature and description whatsoever, known or unknown, matured or unmatured, at law or in equity, existing under federal or state law, that any member of the Settlement Class has or may have against the Released Parties arising out of or related in any way to the transactions, occurrences, events, behaviors, conduct, practices, and policies alleged in, or that could have been alleged in the Action, including but not limited to those claims asserted in the Counts Complaint, Browne Complaint, and Amended Complaint for Settlement, and in connection with the conduct of the Action, that have been brought, could have been brought, or are currently pending in any forum in the United States. For sake of clarity Released Claims do not cover claims, if any, for bodily injury arising out of a Settlement Class Members' use of the Products.

## HOW TO GET A PAYMENT

**11.    How can I get a payment?**

To be eligible to receive a payment from the Settlement, you must complete and submit a timely Claim Form. You can complete and submit your Claim Form online at the Settlement Website, [**INSERT URL**]. The Claim Form can be downloaded from the Settlement Website, as well. You can request a Claim Form be sent to you by sending a written request to the Settlement Administrator by mail or by email.

**MAIL**:    [**INSERT ADDRESS**]

**EMAIL**: [**INSERT EMAIL ADDRESS**]

Please read the instructions carefully, fill out the Claim Form, and mail it via first-class United States Mail, postmarked no later than [**INSERT DEADLINE DATE**] to: Settlement Administrator, [**INSERT ADDRESS**], or submit your Claim Form online at the Settlement Website, [**INSERT URL**], by [**INSERT DEADLINE DATE**].

If you do not submit a valid Claim Form by the deadline, you will not receive a payment.

**12.** **When will I get my payment?**

Payments will be sent to Settlement Class Members who send in valid and timely Claim Forms after the Court grants "final approval" to the Settlement and after any and all appeals are resolved. If the Court approves the Settlement after a hearing on **[INSERT DATE]**, there may be appeals. It's always uncertain whether these appeals can be resolved, and resolving them can take time.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you do not want a payment from the Settlement, and you want to keep the right to sue or continue to sue the Defendant on your own about the claims released in this Settlement, then you must take steps to get out. This is called excluding yourself—or it is sometimes referred to as "opting out" of the Settlement Class.

**13.** **How do I get out of the Settlement?**

To exclude yourself (or "Opt-Out") from the Settlement, you must complete an exclusion form on the settlement website **[INSERT URL]** or by mailing a  written request to the Settlement Administrator that includes the following:

- Your name and address;

- The name of the case: *Counts et al v. Arkk Food Company.*, Case Number 1:23-cv-00236;

- A statement that you want to be excluded from this Settlement; and

- Your signature. Your exclusion request must be personally signed.

You must mail your exclusion request via first-class United States Mail, it must be *delivered to* the Settlement Administrator (not just postmarked or sent) prior to **[INSERT DEADLINE DATE]** to:

[**INSERT ADDRESS**]

If you do not include the required information or submit your request for exclusion on time, you will remain a Settlement Class Member and will not be able to sue the Defendants about the claims in this lawsuit.

**14.** **If I do not exclude myself, can I sue the Defendants for the same thing later?**

No. Unless you exclude yourself, you give up any right to sue the Defendant for the claims that this Settlement resolves. If you have a pending lawsuit, speak to your lawyer in that lawsuit immediately. You must exclude yourself from this Settlement Class to continue your own lawsuit. If you properly exclude yourself from the Settlement Class, you shall not be bound by any orders or judgments entered in the Action relating to the Settlement Agreement.

**15.** **If I exclude myself, can I still get a payment?**

No. You will not get any money from the Settlement if you exclude yourself. If you exclude yourself from the Settlement, do not send in a Claim Form asking for benefits.

## OBJECTING TO THE SETTLEMENT

**16.** **How can I tell the Court if I do not like the Settlement?**

A Settlement Class Member may object to the proposed Settlement. A Settlement Class Member may object to the Settlement either on his or her own without an attorney, or through an attorney hired at his or her expense. Any objection must be in writing, signed by the Settlement Class Member (and his or her attorney, if individually represented), it must be *delivered to* the Settlement Administrator (not just postmarked or sent) prior to **[INSERT DEADLINE DATE]**.

**17.** **What is the difference between objecting and excluding?**

Objecting is simply telling the Court that you do not like something about the Settlement. You can object to the Settlement only if you do not exclude yourself from the Settlement. Excluding yourself from the Settlement is telling the Court that you do not want to be part of the Settlement. If you exclude yourself from the Settlement, you have no basis to object to the Settlement because it no longer affects you.

## THE LAWYERS REPRESENTING YOU

**18.** **Do I have a lawyer in this case?**

Yes. The Court has appointed Reese LLP and Laukaitis Law Firm LLC as "Class Counsel," meaning that they were appointed to represent all Settlement Class Members.

You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

**19.** **How will the lawyers be paid?**

Class Counsel intends to file a motion on or before **[INSERT DATE]** seeking $750,000.00 for attorney fees and costs. The fees and expenses awarded by the Court will be paid from the Settlement Fund. The Court will determine the amount of fees and expenses to award. Class Counsel will also request that the Court award $15,000 to the named Plaintiffs ($5,000.00 for each named Plaintiff) who helped Class Counsel on behalf of the whole Class.

## THE COURT'S FAIRNESS HEARING

**20.** **When and where will the Court decide whether to approve the Settlement?**

The Court will hold a Fairness Hearing on **[INSERT DATE]** at the United States District Court for the Northern District of Illinois, before the Honorable Judge Lindsay C. Jenkins, United States District Judge, at 219 South Dearborn Street, Chicago, IL 60604, Courtroom 2119.

At the Fairness Hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. The Court will also consider how much to pay Class Counsel and the Class Representatives. If there are objections, the Court will consider them at this time. After the hearing, the Court will decide whether to approve the Settlement. We do not know how long these decisions will take.

**21.** **Do I have to come to the hearing?**

No. Class Counsel will answer any questions that the Court may have, but you may come at your own expense. If you send an objection, you do not have to come to Court to talk about it. As long as you mailed your written objection on time to the proper addresses, the Court will consider it. You may also pay your own lawyer to attend, but it is not necessary.

**22.** **May I speak at the hearing?**

Yes. You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must send a letter saying that it is your "Notice of Intent to Appear." Please refer to question 16 above for more information.

Your Notice of Intent to Appear must be filed with the Court and served on Class Counsel and Defendants' Counsel no later than **[INSERT DEADLINE DATE]**.

## IF YOU DO NOTHING

**23.** **What happens if I do nothing at all?**

If you do nothing, you will not get a payment from the Settlement. Unless you exclude yourself, you will not be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against the Defendants about the legal issues in this case, ever again.

## GETTING MORE INFORMATION

**24.** **How do I get more information?**

This notice summarizes the proposed Settlement. More details are in the Class Action Settlement Agreement. You can review a complete copy the Settlement Agreement and other information at the Settlement Website, [**INSERT URL**]. If you have additional questions or want to request a Claim Form, you can visit the Settlement Website, [**INSERT URL**]. You can also write to the Settlement Administrator by mail or email, or call toll-free.

**MAIL**:   [**INSERT ADDRESS**]

**EMAIL**: [**INSERT EMAIL ADDRESS**]

**PHONE**: [**INSERT TOLL FREE NUMBER**]

Updates will be posted at the Settlement Website, [**INSERT URL**], as information about the Settlement process becomes available.

**PLEASE DO NOT CONTACT THE COURT OR THE CLERK'S OFFICE CONCERNING THIS CASE.**

# EXHIBIT C2

# If you purchased any Wahlburgers Pickles, you may be eligible to receive a payment from a class action Settlement.

If you purchased Wahlburgers Pickles sold in stores in the United States ("Products"), you may be eligible to receive a payment from a class action settlement ("Settlement"). The lawsuit against Defendants Arkk Food Company ("Arkk"), Wahlburgers I, LLC ("Wahlburgers I"), and Patriot Pickle, Inc. ("Patriot Pickle") (collectively "Defendants") alleges that statements (a) "fresh"; (b) "all natural"; and (c) "no preservatives" (collectively the "Representations") on the Wahlburgers Pickles are misleading because the Products contained sodium benozate. The Defendants deny any and all wrongdoing of any kind whatsoever, and deny any liability to Plaintiffs and to the Settlement Class. The Court has not decided who is right. Both sides have agreed to settle the dispute and provide an opportunity for payments and other benefits to Settlement Class Members. The case is called *Counts et al. v. Arkk Food Company.*, Case Number 1:23-cv-00236 (N.D. Ill.).

## WHO IS INCLUDED IN THE SETTLEMENT?

All persons who, from April 1, 2021 to March 31, 2023, purchased one or more of the Products in the United States. The Products covered by this Settlement are products sold under the brand name Wahlburgers Pickles in the United States, and are sold in the following varieties: (a) Fresh Dill Spears; (2) Fresh Dill Chips; (3) Fresh Dill Chips Hot.

## WHAT DOES THE SETTLEMENT PROVIDE?

The Settlement provides that Defendants will pay $2,000,000 into a settlement fund to pay for the following: a) Notice and Claims Administration; b) Attorney Fees and Services Award; and c) eligible Claims submitted by Settlement Class Members. Settlement Class Members who timely submit valid Claim Forms are entitled to receive a cash payment from the Settlement. Settlement Class Members who timely submit a valid Claim Form by the deadline can get a payment from the Settlement for $2 per product, for up to 6 products without proof of purchase, and as many products as you have proof of purchase for. The actual amount recovered by each Settlement Class Member will not be determined until after the Claim Period has ended and all claims have been calculated.

## WHAT ARE MY RIGHTS?

**Submit a Claim Form**. If you wish to participate in the Settlement and be eligible to receive benefits under the Settlement, you must fill out and submit a Claim Form by **[INSERT DEADLINE DATE]**. You can obtain a Claim Form by (1) Visiting the Settlement Website, **[INSERT URL]**, where you can file your claim online or print a Claim Form to submit by mail; (2) Mailing a written request for a Claim Form to the Settlement Administrator: **[INSERT ADDRESS];** or (3) E-mailing the Settlement Administrator at **[INSERT EMAIL ADDRESS].** If you do not timely submit a valid Claim Form and do not exclude yourself from the Settlement, you will be bound by the Settlement but will not receive any benefits of the Settlement.

**Object to the Settlement**. If you do not agree with the Settlement or any part of it, you may submit a written objection to the Settlement Administrator. The deadline for submitting an objection is **[INSERT DEADLINE DATE]**.

**"Opt Out" or Exclude Yourself from the Settlement**. If you do not want a payment from the Settlement, and you want to keep the right to sue or continue to sue the Defendants on your own about the claims released in this Settlement, you must exclude yourself by **[INSERT DEADLINE DATE]**, or you give up any right to sue the Defendants for the claims that this Settlement resolves. If you have a pending lawsuit, speak to your lawyer in that lawsuit immediately. If you exclude yourself, you cannot get money from this Settlement. The Class Notice, available at **[INSERT URL]**, explains how to exclude yourself or object. If you do nothing, you will be bound by the Court's decisions.

## THE COURT'S FINAL APPROVAL HEARING

The Court will hold a hearing on **[INSERT DATE AND TIME]** to consider whether to approve the Settlement, Class Counsel's request for Attorneys' Fees and Expenses of up to $750,000.00, and a Service Award for the Plaintiffs of $15,000. The Attorneys' Fees and Expenses and Service Awards awarded by the Court will be paid from the Settlement Fund. You or your own lawyer may appear and speak at the hearing at your own expense.

**FOR MORE INFORMATION**
**Call Toll-Free [INSERT TOLL FREE NUMBER] or visit [INSERT URL]**

# EXHIBIT C3

# If you purchased any Wahlburgers Pickles, you may be eligible to receive a payment from a class action Settlement.

If you purchased any of involving Defendants Arkk Food Company ("Arkk"), Wahlburgers I, LLC ("Wahlburgers I"), and Patriot Pickle, Inc. ("Patriot Pickle") (collectively "Defendants") Wahlburgers Pickles sold in stores in the United States ("Products"), you may be eligible to receive a payment from a class action settlement ("Settlement"). The lawsuit alleges that statements (a) "fresh"; (b) "all natural"; and (c) "no preservatives" (collectively the "Representations") on the Wahlburgers Pickles are misleading because the Products contained sodium benozate. The Defendants deny any and all wrongdoing of any kind whatsoever, and deny any liability to Plaintiffs and to the Settlement Class. The Court has not decided who is right. Both sides have agreed to settle the dispute and provide an opportunity for payments and other benefits to Settlement Class Members. The case is called *Counts et al. v. Arkk Food Company.*, Case Number 1:23-cv-00236 (N.D. Ill.)

## WHO IS INCLUDED IN THE SETTLEMENT?

All persons who, from April 1, 2021 to March 31, 2023, purchased one or more of the Products in the United States. The Products covered by this Settlement are products sold under the brand name Wahlburgers Pickles in the United States, and are sold in the following varieties: (a) Fresh Dill Spears; (2) Fresh Dill Chips; (3) Fresh Dill Chips Hot.

## WHAT DOES THE SETTLEMENT PROVIDE?

The Settlement provides that Defendants will pay $2,000,000 into a settlement fund to pay for the following: a) Notice and Claims Administration; b) Attorney Fees and Services Award; and c) eligible Claims submitted by Settlement Class Members. Settlement Class Members who timely submit valid Claim Forms are entitled to receive a cash payment from the Settlement. Settlement Class Members who timely submit a valid Claim Form by the deadline can get a payment from the Settlement for $2 per product, for up to 6 products without proof of purchase, and as many products as you have proof of purchase for. The actual amount recovered by each Settlement Class Member will not be determined until after the Claim Period has ended and all claims have been calculated.

## WHAT ARE MY RIGHTS?

**Submit a Claim Form**. If you wish to participate in the Settlement and be eligible to receive benefits under the Settlement, you <u>must</u> fill out and submit a Claim Form by **[INSERT DEADLINE DATE]**. You can obtain a Claim Form by (1) Visiting the Settlement Website, **[INSERT URL]**, where you can file your claim online or print a Claim Form to submit by mail; (2) Mailing a written request for a Claim Form to the Settlement Administrator: **[INSERT ADDRESS]**; or (3) E-mailing the Settlement Administrator at **[INSERT EMAIL ADDRESS]**. If you do not timely submit a valid Claim Form and do not exclude yourself from the Settlement, you will be bound by the Settlement but will not receive any benefits of the Settlement.

**Object to the Settlement**. If you do not agree with the Settlement or any part of it, you may submit a written objection to the Settlement Administrator. The deadline for submitting an objection is **[INSERT DEADLINE DATE]**.

**"Opt Out" or Exclude Yourself from the Settlement**. If you do not want a payment from the Settlement, and you want to keep the right to sue or continue to sue the Defendants on your own about the claims released in this Settlement, you must exclude yourself by **[INSERT DEADLINE DATE]**, or you give up any right to sue the Defendants for the claims that this Settlement resolves. If you have a pending lawsuit, speak to your lawyer in that lawsuit immediately. If you exclude yourself, you cannot get money from this Settlement. The Class Notice, available at **[INSERT URL]**, explains how to exclude yourself or object. If you do nothing, you will be bound by the Court's decisions.

## THE COURT'S FINAL APPROVAL HEARING

The Court will hold a hearing on **[INSERT DATE AND TIME]** to consider whether to approve the Settlement, Class Counsel's request for Attorneys' Fees and Expenses of up to $750,000.00, and a Service Award for the Plaintiffs of $15,000. The Attorneys' Fees and Expenses and Service Awards awarded by the Court will be paid from the Settlement Fund. You or your own lawyer may appear and speak at the hearing at your own expense.

**FOR MORE INFORMATION**
**Call Toll-Free [INSERT TOLL FREE NUMBER] or visit [INSERT URL]**

# EXHIBIT D

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

|  |  |
|---|---|
| KYLE COUNTS, DAMANY BROWNE, and DENNIS MAYER, individually and on behalf of all others similarly situated,<br><br>                          Plaintiffs,<br>    v.<br><br>ARKK FOOD COMPANY, a Michigan corporation, WAHLBURGERS I, LLC, a Massachusetts limited liability company, and PATRIOT PICKLE, INC., a New Jersey corporation,<br><br>                          Defendants. | Case No.: 1:23-cv-00236 |

**[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF SETTLEMENT, APPROVAL OF FORM NOTICE, SCHEDULING OF FINAL APPROVAL HEARING, AND GRANTING LEAVE TO FILE AMENDED COMPLAINT**

Upon consideration of Plaintiffs Plaintiffs Kyle Counts ("Counts"), Damany Browne ("Browne"), and Dennis Mayer ("Mayer") (collectively "Plaintiffs") Unopposed Motion for Preliminary Approval of Class Action Settlement, Preliminary Certification of Settlement Class, and Approval of Notice Plan, the motion hearing before this Court, and the entire record herein, the Court grants preliminary approval of the Settlement contained in the Parties' Settlement Agreement ("Settlement Agreement"), upon the terms and conditions set forth in this Order. Capitalized terms and phrases in this Order shall have the same meaning ascribed to them in the Settlement Agreement. The Court makes the following findings:

## FINDINGS OF FACT

1.      Plaintiffs bring this Unopposed Motion for Preliminary Approval of Class Action Settlement, Preliminary Certification of Settlement Class, and Approval of Notice Plan before the Court, with the consent of Defendants Arkk Food Company ("Arkk"),Wahlburgers I, LLC ("Wahlburgers I"), and Patriot Pickle, Inc. ("Patriot") (collectively "Defendants").

2.      Plaintiffs filed their Amended Complaint against Defendants on April 18, 2023 (the "Action") in the United States District Court for the Northern District of Illinois alleging that Defendants' Wahlburgers pickles ("the Products") use of the phrases: (a) "fresh"; (b) "all natural"; and (c) "no preservatives" (collectively the "Representations") were misleading because they contained sodium benzoate.

3.      The Parties conducted an extensive and thorough examination, investigation, and evaluation of the relevant law, facts, and allegations to assess the merits of the potential claims to determine the strength of both defenses and liability sought in the Action.

4.      The Parties engaged in motion practice and discovery, where Defendants provided Plaintiffs with extensive information and documents, including sales information.

5.      In addition, Class Counsel evaluated the various state consumer protection laws, as well as the legal landscape, to determine the strength of the claims, the likelihood of success, and the parameters within which courts have assessed settlements similar to the proposed Settlement.

6.      The Parties entered into a Settlement Agreement pursuant to which they agreed to settle the Action, subject to the approval and determination by the Court as to the fairness, reasonableness, and adequacy of the Settlement, which, if approved, will result in dismissal of the Action with prejudice.

7.      The Court has reviewed the Settlement Agreement, including the exhibits attached thereto and all prior proceedings herein, and having found good cause based on the record,

THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED as follows:

1.      **Stay of the Action.** All non-settlement-related proceedings in the Action, including *Mayer v. Patriot Pickle Inc. et al.* No. 1:23-cv-1299 (W.D.N.Y.) and *Browne v. Arkk Food Company et al*, Case No. 1:23-cv-04603 (E.D.N.Y.), are hereby stayed and suspended until further order of the Court.

2.      **Granting Leave to File the Amended Complaint.** The Court GRANTS Plaintiffs leave to file the proposed Amended Complaint for settlement purposes attached as Exhibit A to the Settlement Agreement.

3.      **Preliminary Class Certification for Settlement Purposes Only.** Having made the findings set forth above, the Court hereby preliminarily certifies a plaintiff class for settlement purposes only, pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3), in accordance with the terms of the Settlement Agreement (the "Settlement Class"). The Court preliminarily finds, based on the terms of the Settlement described in the Settlement Agreement and for settlement purposes only, that: (a) the Settlement Class is so numerous that joinder of all members is

3

impracticable; (b) there are issues of law and fact that are typical and common to the Class, and that those issues predominate over individual questions; (c) a class action on behalf of the certified Class is superior to other available means of adjudicating this dispute; and (d) as set forth below, Plaintiffs and Class Counsel are adequate representatives of the Class. If the Court does not grant final approval of the Settlement set forth in the Settlement Agreement, or if the Settlement set forth in the Settlement Agreement is terminated in accordance with its terms, then the Settlement Agreement, and the certification of the Settlement Class provided for herein, will be vacated, the Amended Complaint shall be stricken from the record, the operative complaint in the Action shall be the complaint in effect as of November 21, 2023, and the Action shall proceed as though the Settlement Class had never been certified, without prejudice to any party's position on the issue of class certification or any other issue. Defendants retain all rights to assert that the Action may not be certified as a class action, other than for purposes of this Settlement.

4. **Class Definition.** The Settlement Class is defined as all persons who, from April 1, 2021 to March 31, 2023, purchased one or more of the Products in the United States. Excluded from the Settlement Class and Settlement Class Members are: (a) the directors, officers, employees, and attorneys of Defendants, its parents and subsidiaries; (b) governmental entities; (c) the Court, the Court's immediate family, and Court staff; (d) John DeGroote and his immediate family; and (d) any person that timely and properly excludes himself or herself from the Settlement Class in accordance with the procedures approved by the Court.

5. **Class Representatives and Class Counsel.** The Court appoints Michael R. Reese and Charles D. Moore from Reese LLP, and Kevin Laukaitis from Laukaitis Law Firm LLS as counsel for the Settlement Class. Kyle Counts, Damany Browne, and Dennis Mayer are hereby appointed as Class Representatives.

6. **Preliminary Settlement Approval.** The Court preliminarily approves the Settlement set forth in the Settlement Agreement as being within the range of possible approval as fair, reasonable, and adequate, within the meaning of Rule 23 and the Class Action Fairness Act of 2005, subject to final consideration at the Fairness Hearing provided for below. Accordingly, the Settlement Agreement is sufficient to warrant sending notice to the Class.

7. **Jurisdiction.** The Court has subject-matter jurisdiction over the Action pursuant to 28 U.S.C. §§ 1332 and 1367 and personal jurisdiction over the Parties before it. Additionally, venue is proper in this District pursuant to 28 U.S.C. § 1391.

8. **Fairness Hearing.** A Fairness Hearing shall be held on _____ ___, 2024 at __:__ _.m. at the United States District Court for the Northern District Court of Illinois at 219 South Dearborn Street, Chicago, IL 60604, Courtroom 2119, to determine, among other things: (a) whether the Action should be finally certified as a class action for settlement purposes pursuant to Rule 23(a) and (b)(3); (b) whether the Settlement of the Action should be finally approved as fair, reasonable, and adequate pursuant to Rule 23(e); (c) whether the Action should be dismissed with prejudice pursuant to the terms of the Settlement Agreement; (d) whether Settlement Class Members should be bound by the releases set forth in the Settlement Agreement; (e) whether Settlement Class Members and related persons should be permanently enjoined from pursuing lawsuits based on the transactions and occurrences at issue in the Action; (f) whether the Class Counsel's application for an award of Attorneys' Fees and Expenses should be approved pursuant to Rule 23(h); and (g) whether the application of the named Plaintiffs for a Service Award should be approved. The submissions of the Parties in support of the Settlement, including Plaintiffs' Counsel's application for Attorneys' Fees and Expenses and Service Awards, shall be filed with

the Court no later than fifty-six (56) days prior to the Fairness Hearing and may be supplemented up to fifteen (15) days prior to the Fairness Hearing.

        9.    **<u>Administration and Class Notice.</u>**

        a.    The Court accepts the recommendations of Class Counsel and Defendants, and hereby appoints Angeion Group to serve as Settlement Administrator in accordance with the terms of the Settlement Agreement, and to help implement the terms of the Settlement Agreement.

        b.    The proposed Class Notice, Summary Settlement Notice, the notice methodology described in the Settlement Agreement and in the Declaration of Steven Weisbrot, Esq. of Angeion Group, LLC (the "Weisbrot Declaration") are hereby approved.

        c.    No later than thirty (30) calendar days after the entry of the Preliminary Approval Order, the Settlement Administrator shall cause the Notice Plan to commence as described in the Weisbrot Declaration. Specifically, the Settlement Administrator shall establish a website that will inform Settlement Class Members of the terms of the Settlement Agreement, their rights, dates and deadlines, and related information. The website shall include materials agreed upon by the Parties and as further ordered by this Court.

        d.    Not later than thirty (30) days after the entry of the Preliminary Approval Order, the Settlement Administrator shall establish a toll-free telephone number that will provide Settlement-related information to Settlement Class Members.

        e.    The Settlement Administrator shall disseminate any remaining notice, as stated in the Settlement Agreement and the Weisbrot Declaration.

        f.    Not later than fifteen (15) calendar days before the date of the Fairness Hearing, the Settlement Administrator shall file a declaration or affidavit with the Court that: (i) includes a list of those persons who have opted out or excluded themselves from the Settlement;

and (ii) attests to the proper implementation of the Notice Plan.

10.    **Findings Concerning Notice.** The Court finds that the form, content, and method of giving notice to the Class as described in paragraph 9 of this Order: (a) will constitute the best practicable notice; (b) are reasonably calculated, under the circumstances, to apprise the Settlement Class Members of the pendency of the Action, the terms of the proposed Settlement, and their rights under the proposed Settlement, including but not limited to their rights to object to or exclude themselves from the proposed Settlement and other rights under the terms of the Settlement Agreement; (c) are reasonable and constitute due, adequate, and sufficient notice to all Settlement Class Members and other persons entitled to receive notice; and (d) meet all applicable requirements of law, including but not limited to 28 U.S.C. § 1715, Rule 23(c) and (e), and the Due Process Clause(s) of the United States Constitution. The Court further finds that all of the notices are written in plain language, are readily understandable by Settlement Class Members, and are materially consistent with the Federal Judicial Center's illustrative class action notices.

11.    **Exclusion from Settlement Class.** Any Settlement Class Member who wishes to be excluded from the Class may elect to opt out of the Settlement under this Agreement. Settlement Class Members who opt out of the Settlement will not release their claims for damages that accrued during the Class Period.  Settlement Class Members wishing to opt out of the Settlement must send to the Class Action Settlement Administrator by U.S. Mail a personally signed letter including their name and address and providing a clear statement communicating that they elect to be excluded from the Settlement Class.  Any request for exclusion must be received on or before the Opt-Out Date specified in this Preliminary Approval Order. Any potential Settlement Class Member who does not file a timely written request for exclusion shall be bound by all subsequent proceedings, orders, and judgments, including, but not limited to, the release in the Settlement

Agreement, even if he or she has litigation pending or subsequently initiates litigation against Defendants or other Released Parties (as defined in the Settlement Agreement) relating to the claims and transactions released in this Action.

12.     **Objections and Appearances.**  Any Settlement Class Member who intends to object to the fairness of the Settlement must do so in writing no later than the Objection Date.  Any objection must be in writing, signed by the Settlement Class Member (and his or her attorney, if individually represented), and filed with the Court, with a copy delivered to Class Counsel and Defendants' Counsel at the addresses set forth in the Class Notice, no later than the Objection Date.

Any Settlement Class Member who files and serves a written objection, as described in the preceding Section, may appear at the Final Approval Hearing, either in person or through counsel hired at the Settlement Class Member's expense, to object to any aspect of the fairness, reasonableness, or adequacy of this Agreement, including Attorneys' Fees and Expenses and Service Awards. Settlement Class Members or their attorneys who intend to make an appearance at the Final Approval Hearing must serve a notice of intention to appear on the Class Counsel identified in the Class Notice, and to Defendants' Counsel, and file the notice of appearance with the Court, no later than fifteen (15) days before the Final Approval Hearing, or as the Court may otherwise direct.

Any Settlement Class Member who fails to comply with Section VI of the Settlement Agreement shall waive and forfeit any and all rights he or she may have to appear separately and/or to object, and shall be bound by all the terms of this Agreement and by all proceedings, orders and judgments in the Action, including, but not limited to, the Released Claims and the releases in Section VII of the Agreement.

Class Counsel shall have the right, and Defendants shall reserve its right, to respond to any objection no later than fifteen (15) days before the Final Approval Hearing.

13.     **Disclosures.**   The Settlement Administrator, Defendants' Counsel, and Class Counsel shall promptly furnish to each other copies of any and all objections or written requests for exclusion that might come into their possession.

14.     **Termination of Settlement.**   This Order shall become null and void and shall not prejudice the rights of the Parties, all of whom shall be restored to their respective positions existing immediately before this Court entered this Order, if: (a) the Settlement is not finally approved by the Court or does not become final, pursuant to the terms of the Settlement Agreement; (b) the Settlement is terminated in accordance with the Settlement Agreement; or (c) the Settlement does not become effective as required by the terms of the Settlement Agreement for any other reason.  In such event, the Settlement and Settlement Agreement shall become null and void and be of no further force and effect, and neither the Settlement Agreement nor the Court's orders, including this Order, relating to the Settlement shall be used or referred to for any purpose.

15.     **Nationwide Stay and Preliminary Injunction.**   Effective immediately, any consumer actions or proceedings pending in any state or federal court in the United States involving the labeling or marketing of the Products, except any matters necessary to implement, advance, or further approval of the Settlement Agreement or settlement process, are stayed pending the final Fairness Hearing and the issuance of a final order and judgment in this Action. Excluded from this stay are *Grillo's v. Patriot Pickle Inc. et al*, Case No. 2:23-cv-00011 (D.N.J.) (the "Grillo Action") and any similar actions by competitors against Defendants.

In addition, pending the final Fairness Hearing and the issuance of a final order and

judgment in this Action, all members of the Settlement Class and their legally authorized representatives are hereby preliminarily enjoined from demanding, threatening, filing, commencing, prosecuting, maintaining, intervening in, participating in (as class members or otherwise), or receiving any benefits from any other lawsuit, arbitration, or administrative, regulatory, or other proceeding or order in any jurisdiction in the United States (defined to including both states and territories of the United States) arising out of or relating to the Products or the facts and circumstances at issue in the Action.

Also, pending the final Fairness Hearing and issuance of a final order and judgment in this Action, all members of the Settlement Class and their legally authorized representatives are hereby preliminarily enjoined from demanding, threatening, filing, commencing, prosecuting, or maintaining any other lawsuit on behalf of members of the Settlement Class, if such other action is based on or relates to Defendants' Products.

Under the All Writs Act, the Court finds that issuance of this nationwide stay and injunction is necessary and appropriate in aid of the Court's jurisdiction over this Action. The Court finds no bond is necessary for the issuance of this injunction.

16. **Effect of Settlement Agreement and Order.** Plaintiffs' Counsel, on behalf of the Settlement Class, and Defendants entered into the Agreement solely for the purpose of compromising and settling disputed claims. This Order shall be of no force or effect if the Settlement does not become final and shall not be construed or used as an admission, concession, or declaration by or against Defendants of any fault, wrongdoing, breach, or liability. The Settlement Agreement, the documents relating to the Settlement Agreement, and this Order are not, and should not in any event be (a) construed, deemed, offered, or received as evidence of a presumption, concession, or admission on the part of Plaintiffs, Defendants, any member of the

Settlement Class or any other person; or (b) offered or received as evidence of a presumption, concession, or admission by any person of any fault, wrongdoing, breach, or liability, or that the claims in the Action lack merit or that the relief requested is inappropriate, improper, or unavailable for any purpose in any judicial or administrative proceeding, whether in law or in equity.

17. **Retaining Jurisdiction.** This Court shall maintain continuing jurisdiction over these settlement proceedings to assure the effectuation thereof for the benefit of the Class. If the Settlement receives final approval, this Court shall retain jurisdiction over any action to enforce the release provisions in the Settlement Agreement.

18. **Continuance of Hearing.** The Court reserves the right to adjourn or continue the Fairness Hearing without further written notice.

The Court sets the following schedule for the Fairness Hearing and the actions which must precede it:

a. Plaintiffs shall file their Motion for Final Approval of the Settlement by no later than [30 days before the Fairness Hearing] _____ _____.

b. Plaintiffs shall file their Motion for Attorneys' Fees, Costs, and Expenses, and Motion for Service Award by no later than [56 days before the Fairness Hearing] _____.

c. Settlement Class Members must file any objections to the Settlement and the Motion for Attorneys' Fees, Costs, and Expenses, and the Motion for Service Award by no later than [21 days before the Fairness Hearing] _____ _____.

d.      Settlement Class Members must exclude themselves, or opt-out, from the Settlement by no later than [21 days before the Fairness Hearing] __ _____.

e.      Settlement Class Members who intend to appear at the Final Fairness Hearing must file a Notice of Intention to Appear at the Final Fairness Hearing by no later than [15 days before the Fairness Hearing] _____ _____.

f.      The Settlement Administrator shall file a declaration or affidavit with the Court that confirms the implementation of the Notice Plan pursuant to the Preliminary Approval Order [15 days before the Fairness Hearing] _____ _____.

g.      Class Counsel and Defendants' Counsel shall have the right to respond to any objection no later than [15 days before the Fairness Hearing] __ _____.

h.      The Fairness Hearing will take place on _____, 2024 at __:__ _.m. [proposed 145 days after Preliminary Approval Order] at the United States District Court for the Northern District Court of Illinois at 219 South Dearborn Street, Chicago, IL 60604, Courtroom 2119.

**SO ORDERED this ___ day of _____, 2024:**

_____
Hon. Lindsay C. Jenkins
United States District Judge